# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS –
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re:<br>108 GILBERT VILLAS LLC<br><br>Debtor, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 26-42901-elm11<br><br>CHAPTER 11<br><br>JOINTLY ADMINISTERED WITH<br><br>INVOLUNTARY CHAPTER 7<br><br>CASE NO. 26-32911-elm7 |

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I __Anna Glass__ being duly sworn, deposes and says:

1. I am employed by Toorak Capital Partners ("**Movant**") and am authorized to sign this affidavit on behalf of Movant.

2. In the regular performance of my job functions, I am familiar with and have access to the business records maintained by Movant for the purpose of servicing mortgage loans. These records, which include date compilations, electronically imaged documents, and others, are made at or near the time of date by, or from information provided by persons with knowledge of the activity and transactions reflected in such records are kept in the normal course of business activity conducted regularly by Movant. It is the regular practice of Movant's business to make and/or maintain these records. Movant relies upon the accuracy of those records in conducting its business of servicing loans, including the Subject Loan at issue in this action.

3.   I regularly verify Movant records, loan histories, correspondence, and communication histories. This entails reviewing, becoming familiar with, and participating in the review of documents related to loan accounts for loans serviced by Movant. From my employment for Movant, I am familiar with its business operations and with the services that Movant offers to its customers.

4.   I have personally reviewed Movant's records as they relate to the Subject Loan obligation referred to herein, and as to the following facts, I know them to be true of own knowledge or I have gained knowledge of them from my review of Movant's business records. If called upon to testify, I could and would competently testify to the following under oath.

5.   On April 25, 2024, 108 Gilbert Villas LLC, a Texas limited liability company ("**Borrower**" or "**Debtor**"), executed and delivered to FTF Lending, LLC, a Delaware limited liability company, a Note, with an original principal balance of $2,080,000.00 (the "**Note**"). A true and correct copy of the Note is attached as **Exhibit "A"** and is incorporated herein by reference for all purposes.

6.   Movant is the current owner of the Note and is in possession of the original Note.

7.   Concurrently therewith, and as security for the Note, the Borrowers executed and delivered a Lender a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement ("**Deed of Trust**"), dated April 25, 2024, regarding the following properties ("**Properties**"):

- 3315 Shivers Drive, Grand Prairie, Texas 75050
- 3317 Shivers Drive, Grand Prairie, Texas 75050
- 3319 Shivers Drive, Grand Prairie, Texas 75050
- 3321 Shivers Drive, Grand Prairie, Texas 75050
- 3323 Shivers Drive, Grand Prairie, Texas 75050
- 3325 Shivers Drive, Grand Prairie, Texas 75050
- 3327 Shivers Drive, Grand Prairie, Texas 75050
- 3329 Shivers Drive, Grand Prairie, Texas 75050

The Properties are legally described as:

TRACT 1
Being Lot 9, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3315 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0090000

TRACT 2
Being Lot 10, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3317 Shivers Drive Grand Prairie, Texas 75050
Parcel ID: 280700500B0100000

TRACT 3
Being Lot 11, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3319 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0110000

TRACT 4
Being Lot 12, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3321 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0120000

TRACT 5
Being Lot 13, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3323 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0130000

TRACT 6
Being Lot 14, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3325 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0140000

TRACT 7
Being Lot 15, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3327 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0150000

TRACT 8
Being Lot 16, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address: 3329 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID: 280700500B0160000

8.  A true and correct copy of the Deed of Trust is attached as **Exhibit "B"** and is incorporated herein by reference for all purposes.  The borrower is the owner of record for the Property.

9.  In addition, the Loan matured on August 1, 2025. Movant entered into a Note and Mortgage Extension Agreement ("**Extension**") dated June 3, 2025, extending the maturity date of the Loan through February 1, 2026. The Extension further provided that the indebtedness would continue to accrue interest at the contractual rate of 11.74% per annum and that all outstanding principal, accrued interest, and other amounts due under the Loan Documents would become due and payable on the extended maturity date. Debtor nevertheless failed to satisfy the indebtedness by the extended maturity date. A true and correct copy of the Extension is attached as **Exhibit "C"** and is incorporated herein by reference for all purposes.

10. On or about July 2, 2026, Debtor filed a petition for an order of relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C.

11. The original principal balance of the Loan was $2,080,000.00. As of July 2026, the payoff balance was $2,384,081.12, and interest, fees, costs, and other charges continue to accrue.

I solemnly affirm under penalty of perjury and upon personal knowledge that the contents of the foregoing affidavit are true.

EXECUTED on, _____8-6-26_____.

Further Affiant sayeth not.    _____

State of ___Florida___ )
County of __Hillsborough__ )

Sworn/affirmed to and subscribed before me on this _6_ day of _August_ , 20 _26_ .
Personally known [✓] or produced identification [ ].
Type of identification produced _____ .

_____
(Signature of Notary Public)
My commission expires ___4/28/2028___
Notary seal



Notary Public State of Florida
Justin  Villalonga
My Commission HH 521543
Expires  4/28/2028

# Exhibit A

Borrower: 108 Gilbert Villas LLC
Loan: ███████████

## PROMISSORY NOTE

$2,080,000.00                                                        Effective April 25, 2024

FOR VALUE RECEIVED, 108 GILBERT VILLAS LLC, a Texas limited liability company (the "**Borrower**"), having a principal business address for purposes of notice and legal process at 2509 Cladding Drive, Plano, Texas 75075, promises to pay to the order of FTF LENDING, LLC, a Delaware limited liability company (the "**Lender**"), having a principal business address for purposes of notice and legal process at 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114, or at such other place as may be designated in writing by the holder of this Note, the principal sum of $2,080,000.00 in lawful money of the United States of America, together with interest thereon to be computed from the date hereof at the Applicable Interest Rate or Default Rate (as applicable), and to be paid in accordance with the terms of this Note.

1.  BORROWER'S PROMISE TO PAY.

    1.1.  In return for a loan made by Lender to Borrower secured by that certain Deed of Trust (as hereinafter defined), Borrower promises to pay $2,080,000.00 (the "**Principal**" or "**Total Available Funds**"), plus interest and other sums due, to the order of Lender, in accordance with the terms of this Note. Borrower will make all payments under this Note in the form of a federal funds transfer to an account designated by Lender or in such other acceptable method of payment as may be designated by Lender. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is hereinafter called the "**Note Holder**".

2.  INTEREST UNDER NON-DUTCH LOAN.

    2.1.  Absent an Event of Default (as hereinafter defined), interest under this Note shall be due and payable at the "Applicable Interest Rate" (as hereinafter defined) from the date the proceeds have been distributed to or on behalf of the Borrower through the Maturity Date, as the same may be extended, or through the earlier prepayment of the Loan in full. The term "**Applicable Interest Rate**", as used herein, shall mean an interest rate equal to 11.740% per annum. Interest for any month or fractional part thereof shall be calculated on the basis of a 30-day month and 360-day year, shall accrue on a monthly basis, and shall be due and payable hereunder monthly.

    2.2.  Borrower shall begin paying interest to the Lender at the Applicable Interest Rate on the Principal minus Construction Holdback (as defined in the Escrow Agreement and Loan and Security Agreement) plus any funds then disbursed to Borrower out of Construction Holdback (the "**Total Released Funds**"). Interest begins to accrue on April 25, 2024.

    2.3.  Borrower shall be credited at payoff by the Lender any amount of monies that have not been advanced to the Borrower for usage.

3.  PAYMENT TERMS.

    3.1.  Borrower agrees to pay into a holdback account sums under this Note in installments as follows:

        3.1.1.  On the date hereof in the sum of $61,048.00 representing an interest reserve (the "**Interest Reserve**"); and

        3.1.2.  Interest shall accrue in arrears in accordance with the terms of this Note, and Borrower shall tender Borrower's first interest payment to Lender on the first day of the month

1

Borrower: 108 Gilbert Villas LLC
Loan █████████

after the Interest Reserve is exhausted and on the first day of each month thereafter (the "**Monthly Payment Date**").

3.1.3. The monies held into the holdback account shall be drawn upon first and applied as the monthly interest payments toward the Total Released Funds. Once the holdback account has been exhausted, Borrower will begin to make their interest payments in according with the terms of the Note.

3.2. All accrued and unpaid interest and the unpaid principal balance hereof are due and payable on the earlier to occur of (i) August 1, 2025 (the "**Maturity Date**"), or (ii) the date on which the Indebtedness (hereinafter defined) becomes immediately due and payable hereunder. Lender shall include in any final payoff figure the accrual of interest against the Total Released Funds.

3.3. On the date hereof, Borrower shall pay to Lender an origination fee in the sum of $41,600.00, which amount shall be fully earned on the date of this Note.

3.4. On the date hereof, Borrower shall pay to Lender all of Lender's costs and expenses related to this Loan, including, without limitation, Loan servicing fees, appraisal, policy of title insurance and endorsements, recordation of the Deed of Trust (as hereinafter defined), Lender's reasonable attorneys' fees, broker's origination fee (if any), broker's processing fee (if any), and all other costs and expenses reflected on the settlement statement prepared by the Title Company serving as escrow agent for closing of the loan.

3.5. Provided there is no ongoing Event of Default (unless Lender has provided Borrower written notice that it is willing to waive the Event of Default and such waiver is not construed as a waiver of any right to enforce the any rights in this Note), Borrower may request to extend the Maturity Date an additional three-month period (each, an "**Extension Term**"). Lender, in its sole discretion, may reject such request or may approve such request upon such terms and conditions as it deems advisable, including, but not limited to, (i) the payment to Lender of a fee equal to 1.000% of the Principal (or 1.000% of the Principal minus any Minimum Release Price(s) paid by Borrower pursuant to the Property Release Agreement, as applicable), as well as a change in the Applicable Interest Rate and (ii) Borrower has progressed construction satisfactory to Lender, in its sole and absolute discretion. To request the extension, Borrower must deliver written notice to Lender that they wish to exercise such extension at least 7 days prior to the first day of each Extension Term. The Maturity Date established by each Extension Term shall be known as the "**Extended Maturity Date**".

3.6. Borrower shall complete all repairs, replacements and other work listed on Exhibit A, if any, of this Note (individually and/or collectively, the "**Work**"), which repairs shall be completed lien-free and in a good and workmanlike manner and in accordance with all applicable laws, rules, ordinances and regulations. Notwithstanding the foregoing, Lender shall have no obligation to provide additional funds to Borrower to pay for the completion of the Work.

4. DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT.

4.1. This Note is a secured by (a) a deed of trust lien in the principal sum of $2,080,000.00 evidenced by that certain deed of trust, assignment of leases and rents, fixture filing, and security agreement (the "**Deed of Trust**") dated April 25, 2024 given by Borrower to Lender encumbering certain real estate situated in the County of Dallas, State of Texas, and more commonly known as (i) 3315 Shivers Drive, Grand Prairie, Texas 75050, (ii) 3317 Shivers Drive, Grand Prairie, Texas 75050, (iii) 3319 Shivers Drive, Grand Prairie, Texas 75050, (iv)

2

3321 Shivers Drive, Grand Prairie, Texas 75050, (v) 3323 Shivers Drive, Grand Prairie, Texas 75050, (vi) 3325 Shivers Drive, Grand Prairie, Texas 75050, (vii) 3327 Shivers Drive, Grand Prairie, Texas 75050, and (viii) 3329 Shivers Drive, Grand Prairie, Texas 75050 (individually and/or collectively, the "**Property**"), and (b) certain other instruments and agreements dated April 25, 2024 or executed pursuant to this transaction from time to time by Borrower, principal, surety, Guarantor, member, manager, endorser or any other parties for the benefit of Lender (said documents and agreements and all other documents and agreements evidencing or securing the loan, are hereinafter referred to, individually and/or collectively, as the "**Loan Documents**"). All of the terms, covenants, conditions and agreements contained in the Deed of Trust are hereby incorporated herein and made a part hereof.

