# EXHIBIT "1"

<u>PROMISSORY NOTE</u>

**$2,000,000.00**                    **Dallas, Texas**                    **May 27, 2021**

FOR VALUE RECEIVED, **SRRAF LLC** (hereinafter referred to as "Maker"), promises to pay to the order of **BANK OZK** (hereinafter referred to as "Payee"), at **P.O. BOX 196, OZARK, AR 72949**, or at such other place as Payee may designate in writing, the principal sum of **TWO MILLION AND 00/100 DOLLARS ($2,000,000.00)**, or so much thereof as may be advanced, together with interest from the date hereof on the principal balance from time to time remaining unpaid, prior to default or maturity, at a per annum rate equal to the lesser of: (a) **SIX AND ONE-QUARTER PERCENT (6.250%)** (the "Applicable Rate"), or (b) the maximum non-usurious rate allowed under applicable law (the "Maximum Rate"). Interest shall be calculated daily, on a **360-day year basis**, on the outstanding principal balance, interest to be payable **MONTHLY** as set forth below until this Note (herein so called) and all accrued interest hereon is paid in full. The unpaid principal of this Note and the accrued but unpaid interest thereon shall be due and payable in full on or before **May 27, 2023.**

Prior to default or maturity, interest on the unpaid principal balance shall be due and payable in **MONTHLY** installments, with the first installment being due and payable on or before **June 27, 2021**, and with subsequent installments being due and payable on or before the same day of each succeeding **MONTH** thereafter.

In the event that Maker prepays all outstanding principal plus interest due and payable under this Note prior to the accrual by Payee of **$150,000.00** in interest income, Maker shall be required to pay, at time of prepayment, a premium equal to the difference between **$150,000.00** and the actual interest income earned by Payee at time of prepayment as determined by Payee. If a law, which applies to this loan and which sets a maximum prepayment charge or prohibits prepayment charges, is finally interpreted so that the prepayment charge to be collected in connection with this loan exceeds the permitted limits, then (i) any such prepayment charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, (ii) if the prepayment charge is prohibited, no prepayment will be assessed or collected, or (iii) if such charge has been paid, any funds above what is permitted by applicable law will be refunded to Maker.

At time of execution hereof, it is agreed that Maker shall deposit with Payee the sum of **$250,000.00** to fund the estimated interest payments due monthly according to the terms of the Note (the "Interest Reserve"). The Interest Reserve shall be held by Payee, who shall fund from such reserve the necessary interest payments and any and all penalties, charges, and/or fees as and when due under the terms of the Note, in lieu of Maker making such interest payments. In the event that the amount due is greater than the amount in the Interest Reserve, Payee shall notify Maker, who shall, within **five (5) business days** of receipt of such notice, pay to Payee the amount necessary to fulfill those obligations due under the Note. The failure to accomplish same shall constitute and event of default hereunder.

If any payment to be made hereunder shall become due on a day other than a business day (as hereinafter defined), such payment shall be made on the next succeeding business day and such extension of time shall in such case be included in the computation of the payment of interest due hereunder. The term "business day", as used herein, shall mean any day of the year on which Payee is open to the public for the purpose of conducting all regular banking business and is not required or authorized to close.

To the extent that Section 303.009, as amended, of the Texas Finance Code, is applicable to this Note, the weekly ceiling specified in such article is the applicable ceiling in determining the Maximum Rate on this Note; provided, however, that if any applicable law permits a greater rate of interest, the law permitting the greatest rate of interest shall apply.

All amounts due and payable hereunder shall be paid in lawful money of the United States of America.

*PROMISSORY NOTE* – Page 1 of 4                                        INITIAL

Acceptance by Payee of any payment in an amount less than the amount then due on this Note shall, unless Payee expressly agrees otherwise in writing, be deemed an acceptance on account only, and shall not cure any default existing by reason of failure to pay the full amount then due or preclude the exercise of any remedy of Payee, including, but not limited to, acceleration of any unmatured principal hereof or foreclosure on any security.

This Note is secured by and entitled to the benefits of, among other things, a certain Deed of Trust, Security Agreement and Financing Statement (herein the "Deed of Trust") of even date herewith, executed by Maker, covering the real property described on Exhibit "A" attached hereto, to which Deed of Trust and any and all supplements thereto reference is hereby made for a more complete description of the properties mortgaged, pledged, conveyed and assigned, the nature and extent of the security and the rights of Payee and the rights and obligations of the Trustee under such Deed of Trust in respect to such properties.

Maker shall pay to Payee a late charge of **FIVE PERCENT (5.00%)** of any monthly installment not received by Payee within **TEN (10)** days after the installment is due for the purpose of defraying the reasonable expenses incident to handling each such delinquent payment. The imposition of a late charge authorized under this paragraph is not and should not be considered a grace period or extension of the due date of any installment set forth in this Note. Further, such charge shall only be made to the extent allowed by applicable law and/or regulation.

