# EXHIBIT "5"

## PROMISSORY NOTE

**$1,508,570.00**                          **Dallas, Texas**                          **April 29, 2022**

FOR VALUE RECEIVED, **5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY** (hereinafter referred to as "Maker"), promises to pay to the order of **BANK OZK** (hereinafter referred to as "Payee"), at **P.O. BOX 196, OZARK, AR 72949**, or at such other place as Payee may designate in writing, the principal sum of **ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00)**, or so much thereof as may be advanced, together with interest from the date hereof on the principal balance from time to time remaining unpaid, prior to default or maturity, at a per annum rate equal to the lesser of: (a) **SIX AND ONE-QUARTER PERCENT (6.250%)** (the "Applicable Rate"), or (b) the maximum non-usurious rate allowed under applicable law (the "Maximum Rate"). Interest shall be calculated daily, on a 360-day year basis, on the outstanding principal balance, interest to be payable **MONTHLY** as set forth below until this Note (herein so called) and all accrued interest hereon is paid in full. The unpaid principal of this Note and the accrued but unpaid interest thereon shall be due and payable in full on or before **April 29, 2023.**

Prior to default or maturity, interest on the unpaid principal balance shall be due and payable in **MONTHLY** installments, with the first installment being due and payable on or before **May 29, 2022**, and with subsequent installments being due and payable on or before the same day of each succeeding **MONTH** thereafter.

At time of execution hereof, it is agreed that Maker shall deposit with Payee the sum of **$95,000.00** to fund the estimated interest payments due monthly according to the terms of the Note (the "Interest Reserve"). The Interest Reserve shall be held by Payee, who shall fund from such reserve the necessary interest payments and any and all penalties, charges, and/or fees as and when due under the terms of the Note, in lieu of Maker making such interest payments. In the event that the amount due is greater than the amount in the Interest Reserve, Payee shall notify Maker, who shall, within **five (5) business days** of receipt of such notice, pay to Payee the amount necessary to fulfill those obligations due under the Note. The failure to accomplish same shall constitute and event of default hereunder.

If any payment to be made hereunder shall become due on a day other than a business day (as hereinafter defined), such payment shall be made on the next succeeding business day and such extension of time shall in such case be included in the computation of the payment of interest due hereunder. The term "business day", as used herein, shall mean any day of the year on which Payee is open to the public for the purpose of conducting all regular banking business and is not required or authorized to close.

To the extent that Section 303.009, as amended, of the Texas Finance Code, is applicable to this Note, the weekly ceiling specified in such article is the applicable ceiling in determining the Maximum Rate on this Note; provided, however, that if any applicable law permits a greater rate of interest, the law permitting the greatest rate of interest shall apply.

All amounts due and payable hereunder shall be paid in lawful money of the United States of America. Acceptance by Payee of any payment in an amount less than the amount then due on this Note shall, unless Payee expressly agrees otherwise in writing, be deemed an acceptance on account only, and shall not cure any default existing by reason of failure to pay the full amount then due or preclude the exercise of any remedy of Payee, including, but not limited to, acceleration of any unmatured principal hereof or foreclosure on any security.

This Note may be prepaid in whole or in part at any time or from time to time without premium or penalty. Any such prepayment shall first be applied to any accrued interest due hereon and then to the outstanding principal balance.

F. B.   INITIAL

This Note is secured by and entitled to the benefits of, among other things, a certain Deed of Trust, Security Agreement and Financing Statement (herein the "Deed of Trust") of even date herewith, executed by Maker, covering the real property described on Exhibit "A" attached hereto, to which Deed of Trust and any and all supplements thereto reference is hereby made for a more complete description of the properties mortgaged, pledged, conveyed and assigned, the nature and extent of the security and the rights of Payee and the rights and obligations of the Trustee under such Deed of Trust in respect to such properties.

Maker shall pay to Payee a late charge of **FIVE** PERCENT (5.00%) of any monthly installment not received by Payee within **TEN** (10) days after the installment is due for the purpose of defraying the reasonable expenses incident to handling each such delinquent payment. The imposition of a late charge authorized under this paragraph is not and should not be considered a grace period or extension of the due date of any installment set forth in this Note. Further, such charge shall only be made to the extent allowed by applicable law and/or regulation.