5.    APPLICATION OF PAYMENTS.

5.1.    <u>Application of Payments During the Course of the Loan</u>. During the term of the loan, each payment made by Borrower shall be applied as follows, which, after the occurrence and during the continuance of an Event of Default, shall be at the discretion of Lender:

5.1.1.    First, to monthly interest then due and payable hereunder; and

5.1.2.    Then, to late charges; and

5.1.3.    Then, to Marginal Interest, if any; and

5.1.4.    Then, to all other fees, including extension fees, any unpaid costs or balances of Advances (as defined in the Loan and Security Agreement) (excluding the original Advance of the Principal), any costs of collections, made by Lender in connection with the Deed of Trust and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Deed of Trust and the Loan Documents; and

5.1.5.    The remainder to the Principal balance hereof.

5.2.    <u>Application of Payments Upon Payoff.</u> Upon payoff of the Loan, payments made by Borrower shall be applied as follows, which, after the occurrence and during the continuance of an Event of Default, shall be at the discretion of Lender:

5.2.1.    First, to any costs of collection hereunder, and

5.2.2.    Then, to late charges; and

5.2.3.    Then, to extension fees; and

5.2.4.    Then, to monthly interest then due and payable hereunder; and

5.2.5.    Then, to Marginal Interest, if any; and

5.2.6.    Then, to all other fees, including any unpaid costs or balances of Advances (excluding the original Advance of the Principal), made by Lender in connection with the Deed of Trust and/or any of the Loan Documents and/or this Note and to any other amounts which may be overdue on account of any of the several terms, provisions, conditions or covenants contained in this Note, the Deed of Trust and the Loan Documents; and

Borrower: 108 Gilbert Villas LLC
Loan ████████████

5.2.7.   The remainder to the Principal balance hereof.

5.3.   Monthly installments of interest shall be paid when due, regardless of the prior acceptance by Lender of payments in excess of the regular monthly installment of interest.

5.4.   The designation or allocation by Borrower of the disposition or allocation of any payments made will not be binding upon Lender and such payments shall instead be allocated in accordance with Section 5.1 herein; provided that, upon the occurrence and during the continuance of an Event of Default, Lender may allocate any and all such payments to interest, principal and other fees and charges due hereunder or to any one or more of them, in such amount, priorities and proportions as Lender may determine in its sole discretion in accordance with the terms hereof.

6.   DEFAULT AND ACCELERATION.

6.1.   It is hereby expressly agreed that (A) the whole of the principal sum of this Note, (B) interest, default interest, late charges, fees and other sums, as provided in this Note, (C) all other monies agreed or provided to be paid by Borrower in this Note, the Deed of Trust or the Loan Documents, (D) all sums advanced pursuant to the Deed of Trust and/or the Loan Documents, and (E) all sums advanced and costs and expenses incurred by Lender in connection with the Indebtedness (as hereinafter defined) or any part thereof, any renewal, extension, or change of or substitution for the Indebtedness or any part thereof, or the acquisition or perfection of the security granted pursuant to the Deed of Trust and the other Loan Documents, whether made or incurred at the request of Borrower or Lender (the sums referred to in (A) through (E) above shall collectively be referred to as the "**Indebtedness**") shall, WITHOUT NOTICE (unless otherwise provided herein), become immediately due and payable at the option of the Note Holder upon the happening of any of the following events (each, an "**Event of Default**"):

6.1.1.   Borrower fails to pay any amount due to Lender under this Note, within 10 days after the due date for such payment;

6.1.2.   Borrower fails to keep, observe or perform any other promise, condition or agreement contained in this Note, the Deed of Trust, the Loan Documents or any other documents described herein or delivered in connection herewith or is otherwise in default under the terms, covenants and conditions of this Note, the Deed of Trust and the Loan Documents, and such failure or default is not remedied within 30 days after written notice to Borrower thereof, provided, however, that if such failure or default is not capable of being cured or remedied within said 30 day period, then if Borrower fails to promptly commence to cure the same and thereafter diligently prosecute such cure to completion but in any event within 60 days after notice thereof;

6.1.3.   There is a material misstatement in any certificate and/or certification delivered in connection with this Note, the Deed of Trust, and other Loan Documents, or any representation, disclosure, warranty, statement, financial information, application and/or other instrument, record, documentation or paper made or furnished by or on behalf of Borrower in connection with this Note shall be materially misleading, untrue or incorrect as of the later of (i) the date hereof or (ii) when made;

6.1.4.   A receiver, liquidator or trustee shall be appointed for Borrower or for any of its property, an assignment shall be made for the benefit of creditors, Borrower or a member or manager of Borrower shall be adjudicated as bankrupt or insolvent, or any petition for bankruptcy, reorganization or arrangement pursuant to the Bankruptcy

Reform Act of 1978 codified as 11 U.S.C. § 101 *et seq.*, and the regulations issued thereunder, both as hereafter modified from time to time (the "**Federal Bankruptcy Code**"), or any similar federal or state statute, shall be filed by or against Borrower, unless such appointment, assignment, adjudication or petition was involuntary, in which event only if the same is not discharged, stayed or dismissed within 60 days;

6.1.5.  A final judgment for the payment of money shall be rendered against Borrower or a member or manager of Borrower which would materially adversely affect Borrower's ability to make payments under this Note and Borrower or such member or manager shall not discharge the same or cause it to be discharged within 30 days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered within 10 days, or shall not thereafter secure a stay of execution pending such appeal;

6.1.6.  Borrower or a member or manager of Borrower shall have concealed, removed and/or permitted to be concealed or removed any substantial part of its property and/or assets with the intent to hinder, delay or defraud Lender of any of its property and/or assets which may be fraudulent under any federal or state bankruptcy, fraudulent conveyance or similar law now or hereafter enacted, or if Borrower shall have made any transfer of any of its property and/or assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or if Borrower shall have suffered or permitted to be suffered, while insolvent, any creditor to obtain a lien upon any of its property and/or assets through legal proceedings or distraint which is not vacated within 60 days from the date of entry thereof;

6.1.7.  Borrower defaults under any other note, instrument, agreement, contract, pledge, mortgage or encumbrance evidencing and/or securing the Indebtedness or any other indebtedness of Borrower to Lender, now existing or hereinafter arising, and such event or occurrence is not remedied or cured within 10 days after notice thereof or an "event of default" (as defined in such other note, instrument, agreement, contract, pledge, mortgage or encumbrance) shall have occurred; or

6.1.8.  If, without the written consent of Lender, the interest of any member or manager of Borrower is assigned or transferred, the Borrower is dissolved, or the manager withdraws, resigns or is replaced, unless due to the death or disability of the manager.

6.2.  After the occurrence of an Event of Default, Lender may accept any payments from Borrower without prejudice to the rights and remedies of Lender provided herein or in the Deed of Trust or the Loan Documents.

7.    DEFAULT INTEREST/LATE CHARGES.

7.1.  The Default Rate (as hereinafter defined) shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate (as hereinafter defined) shall remain in effect during any period of default even upon the acceleration of the indebtedness evidence by this Note. The Default Rate (as hereinafter defined) shall be in effect at all times after the maturity of the Indebtedness (whether on the Maturity Date, by acceleration or otherwise). Upon acceleration or maturity, the Default Rate (as hereinafter defined) shall remain in effect until all sums due under this Note, the Deed of Trust and the Loan Documents shall have been paid in full. Any amount assessed or collected as interest under the Note will be limited to the maximum amount of interest allowed by applicable law. If interest collected under the Note exceeds the maximum lawful amount, then any amount will be applied first to

5

the unpaid principal balance with any remainder refunded to the Borrower. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Indebtedness, or as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.2.    Except for any payment of the Indebtedness after acceleration, if any payment (or part thereof) provided for herein shall not be made on or before ten (10) days when due, a late charge of $0.06 for each $1.00 so overdue shall become immediately due and payable to the Note Holder as liquidated damages for failure to make prompt payment and the same shall be secured by the Deed of Trust. This fee is not a penalty, but a fee reasonably calculated to reimburse the Note Holder for administrative and staff time. Such charge shall be payable in any event no later than the due date of the next subsequent installment or, at the option of Note Holder, may be deducted from any deposits held by Lender as additional security for this Note. Nothing herein is intended to or shall extend the due dates set forth for payments under this Note. Such late fee may be charged on any subsequent delinquent payment.

7.3.    Should the Indebtedness or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Note be placed in the hands of attorneys for collection, Borrower agrees to pay, in addition to the principal, any late payment charge and interest due and payable hereunder, all costs of collecting or attempting to collect the Indebtedness, including attorneys' fees at the rate of 15.000% of the principal and interest then due and owing and expenses and court costs, regardless of whether any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate (as hereinafter defined) from the date paid or incurred by Note Holder until such expenses are paid by Note Holder.

7.4.    Notwithstanding anything to the contrary herein set forth, in no event shall any interest payable under this Note exceed the maximum interest rate permitted under law or the rate that could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate that Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the interest rate hereinabove set forth, other charges, or the Default Rate (as hereinafter defined), as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Indebtedness, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of this Note until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Indebtedness for so long as the Indebtedness is outstanding. Borrower agrees to an effective rate of interest that is the rate stated herein plus any additional rate of interest resulting from any other charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit received or to be received by Note Holder, in connection with this Note.

8.    WAIVERS.

8.1.    Borrower hereby waives demand, notice of demand, presentment for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, notice of dishonor, protest, notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note.

Borrower: 108 Gilbert Villas LLC
Loan: ███████████

8.2. The liability of Borrower shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Note Holder, including, but not limited to any extension of time, renewal, waiver or other modification. No release of any security for the Indebtedness or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Deed of Trust and other Loan Documents, made by agreement of Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower under this Note.

8.3. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Note Holder to take further action without further notice or demand on Borrower as provided for in this Note. Any failure of the Note Holder to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time and from time to time thereafter. Lender or any Note Holder may accept late payment, or partial payment, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. No amendment, modification or waiver of any provision of this Note nor consent to any departure by Borrower therefrom shall be effective, irrespective of any course of dealing, unless the same shall be in writing and signed by the Note Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.4. BORROWER AND EACH ENDORSER AGREE THAT ANY ACTION, SUIT OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE MAY BE INITIATED AND PROSECUTED IN THE STATE OR FEDERAL COURTS, AS THE CASE MAY BE, LOCATED IN DALLAS COUNTY, TEXAS. BORROWER AND EACH ENDORSER CONSENT TO AND SUBMIT TO THE JURISDICTION OF SUCH COURTS OVER THE SUBJECT MATTER.

8.5. BORROWER AND EACH ENDORSER ALSO WAIVE THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION.

9. PREPAYMENT.

9.1. Borrower has the right to prepay the principal of this Note in whole or in part at any time before it is due. Such prepayment of Principal is known as a "**Prepayment**". When Borrower tenders a Prepayment, Borrower will tell Note Holder that it is doing so. Borrower may not make a Prepayment at any time that Borrower has not made all current monthly payments then due under the term of this Note.

9.2. Borrower may make a Prepayment without paying a Prepayment charge. The Note Holder will apply the Prepayment to the outstanding Principal under this Note. However, Note Holder may first apply a Prepayment as provided in Section 5 hereof.

9.3. Notwithstanding the foregoing. if Borrower chooses to make a Prepayment of the loan prior to the date which is 3 months from the date of this Note, Borrower will still be responsible to Note Holder for all interest due to Note Holder under the terms of this Note up and through said 3 month period.

10. NOTICES.

10.1. All notices to be given pursuant to this Note shall be in writing and sufficient if given by personal in-hand service, by reputable overnight delivery service, or by being mailed postage

Borrower: 108 Gilbert Villas LLC
Loan: ▮▮▮▮▮

prepaid, by registered or certified mail, to such party's address first herein above set forth, along with a copy to Lender's attorney Carrie Ann Jesse, Esquire, 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114. Notices by registered or certified mail shall be considered delivered and become effective upon the earlier of receipt or 3 days after mailing thereof. Notices by personal hand delivery shall be considered delivered and become effective on the day delivered or refused. Notices by overnight delivery service shall be considered delivered and become effective on the next business day after being sent. Notices may be given by a party's attorneys or agents with the same force and effect as though given by such party.