This Note shall, from and after the maturity hereof, bear interest at the lesser of (i) eighteen percent (18.00%) per annum or (ii) the Maximum Rate, until paid in full or until this Note is reinstated or renewed and extended.

In the event a default shall have happened under this Note, the Deed of Trust of even date, or in any other documents securing the payment hereof or executed in connection herewith, Payee may offset against this Note any sums owed by Payee to Maker or any guarantor, and/or may proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Note or in any documents executed in connection herewith, or in aid of the exercise of any power or right granted by this Note or in any document executed in connection herewith, or to enforce any other legal or equitable right of Payee. Maker further agrees that Payee may apply any deposits of Maker with Payee to the payment of Maker's obligations under this Note and under any other evidences of indebtedness of Maker to Payee in the event of any default under the terms and provisions of this Note or the documents securing same or executed in connection therewith.

Except as otherwise provided herein, Maker and all sureties, guarantors and endorsers of this Note severally waive all notices, demands, presentments for payment, demand for payment, notices of non-payment, notices of intention to accelerate the maturity, notice of acceleration of maturity, notices of dishonor, protest and notice of protest, diligence in collecting or bringing suit as to this Note and as to each, every and all installments hereof and all obligations hereunder and against any party hereto and to the application of any payment on this obligation, or as an offset hereto, and agree to all extensions, renewals, partial payments, substitutions of evidence of indebtedness and the taking, release or substitution of all or any part of the above described security or the release of any party liable hereon with or without notice before or after maturity.

It is expressly provided that upon default in the punctual payment of this Note or any part or installment hereof, principal or interest, as the same shall become due and payable, or in the performance of any warranty, covenant or agreement, or other default under the terms of the Deed of Trust of even date given as security for the payment hereof, or under any other instrument granted to secure payment hereof or executed in connection herewith, including any guaranty agreement, Payee may declare the then unpaid principal balance and accrued interest thereon immediately due and payable without notice; failure to accelerate shall not constitute a waiver on the part of Payee of the right to exercise the same at any other time.

*PROMISSORY NOTE* – Page 2 of 4                                                    (X) _CY_ INITIAL

It is the intention of the parties hereto to comply with the usury laws applicable to this Note; accordingly, it is agreed that notwithstanding any provision to the contrary in this Note, in the Deed of Trust or in any other documents securing payment hereof or executed in connection herewith no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by applicable law in any contingency, whether by reason of demand for payment or acceleration of the maturity hereof or voluntary prepayment or otherwise. If, from any circumstance whatsoever, any excess interest is provided for, contracted for, charged or received or adjudicated to be provided for, contracted for, charged or received, then the provisions of this paragraph shall govern and control and neither Maker hereof nor any other party liable for the payment hereof shall be obligated to pay the amount of such excess interest and the interest payable to Payee shall be reduced to the maximum amount permitted by applicable law. Any such excess interest which may have been collected shall be, at Payee's option, either applied as a credit against the then unpaid principal amount hereof, and not to the payment of interest, or refunded to Maker. The effective rate of interest shall be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed. It is further agreed that without limitation of the foregoing all calculations of the rate of interest provided for, contracted for, charged or received under this Note which are made for the purposes of determining whether such rate exceeds the maximum lawful rate, shall be made, to the extent permitted by law, by amortizing, prorating, allocating and spreading in equal parts during the full stated term of this Note (including the period of any renewal or extension hereof), all interest provided for, contracted for, charged or received from Maker or otherwise by Payee.

In the event this Note is placed in the hands of an attorney for collection (whether or not suit is filed), or in the event it is collected by suit or through bankruptcy, probate, receivership or other legal proceedings (including foreclosure), Maker hereby agrees to pay, in addition to the principal and interest due hereon, any and all reasonable costs of collection and/or suit, which may be incurred by Payee, including but not being limited to reasonable attorney's fees.

All payments of principal of this Note shall be applied first to that portion hereof, if any, not secured to Payee by a first and prior lien.

Any check, draft, money order or other instrument given in payment of all or any portion hereof may be accepted by Payee and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of Payee except to the extent that actual cash proceeds of such instrument are unconditionally received by Payee.

All of the covenants, stipulations, promises and agreements in this Note on behalf of Maker shall bind its successors and assigns, whether so expressed or not. This Note has been executed and delivered and is to be performed in the State of Texas and this Note shall be governed by and construed in accordance with the laws of such State and the laws of the United States applicable to this transaction. Any reference to Payee herein shall, where applicable, include any future holder hereof.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE PAYEE IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE PAYEE, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM PAYEE.