This Note shall, from and after the maturity hereof, bear interest at the lesser of (i) eighteen percent (18.00%) per annum or (ii) the Maximum Rate, until paid in full or until this Note is reinstated or renewed and extended.

In the event a default shall have happened under this Note, the Deed of Trust of even date, or in any other documents securing the payment hereof or executed in connection herewith, Payee may offset against this Note any sums owed by Payee to Maker or any guarantor, and/or may proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Note or in any documents executed in connection herewith, or in aid of the exercise of any power or right granted by this Note or in any document executed in connection herewith, or to enforce any other legal or equitable right of Payee. Maker further agrees that Payee may apply any deposits of Maker with Payee to the payment of Maker's obligations under this Note and under any other evidences of indebtedness of Maker to Payee in the event of any default under the terms and provisions of this Note or the documents securing same or executed in connection therewith.

Except as otherwise provided herein, Maker and all sureties, guarantors and endorsers of this Note severally waive all notices, demands, presentments for payment, demand for payment, notices of non-payment, notices of intention to accelerate the maturity, notice of acceleration of maturity, notices of dishonor, protest and notice of protest, diligence in collecting or bringing suit as to this Note and as to each, every and all installments hereof and all obligations hereunder and against any party hereto and to the application of any payment on this obligation, or as an offset hereto, and agree to all extensions, renewals, partial payments, substitutions of evidence of indebtedness and the taking, release or substitution of all or any part of the above described security or the release of any party liable hereon with or without notice before or after maturity.

It is expressly provided that upon default in the punctual payment of this Note or any part or installment hereof, principal or interest, as the same shall become due and payable, or in the performance of any warranty, covenant or agreement, or other default under the terms of the Deed of Trust of even date given as security for the payment hereof, or under any other instrument granted to secure payment hereof or executed in connection herewith, including any guaranty agreement, Payee may declare the then unpaid principal balance and accrued interest thereon immediately due and payable without notice; failure to accelerate shall not constitute a waiver on the part of Payee of the right to exercise the same at any other time.

It is the intention of the parties hereto to comply with the usury laws applicable to this Note; accordingly, it is agreed that notwithstanding any provision to the contrary in this Note, in the Deed of Trust or in any other documents securing payment hereof or executed in connection herewith no such provision shall require the payment

F.B · INITIAL

or permit the collection of interest in excess of the maximum permitted by applicable law in any contingency, whether by reason of demand for payment or acceleration of the maturity hereof or voluntary prepayment or otherwise. If, from any circumstance whatsoever, any excess interest is provided for, contracted for, charged or received or adjudicated to be provided for, contracted for, charged or received, then the provisions of this paragraph shall govern and control and neither Maker hereof nor any other party liable for the payment hereof shall be obligated to pay the amount of such excess interest and the interest payable to Payee shall be reduced to the maximum amount permitted by applicable law. Any such excess interest which may have been collected shall be, at Payee's option, either applied as a credit against the then unpaid principal amount hereof, and not to the payment of interest, or refunded to Maker. The effective rate of interest shall be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed. It is further agreed that without limitation of the foregoing all calculations of the rate of interest provided for, contracted for, charged or received under this Note which are made for the purposes of determining whether such rate exceeds the maximum lawful rate, shall be made, to the extent permitted by law, by amortizing, prorating, allocating and spreading in equal parts during the full stated term of this Note (including the period of any renewal or extension hereof), all interest provided for, contracted for, charged or received from Maker or otherwise by Payee.

In the event this Note is placed in the hands of an attorney for collection (whether or not suit is filed), or in the event it is collected by suit or through bankruptcy, probate, receivership or other legal proceedings (including foreclosure), Maker hereby agrees to pay, in addition to the principal and interest due hereon, any and all reasonable costs of collection and/or suit, which may be incurred by Payee, including but not being limited to reasonable attorney's fees.

All payments of principal of this Note shall be applied first to that portion hereof, if any, not secured to Payee by a first and prior lien.

Any check, draft, money order or other instrument given in payment of all or any portion hereof may be accepted by Payee and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of Payee except to the extent that actual cash proceeds of such instrument are unconditionally received by Payee.

All of the covenants, stipulations, promises and agreements in this Note on behalf of Maker shall bind its successors and assigns, whether so expressed or not. This Note has been executed and delivered and is to be performed in the State of Texas and this Note shall be governed by and construed in accordance with the laws of such State and the laws of the United States applicable to this transaction. Any reference to Payee herein shall, where applicable, include any future holder hereof.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE PAYEE IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE PAYEE, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM PAYEE.