11.    MISCELLANEOUS.

11.1.    Time shall be of the essence with respect to all provisions of this Note.

11.2.    Borrower represents that Borrower has full power, authority and legal right to execute and deliver this Note, and that this Note constitutes the valid and binding obligations of Borrower.

11.3.    This Note cannot be changed, modified, amended, waived, extended, discharged or terminated orally or by estoppel or waiver, regardless of any claimed partial performance referable thereto, or by any alleged oral modification or by any act or failure to act on the part of Borrower or Note Holder.

11.4.    The agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising Borrower, and the term Borrower, as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners, members or managers, as the case may be, shall not thereby be released from any liability. Nothing in the foregoing shall be construed as consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in this Note, the Deed of Trust or the Loan Documents.

11.5.    Titles of articles and sections are for convenience only and in no way define, limit, amplify or describe the scope or intent of any provision hereof.

11.6.    If any paragraph, clause or provision of this Note is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such voidness, invalidity or unenforceability will not affect the remaining paragraphs, clauses and provisions of this Note, which shall nevertheless be binding upon the parties hereto with the same effect as though the void or unenforceable part had been severed and deleted.

11.7.    If more than one person is named in this Note as Borrower, each obligation of Borrower shall be the joint and several obligation of such party or entity.

11.8.    The terms and provision of this Note shall be binding upon and inure to the benefit of Borrower and Note Holder and their respective heirs, agents, representatives and assigns.

11.9.    All the terms and words used in this Note, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Note or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

11.10.    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Documents.

8

Borrower: 108 Gilbert Villas LLC
Loan: ███████████

11.11. This Note shall be governed by and construed in accordance with the laws of the State of Texas.

12. STATE SPECIFIC PROVISION(S).

12.1. Default Rate. From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by the Note Holder, interest shall accrue on the outstanding Principal Sum, and shall be payable, at a rate equal to 18.000% until the Event of Default is cured, which shall not exceed the maximum interest rate allowed by law (the "**Default Rate**"). Should the Default Rate named herein exceed the maximum interest rate allowed by law, then it is the parties intention that the Default Rate shall be calculated at the maximum interest rate allowed by law. Notwithstanding the foregoing, at Lender's discretion, interest shall be calculated at the Default Rate and may be assessed separately, in two components.

12.1.1. Normal Interest. The normal interest shall be calculated based on the current Applicable Interest Rate in accordance with Section 2 above, through and including the date the loan is paid in full.

12.1.2. Marginal Interest. Marginal Interest shall be calculated based on the difference between the Default Rate and the current Applicable Interest Rate upon the entire Principal amount, regardless of whether any Disbursement (as that term is defined in the Escrow Agreement) is actually used by, or disbursed to, Borrower over the course of the Loan, from the day after the Maturity Date through and including the date the loan is paid in full.

12.2. **Warrant of Attorney to Confess Judgment. Borrower irrevocably authorizes and empowers any attorney-at-law, including an attorney hired by Lender, to appear in any court of record and to confess judgment against Borrower for the unpaid amount of the Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, including attorneys' fees plus costs of suit, and to release all errors and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable or void; but the power shall continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower waives any conflict of interest that an attorney hired by Lender may have in acting on behalf of Borrower in confessing judgment against Borrower while such attorney is retained by Lender. Borrower expressly consents to such confessing attorney acting for Borrower in confessing judgment, and consents to Lender paying such confessing attorney a legal fee or allowing such attorney's fees to be paid from any proceeds of collection of the Note. If Borrower is jointly and severally liable under the Loan Documents, then this warrant of attorney to confess judgment is a joint and several warrant of attorney.**

Initials _____

PRIOR TO SIGNING THIS NOTE, BORROWER HAS READ AND UNDERSTANDS ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE INTEREST RATE PROVISIONS; HAS HAD AN OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THE PROVISIONS IN THIS NOTE OR HAS DETERMINED NOT TO CONSULT WITH COUNSEL REGARDING THE PROVISIONS OF THIS

Borrower: 108 Gilbert Villas LLC
Loan: ████████████

NOTE AT ITS OWN RISK, AGREES TO THE TERMS OF THIS NOTE; AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

THIS AGREEMENT MAY BE EXECUTED IN COUNTERPARTS.

[END OF PAGE – SIGNATURE PAGE(S) TO FOLLOW]

Borrower: 108 Gilbert Villas LLC
Loan █████████

IN WITNESS WHEREOF, the Borrower, by and through the Borrower's authorized signatory, has executed and delivered this Promissory Note to the Lender on April 25, 2024.

> **NOTICE: FOR THIS NOTICE "YOU" MEANS THE BORROWER AND "CREDITOR" AND "HIS" MEANS LENDER.**
>
> **WARNING – BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR OTHER CAUSE.**

BORROWER:
108 GILBERT VILLAS LLC,
a Texas limited liability company

By: _Sanjeev Jain_
Its: Sole Member

### NOTARIAL CERTIFICATE

STATE OF _Texas_ )
) SS:
COUNTY OF _Collin_ )

Before me, a Notary Public in and for said State, personally appeared the Trustor, 108 Gilbert Villas LLC, a Texas limited liability company, by and through its Sole Member, Sanjeev Jain, who proved to me to be he/she whose name is signed on this Instrument, who acknowledged before me that he/she signed this Instrument as his/her free and voluntary act(s) and deed(s) for the use(s) and purpose(s) mentioned in this Instrument, and who on oath stated that he/she is authorized to execute this Instrument and in fact executed this Instrument in his/her authorized capacity on behalf of the Trustor.

In testimony whereof, I have hereunto set my hand and official seal in _McKinney, Texas_ (City and State) on this _25th_ day of April, 2024.

AMANDA MCBRIDE
Notary Public, State of Texas
Comm. Expires 06-25-2026
Notary ID 13161861-3

[NOTARY SEAL]    _amanda mcbride_
Notary Public

_____ Personally known    ✓ Produced identification
Type of identification produced _Texas Driver License_

# Exhibit B

GF#

108 GILBERT VILLAS LLC, a Texas limited liability company
(Borrower, Company, Grantor, and/or Trustor)

AVT TITLE SERVICES, LLC, a Texas limited liability company
(Trustee)

FTF LENDING, LLC, a Delaware limited liability company
(Beneficiary, Grantee, and/or Lender)

---

# DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

MAXIMUM PRINCIPAL INDEBTEDNESS FOR
TEXAS RECORDING TAX PURPOSES IS $2,080,000.00.

Date            April 25, 2024
Loan Amount     $2,080,000.00

| Property | Parcel ID |
|---|---|
| 3315 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0090000 |
| 3317 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0100000 |
| 3319 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0110000 |
| 3321 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0120000 |
| 3323 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0130000 |
| 3325 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0140000 |
| 3327 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0150000 |
| 3329 Shivers Drive, Grand Prairie, Texas 75050 | 280700500B0160000 |

County     Dallas
State      Texas

---

PREPARED BY AND RETURN TO:
Michael J. Palumbo, Esquire
Gingo Palumbo Law Group LLC
4700 Rockside Road, Suite 440, Independence, Ohio 44131

<u>DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES,
FIXTURE FILING, AND SECURITY AGREEMENT</u>

MAXIMUM PRINCIPAL INDEBTEDNESS FOR
TEXAS RECORDING TAX PURPOSES IS $2,080,000.00.

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR DRIVER'S LICENSE NUMBER.**

**THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT** (the "**Deed of Trust**") is made and entered on April 25, 2024, by and between **108 GILBERT VILLAS LLC, a Texas limited liability company** (the "**Trustor**"), having a principal place of business and an address for purposes of legal notice and process of 2509 Cladding Drive, Plano, Texas 75075, **AVT TITLE SERVICES, LLC, a Texas limited liability company** (the "**Trustee**"), having a principal place of business and an address for purposes of legal notice and process of 5177 Richmond Avenue, Suite 1230, Houston, Texas 77056, and **FTF LENDING, LLC, a Delaware limited liability company** (the "**Beneficiary**" or "**Lender**"), having a principal place of business and an address for purposes of legal notice and process of 1300 East 9th Street, Suite 800, Cleveland, Ohio 44114. This Instrument covers property which is or may become fixtures and also constitutes a fixture filing under Texas Business and Commerce Code Sections 9.502 and 2A.309, and all other applicable law.

FOR GOOD AND VALUABLE consideration, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, Trustor hereby bargains, sells, conveys and confirms to Trustee, **IN TRUST, WITH POWER OF SALE**, for the benefit and security of Beneficiary, under and subject to the terms and conditions hereinafter set forth, the real property and improvements located in the **State of Texas, County of Dallas**, and more commonly known as (a) **3315 Shivers Drive, Grand Prairie, Texas 75050**, (b) **3317 Shivers Drive, Grand Prairie, Texas 75050**, (c) **3319 Shivers Drive, Grand Prairie, Texas 75050**, (d) **3321 Shivers Drive, Grand Prairie, Texas 75050**, (e) **3323 Shivers Drive, Grand Prairie, Texas 75050**, (f) **3325 Shivers Drive, Grand Prairie, Texas 75050**, (g) **3327 Shivers Drive, Grand Prairie, Texas 75050**, and (h) **3329 Shivers Drive, Grand Prairie, Texas 75050** (individually and/or collectively, the "**Property**"). A copy of the legal description of the Property is set forth in the attached **Exhibit A**.

TO HAVE AND TO HOLD the Property unto Trustee, his successors and assigns, in fee simple forever; and Trustor does hereby covenant with Trustee, his successors and assigns, that it is lawfully seized in fee of the Property; that it has a good right to sell and convey the same; that the same is unencumbered except for any encumbrances set forth in the attached **Exhibit B**, if any, which are incorporated herein by reference (the "**Permitted Encumbrances**"), and that the title and quiet possession thereto it will warrant and forever defend against the lawful claims of all persons.

TOGETHER WITH, all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Property (the "**Improvements**").

TOGETHER WITH, all easements, rights-of-way and rights used in connection therewith or as a means of access thereto, and all tenements, hereditaments and appurtenances thereof and thereto.

TOGETHER WITH, all right, title and interest of Trustor, now owned or hereafter acquired, in and to any land lying within the right-of-way of any street, open or proposed, adjoining the Property, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Property.

1

TOGETHER WITH, all the estate, interest, right, title, other claim or demand, including claims or demands with respect to the proceeds of insurance in effect with respect thereto, which Trustor now has or may hereafter acquire in the Property, and any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Trust Estate, including, without limitation, any awards resulting from a change of grade of streets and awards for severance damage.

The entire estate, property and interest hereby conveyed to Trustee may hereafter be referred to as the "**Trust Estate**".

FOR THE PURPOSE OF SECURING:

a.      Payment of indebtedness in the total principal amount of $2,080,000.00 with interest at the rate specified therein, evidenced by that certain promissory note (the "**Note**") dated April 25, 2024, executed by Trustor, delivered to and is payable to the order of Beneficiary, and which by this reference is hereby made a part hereof, and any and all modifications, extensions and renewals thereof; said Note is payable monthly with a maturity on **August 1, 2025** unless otherwise extended pursuant to the terms of the Note.

b.      Payment of all sums advanced by Beneficiary to protect the Trust Estate, with interest thereon at the maximum lawful rate that the holder of the Note is permitted to contract for and charge under applicable law, in effect on the date hereof or on Maturity, whichever is greater (the "**Default Rate**").

c.      Payment of all other sums, with interest thereon, which may hereafter be loaned to Trustor, or its successors or assigns, by Beneficiary, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

NOTICE IS HEREBY GIVEN THAT THIS DEED OF TRUST SECURES OBLIGATORY ADVANCES AND IS FOR COMMERCIAL PURPOSES. THIS DEED OF TRUST ALSO SECURES CERTAIN FUTURE ADVANCES WHICH ARE OPTIONAL AND NON-OBLIGATORY.