*PROMISSORY NOTE* – Page 3 of 4             INITIAL

MAKER:

SRRAF LLC

BY: _KAZI AHASAN ULLAH, MANAGER_

(X) ____INITIAL

## EXHIBIT "A"

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL
PURPOSES.**

*EXHIBIT "A"* – Page 1 of 1

_____
Initials

## EXHIBIT "A"

### The Property

BEING Lot 2, in Block 1, of Realeins Addition, Lots 1 and 2, Block 1, an Addition to the City of Garland, Dallas County, Texas, according to the Conveyance Plat thereof recorded in cc# 201800080260, of the Real Property Records, of Dallas County, Texas and being a 14.483 acre tract of land situated in the Levi Turner Survey, Abstract Number 1487, Dallas County, Texas, in the City of Garland. Being a portion of the tract of land described in the deed to Realeins Properties, Ltd. recorded in Document Number 201100113940, Deed Records of Dallas County, Texas and being all of the tract of land described in the deed to Realeins Properties, Ltd. recorded in Document Number 201100113938, Deed Records of Dallas County, Texas, said 14.483 acre tract of land being more particularly described as follows:

BEGINNING at a 5/8 inch iron rod with a cap stamped "Carter & Burgess" found in the Southerly right-of-way line of Buckingham Road (a 100 foot wide right-of-way at this point) for the Northwesterly corner of Virginia Park No. 2 Block G an Addition to the City of Garland according to the plat recorded in Volume 70242, Page 64, Map Records of Dallas County, Texas;

THENCE with the Westerly line of said Virginia Park No. 2 Block G South 00 degrees 46 minutes 50 seconds East (Document Number 201100113940 and Volume 70242, Page 64 = South 00 degrees 05 minutes East) a distance of 716.79 feet to a 5/8 inch iron rod with a cap stamped "Carter & Burgess" found in the Northerly line of the First Installment of Virginia Park Addition, an Addition to the City of Garland according to the plat recorded in Volume 69126, Page 2243, Map Records of Dallas County, Texas for the Southwesterly corner of said Virginia Park No. 2 Block G;

THENCE with the Northerly line of said First Installment of Virginia Park Addition South 88 degrees 39 minutes 00 seconds West (Document Number 201100113940 and Volume 69126, Page 2243 = South 89 degrees 21 minutes West) a distance of 1,135.35 feet (Document Number 201100113940 = 1,135.62 feet) to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc. LP" set in the Easterly right-of-way line of Jupiter Road (a variable width right-of-way) for the Northwesterly corner of said First Installment of Virginia Park Addition;

THENCE with the Easterly right-of-way line of Jupiter Road the following:

North 01 degree 21 minutes 00 seconds West (Document Number 201100113940 = North 00 degrees 39 minutes West) a distance of 175.51 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set for corner;

North 88 degrees 39 minutes 00 seconds East (Document Number 201100113940 = North 89 degrees 21 minutes East) a distance of 25.00 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set for corner;

North 01 degree 21 minutes 00 seconds West (Document Number 201100113940 = North 00 degrees 39 minutes West) a distance of 91.46 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set for the Southwesterly corner of Lot 1, Block A, Richland Shopping Center No. 1, an Addition to the City of Garland according to the plat recorded in Volume 97119, Page 235, Map Records of Dallas County, Texas;

THENCE departing the Easterly right-of-way line of Jupiter Road with the Southerly and Easterly lines of said Lot 1, Block A the following:

North 89 degrees 21 minutes 58 seconds East (Volume 97119, Page 235 = South 89 degrees 56 minutes 00 seconds East) a distance of 290.99 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set for corner;

North 00 degrees 38 minutes 02 seconds West (Volume 97119, Page 235 = North 00 degrees 04 minutes 00 seconds East) a distance of 226.21 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set for corner;

North 44 degrees 21 minutes 58 seconds East a (Volume 97119, Page 235 = North 45 degrees 04 minutes 00 seconds East) a distance of 10.61 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP seconds set for corner;

North 89 degrees 21 minutes 58 seconds East (Volume 97119, Page 235 = South 89 degrees 56 minutes 00 seconds East) a distance of 171.75 feet to a 5/8 inch iron rod with a cap stamped "Carter & Burgess" found for corner;

North 00 degrees 38 minutes 02 seconds West (Volume 97119, Page 235 = North 00 degrees 04 minutes 00 seconds East) a distance of 150.00 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set for corner;

North 89 degrees 21 minutes 58 seconds East (Volume 97119, Page 235 = South 89 degrees 56 minutes 00 seconds East) a distance of 27.00 feet to a 5/8 inch iron rod found for corner;

North 00 degrees 38 minutes 02 seconds West (Volume 97119, Page 235 = North 00 degrees 04 minutes 00 seconds East) a distance of 80.00 feet to a 5/8 inch iron rod with a cap stamped "Dunaway Assoc LP" set in the Southerly right-of-way line of Buckingham Road for the most Northerly Northeast corner of said Lot 1, Block A;

THENCE with the Southerly right-of-way line of Buckingham Road North 89 degrees 21 minutes 58 seconds East (Document Number 201100113940 = South 89 degrees 56 minutes East) a distance of 614.52 feet to the POINT OF BEGINNING;

CONTAINING a computed area of 14.483 acres (630,894 square feet) of land.