**MAKER:**

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: _Fahmida Begum_
**FAHMIDA BEGUM, MANAGER**

_PROMISSORY NOTE_ – Page 3 of 3                    F. B. INITIAL

## EXHIBIT "A"

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.**

F. B.

Initials

Escrow File No.: 210240-12

## EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

F. B.

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

F-8.

## MODIFICATION OF PROMISSORY NOTE

THIS MODIFICATION OF PROMISSORY NOTE, made and entered into as of the 7ᵗʰ day of JULY, 2023, by and between 5500 ROWLETT LLC (jointly and severally, the "Borrower"), and BANK OZK,       (the "Lender");

### WITNESSETH:

WHEREAS, the Lender made a loan referred to as Loan No. 52310001041 (the "Loan") to the Borrower in the original principal amount of up to ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 Dollars ($1,508,570.00), as evidenced by that certain Promissory Note in said amount, dated APRIL 29, 2022, made by the Borrower to the order of the Lender (the "Note"); and

WHEREAS, the current outstanding principal balance of the Loan is $1,508,570.00 as of JULY 7, 2023; and

WHEREAS, the Borrower and the Lender desire to modify the Note as set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants contained herein, the agreement of the Lender to change the terms of the Loan as set forth herein, and the sum of Ten and No/100 Dollars ($10.00), paid in hand by each party to the other, the receipt, adequacy, and sufficiency of all of which are hereby acknowledged, the parties agree as follows:

1.   Modifications. The Note is hereby amended as follows:

☒(a)   Maturity Date. The maturity date is changed from JULY 29, 2023, to OCTOBER 29, 2023, with the effect that the entire principal balance of the Note, as herein amended, together with all accrued and unpaid interest thereon, shall be due and payable on the new maturity date.

☒(b)   Payment Terms. The payment terms will continue as stated in the last Note or Modification following the effective date along with any escrow payment if applicable.

☒(c)   Other. THE EFFECTIVE DATE OF THIS MODIFICATION IS JULY 31, 2023. THIS EXTENSION IS APPROVED TO ALLOW TIME TO GATHER FINANCIALS. INTEREST IN THE AMOUNT OF $31,564.71 AS OF JULY 31, 2023, A PROCESSING FEE IN THE AMOUNT OF $125.00 AND A LATE FEE IN THE AMOUNT OF $890.99 IS DUE AND PAYABLE AT THE TIME OF SIGNING.

☒ (d)   Automatic Payments. If Note is currently set up with an Automatic Payment, Borrower hereby   authorizes Lender to continue the Automatic Payment until the Maturity Date of the Note. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time for any reason, Borrower or Lender may voluntarily terminate Automatic Payments.

2.   Replacement of Note. Upon the loss, theft, destruction or mutilation of the original Note, Borrower will execute and deliver, in lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in any collateral documents to the Note shall be deemed to refer to such replacement Note. Further, Borrower acknowledges and agrees that Lender is authorized to maintain, store and otherwise retain the Loan documents or any of them in their original, inscribed tangible form or a record thereof in an electronic medium or other non-tangible medium which permits such record to be retrieved in a perceivable form; that a record of any of the Loan documents in a non-tangible medium which is retrievable in a perceivable form shall be the agreement of Borrower to the same extent as if such loan document was in its original, inscribed tangible medium and such a record shall be binding on and enforceable against Borrower.

3.   Default Rate.   Upon the occurrence of any default or after maturity or after judgment has been rendered on any obligation under this Note, all amounts outstanding under this Note, including any interest, fees, or costs which are not paid when due, will at the option of the Lender bear interest at the lesser of: (a) a rate which is 16.00%; or (b) the maximum amount or rate of interest allowed by applicable law. In no event shall the amount or rate of interest due and payable under the Note exceed the maximum amount or rate of interest allowed by applicable law and, in the event any such excess payment is made by the Borrower or received by the Lender, such excess sum shall be credited as a payment of principal (or if no principal shall remain outstanding, shall be refunded to the Borrower). It is the express intent hereof that the Borrower not pay and the Lender not receive, directly or indirectly, interest in excess of that which may be lawfully paid under applicable law including the usury laws in force in the State of TEXAS. This may result in compounding of interest. This will not constitute a waiver of any default.