This Deed of Trust, the Note, any guaranty thereof and any other instrument given to evidence or further secure the payment and performance of any obligation secured hereby may hereafter be referred to as the "**Loan Instruments**".

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.      COVENANTS AND AGREEMENT OF TRUSTOR.

1.1.    Payment of Secured Obligations. To pay within 10 days of when due the principal of, and the interest on, the indebtedness evidenced by the Note, charges, fees and all other sums as provided in the Loan Instruments, and the principal of, and interest on, any future advances secured by this Deed of Trust.

1.2.    Maintenance, Repair, Alterations. To keep the Trust Estate in good condition and repair; not to remove, demolish or substantially alter (except such alterations as may be required by laws, ordinances or regulations) any of the Improvements; to complete promptly and in good and workmanlike manner any building or other improvement which may be constructed on the Property and promptly restore in like manner any Improvement which may be damaged or destroyed thereon, and to pay when due all claims for labor performed and materials furnished

2

therefor, to comply with all laws, ordinances, regulations, covenants, conditions and restrictions now or hereafter affecting the Trust Estate, or any part thereof, or requiring any alterations or improvements; not to commit or permit any waste or deterioration of the Trust Estate, to keep and maintain abutting grounds, sidewalks, roads, parking and landscape areas owned or under the control of Trustor in good and neat order and repair; not to commit, suffer or permit any act to be done in or upon the Trust Estate in violation of any law, ordinance or regulation.

1.3.   <u>Required Insurance</u>. To at all times provide, maintain and keep in force the following policies of insurance:

1.3.1.   Trustor shall maintain comprehensive public liability insurance, fire insurance with extended coverage with full replacement costs, builder's risk insurance with respect to any construction, renovation or reconstruction, contractual liability insurance for all indemnification obligations of Trustor under all leases and such other insurance as may be required from time to time by Beneficiary. The amounts, coverages and other terms and conditions of the insurance policies shall at all times be satisfactory to Beneficiary and shall satisfy any coinsurance requirements of Beneficiary. Trustor shall pay as they become due all premiums for such insurance, shall keep each policy in full force and effect, shall deliver to Beneficiary evidence of the payment of the full premium therefor at least 20 days prior to the expiration date of each policy and shall deliver to Beneficiary original policies of insurance, with noncontributory beneficiary clauses in favor of and acceptable to Beneficiary. Trustor's liability insurance policy shall specifically name Beneficiary as an additional insured. Each policy for personal property shall contain a lender loss payee clause and each policy for real property shall contain a beneficiary clause acceptable to Beneficiary. Additionally, each policy shall provide for written notice to Beneficiary at least 20 days prior to any cancellation, nonrenewal or amendment of such insurance.

1.3.2.   TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO (I) KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT SPECIFIED HEREIN; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER OR OTHERWISE AS PROVIDED HEREIN; AND (III) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS AS PROVIDED HEREIN; (B) SUBJECT TO THE PROVISIONS HEREOF, GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVERY TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) SUBJECT TO THE PROVISIONS HEREOF, IF GRANTOR FAILS TO MEET AN REQUIREMENT LISTED IN THE FOREGOING SUBPARTS (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT GRANTOR'S EXPENSE.

1.3.3.   If the Property is located in an area which has been identified by any governmental agency, authority or body as a flood hazard area or the like, then Trustor shall maintain a flood insurance policy covering the Property in an amount not less than the full replacement value of the Improvements, or the maximum limit of coverage available under the federal program, whichever amount is less.

1.3.4.   Such other insurance, and in such amounts, as may from time to time be required by Beneficiary against the same or other hazards.

3

1.4.     Payment of Premiums. In the event Trustor fails to provide, maintain, keep in force or deliver and furnish to Beneficiary the policies of insurance required by Section 1.3, Beneficiary may procure such insurance or single-interest insurance for such risks covering Beneficiary's interest, and Trustor will pay all premiums thereon promptly upon demand by Beneficiary, and, until such payment is made by Trustor, the amount of all such premiums shall bear interest at the Default Rate and shall be secured by this Deed of Trust. At the request of Beneficiary, Trustor shall deposit with Beneficiary, in monthly installments, an amount equal to one-twelfth (1/12) of the aggregate annual insurance premiums, as estimated by Beneficiary, on all policies of insurance required by this Deed of Trust in order to accumulate with Beneficiary sufficient funds to pay such premiums at least 30 days prior to their due date; Trustor further agrees, upon Beneficiary's request, to cause all bills, statements or other documents relating to the foregoing insurance premiums to be sent or mailed directly to Beneficiary. Upon receipt of such bills, statements, or other documents, and providing Trustor has deposited sufficient funds with Beneficiary pursuant to this Section, Beneficiary shall pay such amounts as may be due thereunder out of the funds so deposited with Beneficiary. If at any time and for any reason the funds deposited with Beneficiary are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Beneficiary. Notwithstanding the foregoing, nothing contained herein shall cause Beneficiary to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Beneficiary pursuant to this Section.

1.5.     Insurance Proceeds. That after the happening of any casualty to the Trust Estate or any part thereof, Trustor shall give prompt written notice thereof to Beneficiary.

      1.5.1.     In the event of any damage to or destruction of the Improvements, Beneficiary shall have the option in its sole discretion of applying all or part of the insurance proceeds (i) to any indebtedness secured hereby and in such order as Beneficiary may determine, or (ii) to the restoration of the Improvements or (iii) to Trustor; provided that in the event Beneficiary elects to apply insurance proceeds in repayment of the indebtedness secured hereby, Trustor shall be entitled to prepay the remaining balance of said indebtedness in full, without penalty or premium.

      1.5.2.     In the event of such loss or damage, all proceeds of insurance shall be payable to Beneficiary, and Trustor hereby authorizes and directs any affected insurance company to make payment of such proceeds directly to Beneficiary. Beneficiary is hereby authorized and empowered by Trustor to settle, adjust or compromise any claims for loss, damage or destruction under any policy or policies of insurance.

      1.5.3.     Except to the extent that insurance proceeds are received by Beneficiary and applied to the indebtedness secured hereby, nothing herein contained shall be deemed to excuse Trustor from repairing or maintaining the Trust Estate, regardless of whether or not there are insurance proceeds available or whether any such proceeds are sufficient in amount, and the application or release by Beneficiary of any insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

1.6.     Assignment of Policies Upon Foreclosure. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Trust Estate in extinguishment, in whole or in part, of the debt secured hereby, all right, title and interest of Trustor in and to all policies of insurance required by this Section shall inure to the benefit of and pass to the successor in interest of Trustor or the purchaser or grantee of the Trust Estate.

4

1.7.   Indemnification; Subrogation; Waiver of Offset.

1.7.1.   If Beneficiary is made a party defendant to any litigation concerning this Deed of Trust or the Trust Estate or any part thereof or interest therein, or the occupancy thereof by Trustor, then Trustor shall indemnify, defend and hold Beneficiary harmless from all liability by reason of said litigation, including reasonable attorneys' fees and expenses incurred by Beneficiary in any such litigation, whether or not any such litigation is prosecuted to judgment. If Beneficiary commences an action against Trustor to enforce any of the terms hereof or because of the breach by Trustor of any of the terms hereof, or for the recovery of any sum secured hereby, Trustor shall pay to Beneficiary reasonable attorneys' fees and expenses, and the right to such attorneys' fees and expenses shall be deemed to have accrued on the commencement of such action, and shall be enforceable whether or not such action is prosecuted to judgment. If Trustor breaches any term of this Deed of Trust, Beneficiary may employ an attorney or attorneys to protect its rights hereunder, and, in the event of such employment following any breach of Trustor, Trustor shall pay Beneficiary reasonable attorneys' fees and expenses incurred by Beneficiary, whether or not an action is actually commenced against Trustor by reason of breach.

1.7.2.   Trustor waives any and all right to claim or recover against Beneficiary, its officers, employees, agents and representatives, for loss of or damage to Trustor, the Trust Estate, Trustor's property or the property of others under Trustor's control from any cause insured against or required to be insured against by the provisions of this Deed of Trust.

1.7.3.   All sums payable by Trustor hereunder shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (i) any damage to or destruction or any condemnation or similar taking of the Trust Estate or any part thereof; (ii) any restriction or prevention of or interference with any use of the Trust Estate or any part thereof; (iii) any title defect or encumbrance or any eviction from the Property or the Improvements, or any part thereof, by title paramount or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Beneficiary, or any action taken with respect to this Deed of Trust by any trustee or receiver of Beneficiary, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Beneficiary; (vi) any default or failure on the part of Beneficiary to perform or comply with any other agreement with Trustor; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing; whether or not Trustor shall have notice or knowledge of any of the foregoing. Except as expressly provided herein, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Trustor.

1.8.   Taxes and Impositions.

1.8.1.   Trustor agrees to pay, prior to delinquency, all real property taxes and assessments, general and special, and all other taxes and assessments of any kind or nature whatsoever, including, without limitation, nongovernmental levies or assessments such as maintenance charges, owner association dues or charges or fees, levies or

charges resulting from covenants, conditions and restrictions affecting the Trust Estate, which are assessed or imposed upon the Trust Estate, or become due and payable, and which create, or may create, a lien upon the Trust Estate, or any part thereof, or upon any Personal Property (as defined in Section 3.1 hereof), equipment or other facility used in the operation or maintenance thereof (all of which taxes, assessments and other governmental charges of like nature are hereinafter referred to as "**Impositions**"); provided, however, that if, by law, any such imposition is payable, or may at the option of the taxpayer be paid, in installments, Trustor may pay the same together with any accrued interest on the unpaid balance of such Imposition in installments as the same become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest.

1.8.2.   If at any time after the date hereof there shall be assessed or imposed (i) a tax or assessment on the Trust Estate in lieu of or in addition to the Impositions payable by Trustor pursuant to Subparagraph 1.8.1 hereof, or (ii) a license fee, tax or assessment imposed on Beneficiary and measured by or based, in whole or in part, upon the amount of the outstanding obligations secured hereby, then all such taxes, assessments or fees shall be deemed to be included within the term "**Impositions**" as defined in Subparagraph 1.8.1 hereof, and Trustor shall pay and discharge the same as herein provided with respect to the payment of Impositions. Anything to the contrary herein notwithstanding, Trustor shall have no obligation to pay any franchise, estate, inheritance, income, excess profits or similar tax levied on Beneficiary or on the obligations secured hereby.

1.8.3.   Subject to the provisions of Subparagraph 1.8.4, Trustor covenants, upon written request of Beneficiary, to furnish Beneficiary within 30 days after the date upon which any such Imposition is due and payable by Trustor, official receipts of the appropriate taxing authority, or other proof satisfactory to Beneficiary, evidencing the payments thereof.

1.8.4.   Trustor shall have the right before any delinquency occurs to contest or object to the amount or validity of any such Imposition by appropriate legal proceedings, but this shall not be deemed or construed in any way as relieving, modifying or extending Trustor's covenant to pay any such Imposition at the time and in the manner provided in this Section, unless Trustor has given prior written notice to Beneficiary of Trustor's intent to so contest or object to an Imposition, and unless, at Beneficiary's sole option, (i) Trustor shall demonstrate to Beneficiary's reasonable satisfaction that the legal proceedings shall conclusively operate to prevent the sale of the Trust Estate, or any part thereof, to satisfy such Imposition prior to final determination of such proceedings; or (ii) Trustor shall furnish a good and sufficient bond or surety as requested by and satisfactory to Beneficiary; or (iii) Trustor shall have provided a good and sufficient undertaking as may be required or permitted by law to accomplish a stay of such proceedings.