4.   General Terms. The Note, as herein modified, remains in full force and effect in accordance with its terms, and the undersigned hereby ratify and confirm the same. The undersigned acknowledge that they are fully obligated under the terms of the Note and other documents relating to or securing the Loan (the "Loan Documents") and that they have no offsets, claims, counterclaims, or defenses with respect to the obligations under the Loan Documents, as amended hereby, or any facts, events, transactions, omissions, or agreements relating thereto. The undersigned hereby waive and release any such offsets, claims, counterclaims, and defenses. This Modification of

1

Promissory Note shall not be construed in any way to rescind, cancel, satisfy or novate the indebtedness under the Note and other Loan Documents. The undersigned hereby agree that nothing herein shall constitute a waiver by Lender of any default, whether known or unknown, which may exist under the Note or other Loan Documents. The undersigned hereby further agree that no action, inaction or agreement by Lender, including, without limitation, any extension, indulgence, waiver, consent or agreement of modification which may have occurred or have been granted or entered into (or which may be occurring or be granted or entered into hereunder or otherwise) with respect to nonpayment of the Loan or any portion thereof, or with respect to matters involving security for the Loan, or with respect to any other matter relating to the Loan, shall require or imply any future extension, indulgence, waiver, consent or agreement by Lender. The undersigned hereby acknowledge and agree that Lender has made no agreement, and is in no way obligated, to grant any future extension, indulgence, waiver or consent with respect to the Loan or any matter relating to the Loan. The undersigned further acknowledge and agree that this Modification of Promissory Note shall in no way occasion a release of any collateral held by Lender as security to or for the Loan, and that all collateral held by Lender as security to or for the Loan shall continue to secure the Loan. This Modification of Promissory Note shall be binding upon and inure to the benefit of the undersigned and Lender and their respective successors and assigns, whether voluntary by act of the parties or involuntary by operation of law. This Modification of Promissory Note shall be governed by, and construed in accordance with, the laws of the State of TEXAS. The undersigned warrant that the undersigned have full authority to execute this Modification of Promissory Note.

**BORROWER(S):**

*[If Borrower is an Individual]*

Name: _____

Name: _____

Name: _____

Name: _____

*[If Borrower is an Entity]*

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

_____
Name:   FAHMIDA BEGUM
Title:   MANAGER

_____
Name:
Title:

_____
Name:
Title:

**BANK OZK,**

_____
Authorized
Signer

2

**CONSENT OF GUARANTORS**

The undersigned guarantors under the terms of certain Commercial Guaranty agreements (as amended from time to time, the "Guaranty") in favor of **BANK OZK**,        (the "**Lender**"), hereby acknowledge and consent to the within and foregoing Modification of Promissory Note (the "**Note Modification**") and confirm that the Guaranty remains in full force and effect as to all liabilities and obligations of 5500 ROWLETT LLC ("**Borrower**") to the Lender therein guaranteed, including, without limitation, the liabilities and obligations under the Note, as modified in the Note Modification. The undersigned acknowledge and agree that they have no offsets, claims, counterclaims, or defenses with respect to the obligations under the Note, as modified in the Note Modification, or the obligations under the Guaranty, and to the extent that they have any offsets, claims, counterclaims, or defenses with respect to the obligations under the Note, as modified in the Note Modification, or Guaranty, or any facts, events, transactions, omissions, or agreements relating thereto, the undersigned, jointly and severally, hereby waive and release such offsets, claims, counterclaims, and defenses.

Although each of the undersigned has been informed of the terms of the Note Modification, each understands and agrees that the Bank has no duty to so notify it or any other guarantor or to seek this or any future acknowledgment, consent or reaffirmation, and nothing contained herein shall create or imply any such duty as to any transactions, past or future.

IN WITNESS WHEREOF, the undersigned guarantors have executed this Consent of Guarantors as of this 27 day of July 20 23

GUARANTOR(S):

*[If Guarantor is an Individual]*

Name:   FAHMIDA BEGUM

Name: _____

Name: _____

Name: _____

*[If Guarantor is an Entity]*

Name: _____
Title:

Name: _____
Title:

Name: _____
Title:

Name: _____
Title:

3