1.8.5.   At the written request of Beneficiary, Trustor shall pay to Beneficiary, on the day monthly installments of interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the annual Impositions reasonably estimated by Beneficiary to pay the installment of taxes next due on the Trust Estate in order to accumulate with Beneficiary sufficient funds to pay such Impositions 30 days prior to their due date. In such event, Trustor further agrees to cause all bills, statements or other documents relating to such Impositions to be sent or mailed directly to Beneficiary. Upon receipt of such bills, statements or other documents, and

6

providing Trustor has deposited sufficient funds with Beneficiary pursuant to this Section, Beneficiary shall pay such amounts as may be due thereunder out of the funds so deposited with Beneficiary. If at any time and for any reason the funds deposited with Beneficiary are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall promptly deposit an amount equal to such deficiency with Beneficiary. Notwithstanding the foregoing, nothing contained herein shall cause Beneficiary to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Beneficiary pursuant to this Section. Beneficiary shall not be obliged to pay or allow any interest on any sums held by Beneficiary pending disbursement or application hereunder, and Beneficiary may impound or reserve for future payment of Impositions such portion of such payments as Beneficiary may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Beneficiary (exclusive of that portion of said payments which has been applied by Beneficiary on the principal of or interest on the indebtedness secured by the Loan Instruments) sums sufficient to fully pay such Impositions at least 30 days before delinquency thereof, Beneficiary may, at Beneficiary's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Beneficiary with interest at the Default Rate, as herein elsewhere provided, or, at the option of Beneficiary, the latter may, without making any advance whatever, apply any sums held by it upon any obligation of the Trustor secured hereby. Should any Event of Default occur or exist on the part of the Trustor of the payment or performance of any of Trustor's and/or any guarantor's obligations under the terms of the Loan Instruments, Beneficiary may, at any time and at Beneficiary's option, apply any sums or amounts in its hands received pursuant hereto, or as rents or income of the Trust Estate or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Beneficiary may elect. The receipt, use or application of any such sums paid by Trustor to Beneficiary hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Beneficiary or Trustee under the terms of the Loan Instruments or any of the obligations of Trustor and/or any guarantor under this Loan Instrument.

1.8.6. Trustor covenants and agrees not to suffer, permit or initiate the joint assessment of the real and Personal Property, or any other procedure whereby the lien of the real property taxes and the lien of the personal property taxes shall be assessed, levied or charged to the Trust Estate as a single lien.

1.9. Utilities. To pay when due all utility charges which are incurred by Trustor for the benefit of the Trust Estate or which may become a charge or lien against the Trust Estate for gas, electricity, water or sewer services furnished to the Trust Estate, and all other assessments or charges of a similar nature, whether public or private, affecting the Trust Estate or any portion thereof, whether or not such taxes, assessments or charges are liens thereon.

1.10. Actions Affecting Trust Estate. To appear in and contest any action or proceeding purporting to adversely affect the security hereof or the rights or powers of Beneficiary or Trustee. If the Trustee or Beneficiary shall be made a party to or shall intervene in any action or proceeding affecting the Trust Estate or the title thereto, or the interests of Trustee or Beneficiary under this Deed of Trust, Trustee and Beneficiary shall be reimbursed by Trustor, promptly and without demand, all out-of-pocket costs and expenses, including cost of evidence of title and reasonable attorneys' fees, incurred by him or either of them in connection with or related to

7

any such action or proceeding, and the same will be secured hereby as a further charge and lien upon the Trust Estate.

1.11. <u>Actions by Trustee and/or Beneficiary to Preserve Trust Estate</u>. Following an Event of Default by Trustor under any of the Loan Instruments, Beneficiary and/or Trustee, each in its own discretion, without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof. In connection therewith (without limiting their general powers), Beneficiary and/or Trustee shall have and are hereby given the right, but not the obligation, (i) to enter upon and take possession of the Trust Estate; (ii) to make additions, alterations, repairs and improvements to the Trust Estate which they or either of them may reasonably consider necessary or proper to keep the Trust Estate in good condition and repair; (iii) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Beneficiary or Trustee; (iv) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may reasonably affect the security of this Deed of Trust or be prior or superior hereto; and (v) in exercising such powers, to pay necessary reasonable expenses, including employment of counsel or other necessary or desirable consultants. Trustor shall, promptly upon demand therefor by Beneficiary, pay all reasonable costs and expenses, including employment of counsel or other necessary or desirable consultant. Trustor shall, promptly upon demand therefor by Beneficiary, pay all out-of-pocket costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing rights, including, without limitation, costs of evidence of title, court costs, appraisals, surveys and reasonable attorneys' fees.

1.12. <u>Survival of Warranties</u>. To fully and faithfully satisfy and perform the obligations of Trustor contained in the Trustor's loan application, if any, and Beneficiary's loan commitment, if any, and any such application and commitment between Trustor and any assignee of Beneficiary, and each agreement of Trustor incorporated by reference therein or herein, and any modification or amendment thereof, all representations, warranties and covenants of Trustor contained therein or incorporated by reference shall survive the closing and funding of the loan evidenced by the Note and shall remain continuing obligations, warranties and representations of Trustor during any time when any portion of the obligations secured by this Deed of Trust remain outstanding.

1.13. <u>Eminent Domain</u>. That should the Trust Estate, or any material part thereof or interest therein, be taken or damaged by reason of any public improvement or condemnation proceeding, or in any other manner (the "**Condemnation**"), or should Trustor receive any notice or other information regarding such proceeding, Trustor shall give prompt written notice thereof to Beneficiary.

1.14. Beneficiary shall be entitled to all compensation, awards and other payments or relief therefor, and shall be entitled, at its option, to commence, appear in and prosecute in its own name any action or proceedings. Beneficiary shall also be entitled to make any compromise or settlement in connection with such taking or damage following written notice to Trustor. All such compensation, awards, damages, rights of action and proceeds awarded to Trustor (the "**Proceeds**") are hereby assigned to Beneficiary and Trustor agrees to execute such further assignments of the Proceeds as Beneficiary or Trustee may require.

1.15. In the event any portion of the Trust Estate is so taken or damaged, Beneficiary shall have the option, in its sole and absolute discretion, to apply all such Proceeds, after deducting therefrom all out-of-pocket costs and expenses (regardless of the particular nature thereof and whether

8

incurred with or without suit), including reasonable attorneys' fees, incurred by it in connection with such Proceeds, to any indebtedness secured hereby and in such order as Beneficiary may determine, or to apply all such Proceeds, after such deductions, to the restoration of the Trust Estate upon such conditions as Beneficiary may determine. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

1.16.   Additional Security. That in the event Beneficiary at any time holds additional security for any of the obligations secured hereby, it may enforce the sale thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder.

1.17.   Appointment of Successor Trustee. That Trustee may resign at any time, with or without cause, by written instrument to that effect delivered to Beneficiary. By instrument properly executed, acknowledged and filed for record in the Office of the Clerk in the County where this Deed of Trust is recorded, Beneficiary may (for any reason satisfactory to Beneficiary and whether or not Trustee has resigned by an instrument placed of record) appoint a successor Trustee, who from and after the filing of such appointment shall become vested with the title to the Property in trust and shall have all of the powers, authority and duties vested in Trustee by this Deed of Trust. In the event any foreclosure advertisement is running or has run at the time of such appointment of a successor Trustee, the successor Trustee may consummate the advertised sale without the necessity of republishing such advertisement. The making of oath or giving of bond by Trustee or any successor Trustee is expressly waived.

1.18.   Successors and Assigns. That this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term "**Beneficiary**" shall mean the owner and holder of the Note, whether or not named as Beneficiary herein.

1.19.   Inspections. That Beneficiary, or its agents, representatives or workmen, are authorized to enter at any reasonable time, upon reasonable notice to Trustor, on or upon any part of the Trust Estate for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of any of the Loan Instruments.

1.20.   Liens. To pay and promptly discharge, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond or the amount claimed, or otherwise giving security for such claim, or in such manner as is or may be prescribed by law at Trustor's cost and expense, all liens, encumbrances and charges upon the Trust Estate, or any part thereof or interest therein. If Trustor shall fail to discharge any such lien, encumbrance or charge, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond or the amount claimed, or otherwise giving security for such claim, or in such manner as is or may be prescribed by law. All sums advanced by Beneficiary to protect the Trust Estate shall bear interest at the Default Rate.

1.21.   Trustee's Powers. At any time, or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of said Trust Estate, Trustee may (i) reconvey any part of said Trust Estate, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement

9

thereon, (iv) or join in any extension agreement or any agreement subordinating the lien or charge hereof.

1.22.   Beneficiary's Power. Without affecting the liability of any other person liable for the payment of any obligation herein mentioned, and without affecting the lien or charge of this Deed of Trust upon any portion of the Property not then or theretofore released as security for the full amount of all unpaid obligations, Beneficiary may, from time to time and without notice, (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation, (iii) grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed, at any time at Beneficiary's option, any parcel, portion or all of the Trust Estate, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make compositions or other arrangements with creditors in relation thereto.

1.23.   Financial Statements. Trustor will cause to be delivered to Beneficiary as soon as practicable, but in any event within 120 days after the close of each operating year of Trustor, an annual operating statement, in form satisfactory to Beneficiary. Trustor will also cause to be delivered to Beneficiary (a) as soon as available, on an annual basis, and in any event within 13 months from the previously submitted financial statements, such financial statements of the Trustor as may be reasonably requested by Beneficiary from time to time showing the liquidity and financial condition of the Trustor as of the close of the immediately preceding fiscal year; and (b) as soon as available, on quarterly basis, and in any event within 30 days of the close of the immediately preceding fiscal quarter, operating statements for the Property as of the close of such fiscal quarter showing the results of the operations pertaining to the Property during such fiscal quarter.

1.24.   Tradenames. At the request of Beneficiary, Trustor shall execute a certificate in form satisfactory to Beneficiary listing the tradenames under which Trustor intends to operate the Trust Estate and representing and warranting that Trustor does business under no other tradenames with respect to the Trust Estate. Trustor shall immediately notify Beneficiary in writing of any change in said tradenames, and will, upon request of Beneficiary, execute any additional financing statements and other certificates revised to reflect the change in tradename.

1.25.   Hazardous Substances. Trustor warrants that, to the best of Trustor's knowledge, the Property is in compliance with all federal (including, without limitation, the Resource Conservation and Recovery Act), state, and local environmental laws pertaining to air and water pollution control and to hazardous substances (including, without limitation, toxic substances, flammable substances, explosives, radioactive materials, hazardous wastes, pollutants, pollution, polychlorinated biplenyls, asbestos, friable asbestos, and related materials, and any material defined as hazardous under applicable federal, state, or local environmental laws) or governing the use, storage, treatment, transportation, manufacture, refinement, handling, or production of such hazardous substances; and Trustor covenants that the Property shall remain at all times in compliance with said environmental laws now existing or hereafter enacted during the term of this Deed of Trust. Without limiting the generality of the foregoing, Trustor:

1.26.   Represents that Trustor has not, and to the best of Trustor's actual knowledge, no prior owner or current or prior tenant or other occupant of all or part of the Property has, used such hazardous substances on, from, or affecting the Property in any manner which violates any such environmental laws, materially diminishes the value of the Property, would allow any public authority to take any adverse action under said environmental laws, or causes or creates any liens on the Property, and that, to the best of Trustor's knowledge, no such hazardous substances have been disposed of, or are located, on the Property; and

10

1.27.    Covenants that Trustor shall indemnify and hold Beneficiary harmless from all:

    1.27.1.    claims (by any person, entity, or public authority), causes of action, fines, penalties, damages (including, without limitation, reasonable attorneys' fees), loss, and expense (including, without limitation, cost of cleanup, containment, or removal of hazardous substances), whether the foregoing are foreseeable or unforeseeable, and

    1.27.2.    liens which are asserted against the Property, as a result of said environmental laws, or alleged or proven violations thereof, in respect to the Property, occurring or existing while Trustor has or had any interest in the Property, irrespective of whether caused by Trustor and irrespective of whether Trustor has knowledge thereof on the date of this Deed of Trust or during the term of this Deed of Trust; and the obligations of Trustor under this Subparagraph shall survive irrespective of any transfer by Trustor of any interest in the Property, and shall survive foreclosure of this Deed of Trust or a conveyance in lieu of such foreclosure.

2.    ASSIGNMENT OF RENTS, ISSUES AND PROFITS.

    2.1.    Assignment of Rents. Trustor hereby assigns and transfers to Beneficiary all the rents, issues and profits of the Trust Estate, including, without limitation, all cash or security deposits, advance rentals, and deposits or payments of similar nature, and hereby gives to and confers upon Beneficiary the right, power and authority to collect such rents, issues and profits. Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary at any time and from time to time, after the occurrence of an Event of Default hereunder, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Trustor or Beneficiary, for all such rents, issues and profits and apply the same to the indebtedness secured hereby; provided, however, that Trustor shall have the right to collect such rents, issues and profits (but not more than one (1) month in advance) prior to or at any time there is not an Event of Default under any of the Loan Instruments. The assignment of the rents, issues and profits of the Trust Estate in this Article II is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest. The rents, issues and profits are hereby assigned absolutely by Trustor to Beneficiary contingent only upon the occurrence of an Event of Default under any of the Loan Instruments.

    2.2.    Collection Upon Default. Upon any Event of Default under any of the Loan Instruments, Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Trust Estate, or any part thereof; in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid; and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The collection of such rents, issues and profits, or the entering upon and taking possession of the Trust Estate, or the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default.

    2.3.    Inconsistent Provisions. In the event Trustor has this date executed an Assignment of Leases and Rents, separate and apart from this Article II, in favor of Beneficiary (the "**Assignment**") and there are provisions contained in the Assignment which are inconsistent with the provisions contained in this Article II, it shall be deemed to be the intent of the parties that the provisions contained in the Assignment supersede any inconsistent provisions contained in this Article II.

11

3.     SECURITY AGREEMENT.

3.1.     Creation of Security Interest. Trustor hereby grants to Beneficiary a security interest in all personal property (the "**Personal Property**") owned by Trustor, and now or at any time hereafter located on or at the Property or used in connection therewith, including, but not limited to:

3.1.1.     All heating, plumbing, lighting, water heating, incinerating, ventilating and air conditioning equipment, swimming pool equipment, shades, awnings, blinds, drapes and draperies, linoleum, rugs and carpeting, all furniture, furnishings, machinery, equipment, and fixtures (whether or not so attached to the realty as to become a part thereof) and all other tangible personal property of every kind and character owned by Trustor now or at any time hereafter located in or on the Improvements or used in connection therewith, together with all substitutions, additions, and accessions to any and all of the foregoing, and exchanges and replacements of any and all of the foregoing;

3.1.2.     All building materials owned by Trustor now or hereafter located on the Property, prior to incorporation of said building materials in the Improvements;

3.1.3.     All plans and specifications owned by Trustor related to the Property and the Improvements;

3.1.4.     All rents, incomes, profits, revenues, royalties, bonuses, rights, accounts, contract rights, general intangibles, and benefits whether arising under any leases or tenancies now existing or hereafter created on the Property and the Improvements, or otherwise;

3.1.5.     All leases and subleases covering the Property or any portion thereof now or hereafter existing or entered into, and all rights and interests thereunder, including without limitation, all cash or security deposits, advance rentals, guarantees and deposits of similar nature;

3.1.6.     All judgments, awards of damages, and settlements hereafter made to Trustor as a result of or in lieu of any taking of the Property and Improvements, or any part thereof or interest therein under the power of eminent domain, or for any damage (whether cause by such taking or otherwise) to the Property or the Improvements or any part thereof or interest therein, including any award for change of grade of streets;

3.1.7.     All proceeds of hazard or other insurance policies payable to Trustor maintained with respect to any Personal Property described in Subparagraphs 3.1.1 and 3.1.2 above or with respect to the Improvements (whether or not Beneficiary is loss payee thereof); and

3.1.8.     All proceeds of any and all of the foregoing collateral. (Although proceeds are covered, Beneficiary does not authorize the sale or other transfer of any of the collateral or the transfer of any interest in the collateral);

all for the purpose of securing all obligations of Trustor contained in any of the Loan Instruments.

3.2.     Warranties, Representations and Covenants of Trustor. Trustor hereby warrants, represents and covenants as follows:

12

3.2.1. Except for the security interest granted hereby, Trustor is, and as to portions of the Personal Property to be acquired after the date hereof will be, the sole owner of the Personal Property, free from any adverse lien, security interest, encumbrance or adverse claims thereon of any kind whatsoever. Trustor will notify Beneficiary of, and will defend the Personal Property against, all claims and demands of all persons at any time claiming the same or any interest therein.

3.2.2. Trustor will not lease, sell, convey or in any manner transfer the Personal Property, except in the normal course of business, without the prior written consent of Beneficiary, which consent shall not unreasonably be withheld.

3.2.3. The Personal Property is not used or bought for personal, family or household purposes.

3.2.4. The Personal Property will be kept on or at the Property and Trustor will not remove the Personal Property from the Property without the prior written consent of Beneficiary, except (i) in the ordinary course of business and (ii) such portions or items of Personal Property which are consumed or worn out in ordinary usage, all of which shall be promptly replaced by Trustor.

3.2.5. Trustor maintains a place of business in the State of Texas and Trustor will immediately notify Beneficiary in writing of any change in its place of business as set forth in the beginning of this Deed of Trust.

3.2.6. Trustor hereby authorizes Beneficiary to file all financing statements and renewals and amendments thereof pursuant to the Uniform Commercial Code of Texas in form satisfactory to Beneficiary which are necessary to perfect and continue its interests hereunder, and will pay the cost of filing same in all public offices wherever filing is reasonably deemed by Beneficiary to be necessary or desirable.

3.2.7. All covenants and obligations of Trustor contained herein relating to the Trust Estate shall be deemed to apply to the Personal Property whether or not expressly referred to herein.

3.2.8. This Deed of Trust constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Texas.

4.  REMEDIES UPON DEFAULT.

4.1. Any of the following events shall be deemed an "**Event of Default**" hereunder:

4.1.1. Default shall be made in the payment of any installment of principal or interest within 10 days of when due under any of the Loan Instruments; or

4.1.2. Trustor or any guarantor shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors; or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Trustor or any guarantor of all or any part of the Trust Estate or the assets of any guarantor, or of any or all of the royalties, revenues, rents, issues

13

or profits thereof, or shall make any general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

4.1.3. A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Trustor or any guarantor seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of 60 days (whether or not consecutive) from the first date of entry thereof; or any trustee, receiver or liquidator of Trustor or any guarantor of all or any part of the Trust Estate or the assets of any guarantor, or of any or all of the royalties, revenues, rents, issues or profits thereof, shall be appointed without the consent or acquiescence of Trustor or any guarantor and such appointment shall remain unvacated and unstayed for an aggregate of 60 days (whether or not consecutive); or

4.1.4. A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Trust Estate or the assets of any guarantor, or any judgment involving monetary damages shall be entered against Trustor or any guarantor which shall become a lien on the Trust Estate or the assets of any guarantor or any portion thereof or interest therein and such execution, attachment or similar process or judgment is not released, bonded, satisfied, vacated or stayed within 60 days after its entry or levy; or

4.1.5. There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in any of the Loan Instruments or any part thereof, and such breach shall not be cured within 30 days after written notice thereof to Trustor (unless otherwise provided in the relevant Loan Instrument); or

4.1.6. If all or any part of the Property or any interest therein is sold, transferred or further encumbered by Trustor except for the granting of leasehold estates in the normal course of business without Beneficiary's prior written consent, Beneficiary may, at its sole option, declare all sums secured by this Deed of Trust to be immediately due and payable; or

4.1.7. Any change in the ownership of Trustor or any entity guarantor without the prior written consent of Beneficiary; or

4.1.8. If Trustor enters into any interest rate swap agreements or other derivative transactions without Beneficiary's prior written consent.

4.2. <u>Acceleration Upon Default, Additional Remedies</u>. In the event of any Event of Default hereunder, Beneficiary may declare all indebtedness secured hereby to be immediately due and payable without further demand and the same shall thereupon become immediately due and payable without any presentment, demand, protest or notice of any kind. Thereafter Beneficiary may:

4.2.1. Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Trust Estate, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems reasonably necessary or desirable to preserve the value, marketability or rentability of the Trust Estate, or part thereof or

14

interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Trust Estate, sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of the Trust Estate, the collection of such rents, issues and profits and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Trust Estate or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan Instruments or by law upon occurrence of any Event of Default, including the right to exercise the power of sale;

4.2.2.   Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants hereof;

4.2.3.   Exercise any or all of the remedies available to a secured party under the Texas Uniform Commercial Code, including, but not limited to:

4.2.3.1. Either personally or by means of a court appointed receiver, take possession of all or any of the Personal Property and exclude therefrom Trustor and all others claiming under Trustor, and thereafter hold, store, use, operate, manage, maintain and control, make repairs, replacements, alterations, additions and improvements to and exercise all rights and powers of Trustor in respect to the Personal Property or any part thereof. In the event Beneficiary demands or attempts to take possession of the Personal Property in the exercise of any rights under any of the Loan Instruments, Trustor promises and agrees to promptly turn over and deliver complete possession thereof to Beneficiary;

4.2.3.2. Without notice to or demand upon Trustor, make such payments and do such acts as Beneficiary may deem necessary to protect its security interest in the Personal Property, including, without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior to or superior to the security interest granted hereunder, and in exercising any such powers or authority to pay all expenses incurred in connection therewith;

4.2.3.3. Require Trustor to assemble the Personal Property, or any portion thereof, at a place designated by Beneficiary and reasonably convenient to both parties, and promptly to deliver such Personal Property to Beneficiary, or an agent or representative designated by it. Beneficiary, and its agents and representatives, shall have the right to enter upon any or all of Trustor's premises and property to exercise Beneficiary's rights hereunder;

4.2.3.4. Sell, lease or otherwise dispose of the Personal Property at public sale, with or without having the Personal Property at the place of sale, and upon such terms and in such manner as Beneficiary may determine in a commercially reasonable manner in accordance with the Texas Uniform Commercial Code. Beneficiary may be a purchaser at any such sale;

15

4.2.3.5. Sell, lease or otherwise dispose of the Personal Property through the Trustee, at Beneficiary's option, pursuant to applicable law; and/or

4.2.3.6. Unless the Personal Property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Beneficiary shall give Trustor at least 10 days prior written notice of the time and place of any public sale of the Personal Property or other intended disposition thereof. Such notice may be mailed to Trustor at the address set forth at the beginning of this Deed of Trust; and/or

4.2.4. Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Trust Estate to be sold.

4.3. Foreclosure by Power of Sale. Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

4.3.1. Upon receipt of such notice from Beneficiary, Trustee shall (i) advertise the sale of all or any portion of the Trust Estate for 21 days by 3 weekly notices in some newspaper of general circulation published in the County or Counties in which the Trust Estate is situated, (ii) mail a copy of the notice of sale advertised in said newspaper to Trustor on or before the first day of publication, and (iii) sell the Trust Estate, in one or more parcels and in such order as Trustee may determine as provided in Subsection 4.3.7 below, for cash or other immediately available funds to the highest bidder(s), free from equity of redemption, statutory right of redemption, homestead, dower, and all other rights and exemptions of every kind, all of which are hereby expressly waived, and said Trustee shall execute one or more conveyances to the purchaser(s) in fee simple, as necessary, and deliver possession to such purchaser(s), which Trustor binds itself shall be given without obstruction, hindrance or delay, once sold.

4.3.2. If Trustee announces either before or after bidding that, upon the failure of the highest bidder to complete the sale for cash or other immediately available funds within the time frame announced by Trustee, the Trust Estate, or any one or more parcels thereof, may be sold to the second highest bidder, and if the highest bidder should subsequently fail to complete the purchase within the time frame announced by Trustee at the sale, then the Trustee, may, at its option, close the sale of the Trust Estate, or any one or more parcels thereof, to the second highest bidder.

4.3.3. Trustee may postpone, on one or more occasions and without further publication, the sale of all or any portion of the Trust Estate by public announcement at the time and place of any previously scheduled sale. As part of any such public announcement, Trustee shall announce the later time and/or date of the rescheduled sale. One or more exercises of the power of sale provided for in this Deed of Trust will not extinguish or exhaust said power until the entire Trust Estate has been sold or the indebtedness secured hereby has been paid in full.

4.3.4. Trustee may delegate, in Trustee's sole discretion, any authority possessed under this Deed of Trust, including the authority to conduct a foreclosure sale.

4.3.5. The proceeds of any such sale shall be applied as follows: (i) to the payment of the expenses of making, maintaining and executing this Trust, the protection of the

16

Property, and all costs and expenses of the sale, including, without limitation, the expense of any litigation, reasonable attorneys' fees and expenses, reasonable compensation to the Trustee and costs of title evidence; (ii) to the payment of the indebtedness secured hereby or intended so to be, without preference or priority of any part over any other part, in such order as Beneficiary, in its sole discretion, directs; and; (iii) should there be any surplus, the Trustee will pay it to the person or persons legally entitled thereto. If prior to any foreclosure sale, a third party represents to the Trustee in writing that such party holds the next junior lien to this Deed of Trust (whether by judgment lien, junior deed of trust or otherwise), the Trustee may disburse surplus proceeds to such third party in an amount not to exceed the amount of lien alleged by the third party in its written statement to the Trustee.

4.3.6.    Upon any foreclosure sale or sale of all or any portion of the Trust Estate under the power herein granted, it is agreed that Beneficiary may bid for and purchase the Trust Estate as any third person might, and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price, but Beneficiary will not be required to present cash at the sale except to the extent, if any, by which Beneficiary's bid exceeds the amount of the indebtedness secured hereby, including all expenses of collection and sale provided for in this Deed of Trust.

4.3.7.    In case of any sale under this Deed of Trust, the Trust Estate may be sold as an entirety or in parcels, by one sale or by several sales, as may be deemed by the Trustee to be appropriate and without regard to any right of the Trustor or any other person to the marshalling of assets. In the event that a sale of less than all of the Trust Estate has been effected and the Note secured hereby has not been paid in full, then the unsold portion of the Trust Estate shall continue to be subject to this Deed of Trust, and the Deed of Trust shall continue in full force and effect in accordance with its terms.

4.4.    Appointment of Receiver. If an Event of Default described in Section 4.1 of this Deed of Trust shall have occurred and be continuing, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Trust Estate or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Trust Estate, and Trustor hereby irrevocably consents to such appointment. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in Section 4.2.1 and shall continue as such and exercise all such powers until the date of confirmation of sale of the Trust Estate unless such receivership is sooner terminated.

4.5.    Remedies Not Exclusive. Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Instrument or other agreement or any laws now or hereafter in force, notwithstanding that some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement, whether by court action, power of sale or otherwise, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Beneficiary or Trustee in such order and manner as they, or either of them, may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other

17

remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Instruments to Trustee or Beneficiary, or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

4.6.    Notice of Default or Sale. Beneficiary agrees to provide written notice to Trustor at the address set forth for Trustor at the beginning of this Deed of Trust of any default or sale hereunder in accordance with applicable law and the terms of this Deed of Trust, including, without limitation, the requirements of Section 5.4 hereof.

4.7.    Trustee Provisions.

4.7.1.    Trustee is hereby released from all obligations imposed by statute that can be waived, including, without limitation, any requirement of qualification or bond.

4.7.2.    Trustee will be entitled to reasonable compensation for all services rendered, whether or not a foreclosure is held hereunder, and will be reimbursed for all reasonable expenses, charges and attorneys' fees, including fees for legal advice concerning Trustee's duties and rights in the Trust Estate or any portion thereof and title examinations.

4.7.3.    Trustee may rely upon any document believed by Trustee in good faith to be genuine. All money received by Trustee will, until used or applied as in this Deed of Trust provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee will not be liable for interest thereon.

5.    MISCELLANEOUS.

5.1.    Governing Law. This Deed of Trust and the Note secured hereby are hereby executed and delivered in the State of Texas and shall be governed by the laws of such State. In the event that any provision or clause of any of the Loan Instruments conflicts with applicable laws, such conflicts shall not affect other provisions of such Loan Instruments and are declared to be severable. This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.2.    Trustor Waiver of Rights. Trustor waives the benefit of all laws now existing or that hereafter may be enacted providing for (i) any appraisement before sale of any portion of the Trust Estate, and (ii) the benefit of all laws that may be hereafter enacted in any way extending the time for the enforcement of the collection of the Note or the debt evidenced thereby or creating or extending a period of redemption from any sale made by collecting said debt. To the full extent Trustor may do so, Trustor agrees that Trustor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for an appraisement, valuation, stay, extension or redemption, and Trustor, for Trustor, Trustor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Trust Estate, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created, whether such rights are statutory, common law or otherwise. If any law referred to in this Section and now in force, of which Trustor, Trustor's

18

heirs, devisees, representatives, successors and assigns or other person might take advantage despite this Section shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section. Trustor expressly waives and relinquishes any and all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of Texas pertaining to the rights and remedies of sureties. TO THE EXTENT PERMITTED BY LAW, TRUSTOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO BENEFICIARY EXERCISING BENEFICIARY'S RIGHTS UNDER THIS DEED OF TRUST.

5.3. Waiver of Trial by Jury. GRANTOR AND BENEFICIARY EACH WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT, OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS DEED OF TRUST, OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF THE OTHER PARTY, ITS OFFICERS, EMPLOYEES, DIRECTORS, OR AGENTS IN CONNECTION THEREWITH.

5.4. Satisfaction of Indebtedness. At such time as all indebtedness secured by this Deed of Trust has been paid in full and all obligations of Trustor under the Loan Instruments have been performed, Beneficiary agrees to execute a release of lien or other such instrument necessary to evidence the cancellation of this Deed of Trust.

5.5. Notices. Whenever Beneficiary, Trustor or Trustee shall desire to give or serve any notice, demand, request or other communication with respect to this Deed of Trust, each such notice, demand, request or other communication shall be in writing and shall be effective only if the same is delivered by personal service or mailed by registered mail, postage prepaid, return receipt requested, addressed to the address set forth at the beginning of this Deed of Trust. Any party may at any time change its address for such notices by delivering or mailing to the other parties hereto, as aforesaid, a notice of such change.

5.6. Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee covenants faithfully to perform the trust herein created, being liable, however, only for gross negligence or willful misconduct.

5.7. Captions. The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust.

5.8. Invalidity of Certain Provisions. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Trust Estate, the unsecured or partially secured portion of the debt shall be completely paid prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust.

5.9. Subrogation. To the extent that proceeds of the Note are advanced to pay any outstanding lien, charge or prior encumbrance against the Trust Estate, such proceeds have been or will be advanced by Beneficiary at Trustor's request and Beneficiary shall be subrogated to any and

19

all rights and liens owed by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released.

5.10. Gender and Number. As used herein, the singular number shall include the plural and vice versa and the use of any gender shall be applicable to all genders.

5.11. Cross-Collateralization. In addition to the Note, this Deed of Trust secures all obligations, debts, and liabilities, plus interest thereon, of Trustor to Lender and/or Lender's successors and assigns, as well as all claims by Lender against Trustor, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Trustor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party, or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

5.12. Due on Sale – Consent by Beneficiary. Beneficiary may, at Beneficiary's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Beneficiary's prior written consent, of all or any part of the Property, or any interest in the Property. A "**sale or transfer**" means the conveyance of the Property or any right, title, or interest in the Property; whether legal, beneficial, or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than 3 years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property. However, this option shall not be exercised by Beneficiary if such exercise is prohibited by federal law or by Texas law.

5.13. Appraisal of the Property. Beneficiary shall have the right to request an appraisal of the Property compiled by an appraiser selected by Beneficiary as often as Beneficiary reasonably believes is necessary. Trustor shall reimburse Beneficiary for any such appraisal, through Trustor's obligation to do so, absent an Event of Default or some modification to the indebtedness, shall be limited to once annually. Trustor shall cooperate with Beneficiary's appraiser in providing reasonable access to the Property and such other information as Beneficiary and/or such appraiser reasonably requires for purposes of completing the appraisal. Any such appraisal shall be the property of Beneficiary. Moreover, if any such appraisal demonstrates that there has been a material decline in the value of the Property such that the loan to value ratio (as defined below) no longer meets Beneficiary's underwriting requirements, Beneficiary reserves the right to demand from Trustor a principal reduction payment in an amount sufficient to reduce the loan to value ratio to meet such guidelines. Failure of Trustor to make such payment within 60 days after demand therefore shall be an additional Event of Default under this Deed of Trust. As used herein, "**loan to value ratio**" means the ratio of (i) the then outstanding Debt to (ii) the then "as is" appraised value of the Property.

5.14. Substitute Trustee. Beneficiary, at Beneficiary's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the County in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties conferred upon Trustee herein and by applicable law.

5.15.  <u>Waiver of Homestead Exemption</u>. Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Texas as to all indebtedness secured by this Deed of Trust.

5.16.  <u>Time Is of the Essence</u>. Time is of the essence in the performance of this Deed of Trust.

6.  CONSTRUCTION LOAN DEED OF TRUST.

6.1.  The Note secured hereby represents funds advanced by Beneficiary to Grantor at the special instance and request of the Grantor and the Grantor hereby expressly confesses, recognizes, and acknowledges a Deed of Trust lien on said Property as security therefor for the purpose of a commercial loan.

6.2.  This Deed of Trust is a "construction mortgage" within the meaning of Section 9.334 of the Texas Business and Commerce Code. The liens and security interests created and granted by this Deed of Trust secure an obligation incurred for the construction of improvements on land, including the acquisition costs of the land.

6.3.  Grantor agrees to comply with the covenants and conditions of the construction loan agreement, if any, executed in connection with the Note and this Deed of Trust. All advances made by Beneficiary under the construction loan agreement or Note will be indebtedness of Grantor secured by the liens created by this Deed of Trust, and such advances are conditioned as provided in the construction loan agreement.

6.4.  All amounts disbursed by Beneficiary before completion of the improvements to protect the security of this Deed of Trust up to the principal amount of the Note will be treated as disbursements under the construction loan agreement or note. All such amounts will bear interest from the date of disbursement at the rate stated in the Note, unless collections from Grantor of interest at the rate would be contrary to applicable law, in which event such amounts will bear interest at the rate stated in the Note for matured, unpaid amounts and will be payable on notice from Beneficiary to Grantor requesting payment.

6.5.  From time to time as Beneficiary deems necessary to protect Beneficiary's interests, Grantor will, on request of Beneficiary, executed and deliver to Beneficiary, in such form as Beneficiary directs, assignments of any and all rights or claims that relate to the construction of improvements on the Property.

6.6.  In case of breach by Grantor of the covenants and conditions of the construction loan agreement or Note, Beneficiary, at Beneficiary's option, with or without entry on the Property, made (a) invoke any of the rights or remedies provided in the construction loan agreement or Note, (b) accelerate the amounts secured by this Deed of Trust and invoke the remedies provided in this Deed of Trust, or (c) do both.

6.7.  If, after commencement of amortization of the Note, the Note and this Deed of Trust are sold by Beneficiary, after the sale the construction loan agreement will cease to be a part of this Deed of Trust, and Grantor will not assert any right of setoff, counterclaim, or other claim or defense arising out of or in connection with the construction loan agreement against the obligations of the Note and this Deed of Trust.

**THIS IS A BALLOON DEED OF TRUST AND THE FINAL PRINCIPAL PAYMENT OF THE PRINCIPAL BALANCE DUE UPON MATURITY IS $2,080,000.00 TOGETHER WITH ACCRUED**

21

INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE BENEFICIARY UNDER THE TERMS OF THIS AGREEMENT.

[END OF PAGE – SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Trustor, by and through the Trustor's authorized signatory, has executed and delivered this Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement to the Beneficiary on April 25, 2024.

TRUSTOR:
108 GILBERT VILLAS LLC,
a Texas limited liability company

By: Sanjeev Jain
Its: Sole Member

## NOTARIAL CERTIFICATE

STATE OF _Texas_ )
                             ) SS:
COUNTY OF _Collin_ )

Before me, a Notary Public in and for said State, personally appeared the Trustor, 108 Gilbert Villas LLC, a Texas limited liability company, by and through its Sole Member, Sanjeev Jain, who proved to me to be he/she whose name is signed on this Instrument, who acknowledged before me that he/she signed this Instrument as his/her free and voluntary act(s) and deed(s) for the use(s) and purpose(s) mentioned in this Instrument, and who on oath stated that he/she is authorized to execute this Instrument and in fact executed this Instrument in his/her authorized capacity on behalf of the Trustor.

In testimony whereof, I have hereunto set my hand and official seal in _McKinney, Texas_ (City and State) on this _25th_ day of April, 2024.

AMANDA MCBRIDE
Notary Public, State of Texas
Comm. Expires 06-25-2026
Notary ID 13161861-3

[NOTARIAL SEAL]

_amanda mcbride_
Notary Public

_____ Personally known     ✓ Produced identification
Type of identification produced _texas driver license_

23

EXHIBIT A

LEGAL DESCRIPTION

Legal Description of Land:

TRACT 1
Being Lot 9, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:      3315 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:     280700500B0090000

TRACT 2
Being Lot 10, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:      3317 Shivers Drive Grand Prairie, Texas 75050
Parcel ID:     280700500B0100000

TRACT 3
Being Lot 11, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:      3319 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:     280700500B0110000

TRACT 4
Being Lot 12, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:      3321 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:     280700500B0120000

TRACT 5
Being Lot 13, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:      3323 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:     280700500B0130000

TRACT 6
Being Lot 14, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:          3325 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:        280700500B0140000


TRACT 7
Being Lot 15, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:          3327 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:        280700500B0150000


TRACT 8
Being Lot 16, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:          3329 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:        280700500B0160000

EXHIBIT B

PERMITTED ENCUMBRANCES

[NONE]

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)**
Post-Closing Department - (646) 895-6090

**B. E-MAIL CONTACT AT SUBMITTER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

FTF Lending, LLC
1300 East 9th Street, Suite 800
Cleveland, Ohio 44114

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

GF#_____FNT

0357D

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 108 Gilbert Villas LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2509 Cladding Drive | Plano | TX | 75075 | |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| FTF Lending, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1300 East 9th Street, Suite 800 | Cleveland | OH | 44114 | |

**4. COLLATERAL:** This financing statement covers the following collateral:

See Exhibit A for description of Collateral.

See Exhibit B for description of Real Estate.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility    **6b.** Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
108 Gilbert Villas LLC - Loan ███ - 3315-3329 Shivers Dr

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**108 Gilbert Villas LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

**13.** ✓ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14.** This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ✓ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

108 Gilbert Villas LLC
2509 Cladding Drive
Plano, Texas 75075

**16.** Description of real estate:

See Exhibit B for description of Real Estate.

**17. MISCELLANEOUS:**
108 Gilbert Villas LLC - Loan ███ - 3315-3329 Shivers Dr

SECURED PARTY COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 07/01/23)

EXHIBIT A

Debtor: 108 Gilbert Villas LLC, a Texas limited liability company
Secured Party: FTF Lending, LLC, a Delaware limited liability company

ITEM 4 (*continued*): This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the "**Property**") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "**Real Property**") more particularly described on **Exhibit B** attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

a. all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Real Property, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Debtor of, in and to the Real Property and the Improvements and every part and parcel thereof, with the appurtenances thereto; and

b. all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Debtor, or in which Debtor has or shall have an interest, now or hereafter located upon the Real Property and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Real Property and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Debtor, or in which Debtor has or shall have an interest, now or hereafter located upon the Real Property and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Real Property and the Improvements (collectively, the "**Equipment**"), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Debtor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Real Property is located (the "**Uniform Commercial Code**"); and

c. all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Real Property and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Real Property and Improvements; and

d. all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Real Property and the

1

Improvements, including any extensions, renewals, modifications or amendments thereof (collectively, the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Debtor or its agents or employees from any and all sources arising from or attributable to the Real Property and the Improvements (collectively, the "**Rents**"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt; and

e.       all proceeds of and any unearned premiums on any insurance policies covering the Real Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Real Property; and

f.       all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Real Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Real Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Real Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (collectively, the "**Intangibles**"); and

g.       all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

EXHIBIT B

LEGAL DESCRIPTION

Legal Description of Land:

TRACT 1
Being Lot 9, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:         3315 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:       280700500B0090000


TRACT 2
Being Lot 10, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:         3317 Shivers Drive Grand Prairie, Texas 75050
Parcel ID:       280700500B0100000


TRACT 3
Being Lot 11, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:         3319 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:       280700500B0110000


TRACT 4
Being Lot 12, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:         3321 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:       280700500B0120000


TRACT 5
Being Lot 13, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:         3323 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:       280700500B0130000

3

TRACT 6
Being Lot 14, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:    3325 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:   280700500B0140000


TRACT 7
Being Lot 15, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:    3327 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:   280700500B0150000


TRACT 8
Being Lot 16, Block B in Gilbert Villas Addition, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Plat thereof recorded in CC# 202200165015, Map Records, Dallas County, Texas.

Address:    3329 Shivers Drive, Grand Prairie, Texas 75050
Parcel ID:   280700500B0160000

# Exhibit C

## NOTE AND MORTGAGE EXTENSION AGREEMENT

AGREEMENT made as of the **3rd** day of **June 2025** between **108 Gilbert Villas LLC.,** a **Texas Limited Liability Company**, maintaining its principal office for the transaction of business at **2509 Cladding Drive, Plano, Texas 75075** (the "Mortgagor") and **Toorak Capital Partners LLC,** an LLC organized and existing under the laws if the state of Delaware, having an office at **15 Maple Street, Second Floor West, Summit, New Jersey 07901** (the "Mortgagee").

<u>W I T N E S S E T H</u>

WHEREAS:

(A)    The Mortgagee is the owner and holder of that certain loan (the "Loan") secured by, among other things, that certain mortgage described as:

**Deed of Trust, Assignment of Leases and Rents, Fixture Filing and Security Agreement** dated **August 25, 2024** (the "Mortgage") in connection with the loan from **FTF Lending, LLC** to Mortgagor to secure payment of **$2,080,000.00** according to the terms and provisions of the Commercial Promissory Note dated **April 25, 2024** (the "Note"), encumbering premises owned by the Mortgagor bounded and described as:

**3315 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B009000)**
**3317 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0100000)**
**3319 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0110000)**
**3321 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0120000)**
**3323 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0130000)**
**3325 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0140000)**
**3327 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0150000) and**
**3329 Shivers Drive, Grand Prairie Texas 75050 (APN: 280700500B0160000)** (the "Premises").

(B)    The Mortgagor and the Mortgagee have agreed to extend the maturity of the Note and the Mortgage and modify as hereinafter provided.

NOW, THEREFORE, in consideration of the mutual covenants and conditions herein contained, the parties hereto hereby covenant and agree as follows:

1)    Subject to delivery of the Extension Fees (as defined below) the time for payment of the principal sum evidenced by the Note and secured by the Mortgage is hereby extended such that the maturity thereof shall be **February 1, 2026** ("Maturity Date") unless earlier accelerated pursuant to the terms of the Note or any other documents or agreements evidencing, governing, securing or supporting the Loan (the "Loan Documents").  Accordingly, on the Maturity Date, the entire principal balance of the Note and the Mortgage and any accrued interest thereon and all sums due under the Note shall be due and payable.  (All references hereinafter to the Note or the Mortgage shall be deemed to refer to the Note or the Mortgage as modified by this Agreement.

2. The Note and Mortgage shall continue to bear interest at the rate of **11.74% per annum**.

74385636.4

3.   The Mortgagor (i) unconditionally ratifies, remakes and confirms all warranties and representations previously made by them in the Loan Document and hereby ratifies and reaffirms terms and provisions of the Loan Documents and its continuing liability for payment and/or performance of all its obligations thereunder, without any defense or offset whatsoever; (ii) acknowledges, agrees and affirms that it does not possess any claims, defenses, offsets, rights of recoupment or counterclaims of any kind or nature against or with respect to the enforcement or administration of the Loan or the Loan Documents ("Potential Claims"), or any knowledge of any facts or circumstances that might give rise to or be the basis of any such claims, defenses, offsets, rights of recoupment or counterclaims; (iii) releases Lender, and its predecessors in interest, affiliates, servicers, representatives or agents (collectively, the "Lender Released Parties") from any and all Potential Claims, whether known or unknown, that Mortgagor now has or may hereafter have by reason of any act, omission, matter, cause or thing arising out of or relating to the Loan and the Loan Documents (all of the foregoing released claims are sometimes referred to as the "Released Claims"); and (iv) agrees to indemnify the Lender Released Parties for, hold the Lender Released Parties harmless from and against, and undertake the defense of the Lender Released Parties with respect to, all Released Claims that each of the Releasing Parties may assert with respect to any of the Released Claims, despite the existence of the releases granted by the Mortgagor herein.

4.   The Mortgagor shall pay the following to **FCI** totaling **$10,015.96 (the "Extension Fees")** in connection with this Agreement:

    i)   **$350.00** representing legal fees.

    ii)   **$9,220.96** representing an extension fee.

    iii)   **$95.00** representing a BPO fee and

    iv)   **$350.00** represents an administration fee.

**Fees will be due and payable upon ultimate payoff of the loan.**

5.   Mortgagor acknowledges and agrees that the Extension Fees are fully earned by Mortgagee upon the execution of this Agreement and that the Extension Fees will not be applied to any amounts due under the Note or the other Loan Documents. Mortgagor further acknowledges and agrees that the Extension Fees are reasonable and enforceable and waives any right it may have to contest the Extension Fees.

6.   This Agreement may not be changed or terminated orally and shall be binding upon, and inure to the benefit of, the Mortgagor and the Mortgagee and their respective successors and assigns.

7.   This Agreement may be executed in more than one counterpart, each of which shall be deemed an original and all of which together shall constitute one and the same document, binding upon all the parties notwithstanding that all such parties are not signatories to the same counterpart.  This Agreement shall become effective only if (i) each of Mortgagor and Mortgagee have executed counterparts of this Agreement and delivered them to the other party, and (ii) Mortgagor has complied fully with Paragraph 4 hereinabove.  A signature of a party by facsimile or other electronic transmission shall be deemed to constitute an original and fully effective signature of such party.

74385636.4

8. Borrower agrees to have the ACH on file (if applicable) to be activated and pull the monthly payments at the beginning of each month and authorizes Loan Servicer to draft all outstanding fees and payments from the account.

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have duly executed this Agreement on 6/18/2025
_____,2025.

**MORTGAGEE:**

**Toorak Capital Partners LLC**

DocuSigned by:

*Stephen Tyde*

BCB03ADA9B4948C...

**By: Toorak Capital Partners LLC**
**Name: Stephen Tyde**
**Title: Principal – Head of Special Servicing**
**Date:** 6/18/2025

**MORTGAGOR(S):**

**108 Gilbert Villas LLC**

Signed by:

*Sanjeev Jain*

**BY:** _____
03E47BA02F90480...
**Name:  Sanjeev Jain**
**Title: Sole Member**
**Date:** 6/18/2025

3