EXHIBIT "6"

2022 - 202200125266  05/04/2022  11:20 AM  Page 1 of 14

**Notice of confidentiality rights:  If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed of record in the public records: your social security number or your driver's license number.**

# DEED OF TRUST
## SECURITY AGREEMENT AND FINANCING STATEMENT

**STATE OF TEXAS**

**COUNTY OF DALLAS**

**KNOW ALL MEN BY THESE PRESENTS:**

### ARTICLE I
#### Grant

**1.1 Conveyance To Trustee.** That **5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**, of **DALLAS** County, Texas, herein called "Grantors" whether one or more, for and in consideration of the sum of Ten Dollars ($10.00) in hand paid by the Trustee hereinafter named. the receipt of which is hereby acknowledged and confessed, and for the further consideration. uses. purposes and trusts hereinafter set forth. have GRANTED. SOLD and CONVEYED. and by these presents do hereby GRANT. SELL and CONVEY. unto **CHRIS STRINGER**, Trustee, whose mailing address is **5178 PRESTON ROAD, FRISCO, TX 75034**, and his or her substitutes and successors. all of that certain real property lying and being situated in **DALLAS** County, Texas, and being more particularly described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.**

Together with all buildings, structures and other improvements now or hereafter erected or placed upon the above described property. all goods. supplies. chattels. furniture. equipment and machinery. all materials. apparatus. appliances and other fixtures now or hereafter erected or placed upon the above described property and upon any improvements now or hereafter erected or placed upon the above described property including without limitation the property described in Section 3.3 below. all of which shall be deemed to be annexed to and forming a part of the real property hereby conveyed. together with all renewals, replacements, substitutions and additions of any such improvements and fixtures. and together with all appurtenances, privileges, hereditaments, servitudes, rights, ways, easements, prescriptions, rents, income, profits and all other advantages of every kind and character belonging to. arising out of or incident to any part of the above described property, all accounts, all minerals. oil. gas. coal. other hydrocarbons and associated substances, all of the foregoing. including the real property first described above, being hereinafter called the "Property".

**1.2 Habendum and Warranty.** TO HAVE AND TO HOLD the above described Property. together with all and singular the rights. privileges, hereditaments and appurtenances thereunto in anywise incident. appertaining or belonging unto the said Trustee. and to his substitutes and successors forever. And Grantors do hereby bind themselves, and their respective successors. legal representatives. administrators. executors. heirs and assigns, to WARRANT AND FOREVER DEFEND the said Property unto the said Trustee. his or her substitutes and successors forever, against the claim. or claims. of all persons claiming or to claim the same or any part thereof.

### ARTICLE II
#### Purpose of Trust

**2.1 Debt Secured.** This conveyance is made in trust to secure payment of one certain promissory note. hereinafter called "Note." of even date herewith in the original principal amount of **ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00)**, made and executed by Grantors. payable to the order of **BANK OZK**, hereinafter called "Beneficiary". having and maintaining its principal office and place of business and mailing address at **5178 PRESTON ROAD, FRISCO, TX 75034**, said Note bearing interest as therein stipulated. being payable at the place therein stated. in the manner and at the time therein specified, providing for acceleration of maturity and for attorney's fees. the unpaid balance of which. if not sooner paid or accelerated to maturity. shall become due and payable on or before **April 29, 2023.**

**2.2 Other Indebtedness Secured.** This Deed of Trust shall secure. in addition to the said Note, all funds hereafter advanced by Beneficiary to or for the benefit of Grantors. as contemplated by any covenant or provision herein contained or under any of the documents executed in connection herewith or for any other purpose. and all other indebtedness, obligations and liabilities. of whatever kind or character. owing or which may hereafter become owing by Grantors to Beneficiary. absolute or contingent, joint, several or joint and several. fixed or contingent, secured or unsecured by additional or different security whether such indebtedness is evidenced by note. open account. overdraft. endorsement, surety agreement. guaranty. or otherwise. it being contemplated that Grantors may hereafter become indebted to Beneficiary in further sum or sums.

**2.3 Continuing Security.** This Deed of Trust shall also secure any alteration. compromise. extension. renewal. increase. or modification of the time or manner for the payment of any part of any indebtedness secured hereby. The execution of this Deed of Trust shall not impair or affect any other security given or to be given to secure the payment of any indebtedness secured hereby; and any other additional security now existing or hereafter to be given shall be considered as cumulative. The taking of any additional security. the execution of any partial or full release of any security, the execution of any partial or full release of any person liable or to become liable for the payment of any part of any indebtedness secured hereby. the payment of the indebtedness of the Grantors under the terms of the Note. or the alteration. compromise, extension. renewal. increase or modification of the time or manner for the payment of any part of any indebtedness secured hereby shall not diminish the force, effect or liens of this Deed of Trust. the same to remain in full force and effect to secure any and all such existing or future indebtedness. and shall not affect or impair the liability of any Maker. Grantor. or any other person liable or to become liable for any indebtedness secured hereby.

**2.4 Termination.** Should Grantors do and perform all of the covenants and agreements herein contained and make prompt payment of all indebtedness secured hereby as the same shall become due and payable. then this conveyance. and all of the covenants and conditions herein contained on the part of Grantors to be kept and performed. shall become null and void and of no further force or effect and shall be released at the expense of Grantors; otherwise. the same shall remain in full force and effect.

*DEED OF TRUST* – Page 1 of 8

F. B.
_____
Initials

2022 - 202200125266  05/04/2022  11:20 AM  Page 2 of 14

## ARTICLE III
### General Covenants and Agreements of Grantors

3.1 **Ownership.** Unless the Property is expressly described above as a leasehold estate, Grantors warrant and represent that they have good and indefeasible title to the Property and own the Property in fee simple forever. In any event, the Grantors warrant and represent that they have the power and the right to convey the Property hereunder and that the Property is free from all liens, easements, rights-of-way, right of first refusal, restrictions, covenants, reservations, conditions and all other encumbrances of every kind and character unless expressly provided to the contrary herein. Grantors promise to make such further assurances of title as may be necessary to confirm fully to the Trustee the title to said Property. Grantors further promise to protect the title and possession of said Property and, unless specified to the contrary below, to preserve and maintain the liens hereby created as a first and prior lien against the Property.

3.2 **Payment of Debt.** Grantors promise and agree to pay, promptly as and when due, the principal of said Note and the interest thereon, strictly in accordance with the terms of said Note, and the principal of any other indebtedness secured hereby and the interest thereon; and Grantors promise and agree to keep and perform, promptly and faithfully, each and every covenant, condition and agreement in this Deed of Trust contained on their part to be kept or performed.

3.3 **Fixtures.** Grantors covenant and agree that all awnings, door and window screens, storm windows and doors, mantels, cabinets, rugs, carpeting, linoleum, wall and in-a-door beds, stoves, shades, blinds, oil and other fuel-burning systems and equipment, water heaters, radiator covers, and all plumbing, heating, lighting, cooking ventilating, cooling, air-conditioning and refrigerating apparatus, equipment, and all other property, or any part or all of such, which are attached to any building, structure or any other improvement now or hereafter located upon the above described real property and which are now or hereafter attached to any such improvements by nails, screws, bolts, pipe connections, masonry or in other manner, and all additions thereto and replacements thereof, and any built-in equipment, are and shall be deemed to be fixtures and accessions to said real property, being hereby agreed to be Immovables and a part of the realty as between the parties hereto, and shall be deemed to be a part and portion of the real property hereby conveyed.

3.4 **Repairs.** Grantors covenant and agree that they will restore, maintain and keep all buildings, structures and other improvements at any time comprising any part of the Property at all times in sound condition and good repair (including without limitation the prompt performance of all necessary repairs, renewals and replacements thereof) and will not commit, permit or suffer any waste or deterioration thereof or of any other part of the Property; and Grantors further covenant and agree that they will not commit, permit or suffer anything to be done or not done to or about the Property that may impair the value of any part thereof. If during the term of this Deed of Trust any improvements or alterations are made or erected upon the Property, the lien of this Deed of Trust shall attach to such improvements and alterations as additional security and shall constitute a first lien thereon. Any other liens given to any other party shall be secondary and inferior to the lien on this Deed of Trust.

3.5 **Removal of Improvements.** The Grantors covenant and agree they will not alter, destroy, damage or remove any part of the buildings, structures or other improvements now existing or hereafter erected or placed upon the real property described above without first obtaining the written permission of Beneficiary to do so.

3.6 **Other Liens.** Grantors covenant and agree that they shall not, without Beneficiary's prior written consent, create, permit or suffer any lien or equivalent interest, including without limitation a claim of homestead adverse to the liens of this Deed of Trust against any part of the Property, to attach to or be enforced against any part of the Property which is equal to, superior to or inferior to any lien securing any part of any indebtedness hereby secured.

3.7 **Gift, Sale, or Other Disposition of Property.** Grantors covenant and agree that any transaction which will result in the lease, gift, sale (including without limitation any contract of sale or contract to sell), transfer, exchange, assignment, conveyance or other disposition of the Property or any part thereof, voluntary or involuntary, and any transfer of any interest in Grantors or a sale of all or any portion of Grantors or a merger or similar action by Grantors with any other company, entity or series, if Grantors are other than natural persons, unless the prior written consent of Beneficiary thereto is obtained, shall constitute an event of default hereunder, and that Beneficiary, upon the occurrence thereof or at any time thereafter, may exercise any of its rights provided or contemplated in Article X hereof. Beneficiary may, at its option and at its sole discretion, waive its rights with respect to any such event of default; but no such waiver may be inferred by the mere passage of time. Beneficiary may also charge a reasonable fee for the handling and changing of its books and records and for defraying any other expenses, fees or losses which Beneficiary may sustain by reason of any such disposition, which fee may be charged whether Beneficiary consents to any such disposition or waives its rights hereunder. Additionally, to the extent permitted by applicable law, Beneficiary may charge a reasonable fee as a condition to Beneficiary's consent to an assumption of the indebtedness hereby secured. Beneficiary may also require the assumptor to sign an assumption agreement that is acceptable to Beneficiary and that obligates the assumptor to keep all the promises and agreements made in the Note and in this Deed of Trust. Neither the express consent to nor the waiver of Beneficiary's rights hereunder with respect to any such disposition shall affect the liability of Grantors for the payment of the indebtedness secured hereby which liability shall continue until such time as all of such indebtedness has been fully paid, notwithstanding any assumption, renewal, extension or modification of the terms of the Note nor shall it affect any of Grantors obligations, covenants, agreements, guaranties or warranties hereunder. The provisions of this Section 3.7 are for the benefit and protection of the Beneficiary and shall not affect, as between the Grantors and any other person claiming by, through or under them, any contractual or other rights created by the Grantors and any such other persons; but the option of Beneficiary granted by the provisions of this Section to exercise any or all of its rights under Article X hereof upon or after the occurrence of an event of default as defined in this Section shall be binding both upon Grantors and upon any other person claiming by, through or under Grantors.

3.8 **Occupancy.** The Grantors covenant and agree that all buildings comprising any part of the Property shall at all times be occupied so as not to void or impair the insurance thereon.

3.9 **Compliance With Laws and Regulations.** Grantors covenant and agree that they shall comply with all valid laws, ordinances, and regulations, whether state, federal, or municipal, applicable to the Property and its ownership, use, and operation, and shall pay all janitorial, electrical, gas, water, sewer, telephone, environmental protection, use, occupation, garbage disposal and all other charges of every kind and character, whether imposed by public authorities or otherwise, in any way related to the ownership, occupancy or use of the Property or any part thereof.

3.10 **Leasehold Estates.** In the event that the Property is in whole or in part a leasehold estate, Grantors covenant and agree faithfully to keep, perform and comply with each covenant, condition and agreement contained in any lease affecting such leasehold estate.

3.11 **Condominium and Planned Unit Developments.** If this Deed of Trust covers a parcel, unit or tract, however denominated, contained within a condominium or a planned unit development, then Grantors covenant and agree faithfully to keep, perform and comply with each covenant, condition and agreement contained in any regime or declaration or other document, or one or more of such, creating such condominium or planned unit development, contained in any by-laws or covenants or restrictions or regulations or other document, or one or more of such, in any manner or respect governing the rights, obligations, conduct and any other activities of any owner or occupant of any property located within such condominium or planned unit development, and contained in any other similar document, instrument or agreement, as any of the foregoing may be amended from time to time. If a condominium or planned unit development rider is executed by Grantors and recorded together with this Deed of Trust, the provisions of such rider are hereby incorporated herein by reference and expressly made a part hereof.

## ARTICLE IV
### Payment of Taxes, Insurance, Assessments and Condemnation Awards

4.1 **Reserve Account.** Upon request at any time and from time to time in writing by Beneficiary, Grantors covenant and agree to pay into a Reserve Account to be held by Beneficiary the following sums at the time or times indicated: (1) on the date of execution of this Deed of Trust an amount estimated by Beneficiary which, when added to additional sums required to be paid to Beneficiary hereunder for like purposes, will enable Beneficiary to pay, if such estimate or estimates should prove to be correct, prior to delinquency, all taxes, insurance premiums and assessments hereinbelow described; and (2) on the first day of each calendar month thereafter or, if the Note is payable in consecutive monthly

_DEED OF TRUST_ – Page 2 of 8

F. B.
Initials

installments. on the date that each monthly installment on the Note hereby secured becomes due and payable the amount estimated by Beneficiary as the monthly accrual for each of the following as may be deemed applicable by Beneficiary. viz.: ad valorem taxes and any other assessments and any like charges against the Property or any part thereof imposed by any governmental authority. leasehold payments or ground rents for the Property or any part thereof (if any), any premiums for any required fire and extended coverage insurance covering any part of the Property, premiums for any required flood insurance covering any part of the Property, premiums for any required mortgage default insurance. premiums for any other required insurance. assessments or dues charged or imposed by any homeowners' association or similar organization against the Property or owner or occupant thereof. and any other charge with respect to the Property required by Beneficiary to be paid into the Reserve Account.

4.1.1 Non-Interest Bearing and Pledge. Beneficiary shall not be liable for or required to pay any interest upon any sums paid to or held in such Reserve Account: and all funds held in such Reserve Account are hereby pledged as additional security to secure the payment of any indebtedness hereby secured.

4.1.2 Commingling. All sums held in such Reserve Account may be commingled with like funds paid by others to Beneficiary for like purposes. Beneficiary to be accountable strictly for Grantor's share of such commingled funds.

4.1.3 Excess. If the amount held in such Reserve Account is at any time in excess of the estimated amount required to pay such taxes. premiums, assessments and other charges prior to the delinquency thereof. then, to the extent that such surplus exceeds one-sixth of the estimated annual amount required to pay all such prior to the delinquency thereof. Beneficiary shall refund such surplus to Grantors if Grantors are not then in default hereunder. However. if the amount so held in the Reserve Account is at any time not. according to Beneficiary's estimate. sufficient to pay during any annual period all such taxes. assessments. premiums and other charges. then Grantors shall. upon oral or written notice given to them by Beneficiary. pay such deficiency to Beneficiary within fifteen (15) days after such notice is given.

4.1.4 Payment in Full. Upon payment in full of all indebtedness secured by this Deed of Trust. Beneficiary shall refund to Grantors all funds then held in such Reserve Account to the extent Beneficiary has not previously committed to the payment of any portion thereof for taxes, insurance premiums and/or assignments.

4.2 Taxes. Grantors shall pay all taxes. leasehold rents or ground rents. assessments. fines, impositions and other charges attributable to the Property or any part thereof, which may attain a priority over the liens of this Deed of Trust or which may become. in any manner or proceeding. a lien or charge against the Property or any part thereof. in accordance with the provisions of Section 4.1 above: or. if any part or all of such are not so paid. the Grantors shall pay each and every such tax. rent. assessment. fine. imposition or other charge directly to the person. firm. corporation. governmental body, quasi-governmental body, governmental agency or other payee to which each such is owed prior to the delinquency of any such. Grantors shall promptly after receipt of such. furnish to Beneficiary all notices of amounts payable by Grantors by virtue of the provisions of this Section and, in the event that Grantors pay any of such directly to anyone other than Beneficiary. shall promptly furnish to Beneficiary a receipt evidencing the prompt payment of each such amount prior to the delinquency thereof.

4.3 Property Insurance. Grantors shall keep all buildings. structures and other improvements now located and hereafter erected or placed upon the above described real property insured against loss by fire. hazards included within the term "extended coverage." and such other hazards and in such amounts and for such periods as Beneficiary may reasonably require from time to time. Additionally, if all or any part of the Property is so located or subsequent to the execution of this Deed of Trust is determined to be located within a special flood hazard area that any structure comprising a part thereof is required. in connection with any federal or federally related loan. or permitted to be covered by insurance against the hazard of flood under the National Flood Insurance Program. as the same may have been and may be amended from time to time. then Grantors shall at all times keep any and all such structures now located or hereafter erected or placed upon the above described real property insured against the hazard of flood in an amount equal to the maximum coverage for which any such structure is eligible from time to time under such National Flood Insurance Program. As used in the immediately preceding sentence. the terms "special flood hazard area." "federal or federally related loan." and "flood" shall have the same meanings as such or similar terms have under the provisions of the National Flood Insurance Act of 1968. the Flood Disaster Protection Act of 1973. and the rules and regulations promulgated pursuant to such Acts. as the same may have been and may be amended from time to time. It shall be the duty and obligation of Grantors to ascertain that any structure for which any such insurance is required is expressly covered by the applicable policy or policies. whether obtained from or through Beneficiary: and Beneficiary shall under no circumstances whatsoever be liable or in any other way responsible for any loss sustained by reason of the failure of any policy of insurance to cover a particular structure, whether such structure is required to be so covered by Beneficiary or not.

4.3.1 Grantors to Select Providers of Insurance. The Grantors shall have the right to select the person through or from whom any such insurance is obtained. subject, however. to Beneficiary's approval. which approval shall not be unreasonably withheld.

4.3.2 Originals of Policies. All such insurance policies and renewals and replacements thereof shall be in form or forms acceptable to Beneficiary and shall include a standard mortgage or loss payee clause in favor of and in form or forms acceptable to Beneficiary. Beneficiary shall have the right to hold all such policies and renewals and replacements thereof.

4.3.3. Payment of Premiums. The premiums for all such insurance shall be paid in accordance with the provisions of Section 4.1 above: or. if the premiums for any such insurance are not so paid. the Grantors shall pay each and every such premium directly to each insurer or the duly authorized agent thereof prior to the delinquency thereof. Grantors shall promptly after the receipt thereof furnish to Beneficiary each and every notice of any premiums due for any such insurance and. if any such premium is paid directly by Grantors to anyone other than Beneficiary. shall promptly furnish to Beneficiary a receipt evidencing the proper payment of each such premium prior to the delinquency thereof. Upon an event of default under this Deed of Trust. the Note. or any other documents executed in connection herewith. Beneficiary shall have the right (but not the obligation) to place and maintain insurance required to be placed and maintained by Grantors hereunder. and use funds on deposit in the Reserve Account (if any) for the payment of insurance. to pay for same. Any additional amounts expended therefor shall constitute additional disbursements of funds under the Note (even if the amount of disbursements would exceed the face amount of the Note). and shall bear interest from the date expended at the rate provided under the Note or under this Deed of Trust and be payable. together with such interest. as all other funds due under the Note.

4.3.4 Loss. In the event of any loss covered by any such insurance. Grantors shall promptly and in the manner and within the period of time specified in the applicable policy of insurance. furnish notice and proof of such loss to the applicable insurer with a copy thereof to Beneficiary. Beneficiary may. but shall not be obligated to. make such notice and proof of loss.

4.3.5 Assignment of Proceeds. As additional security for the payment of all indebtedness secured by this Deed of Trust. Grantors hereby assign to Beneficiary all proceeds which become payable under any such policy of insurance and agree that Beneficiary shall have the right, but not the obligation. to collect all such proceeds. agreeing. however. to pay over to Beneficiary any and all such proceeds received by Grantors and to endorse or otherwise transfer to Beneficiary's exclusive control of any and all such proceeds which may be paid jointly to Beneficiary and to Grantors and. if such occurs. to any other person.

4.4 Condemnation Awards. As additional security for the payment of all indebtedness secured by this Deed of Trust. Grantors hereby assign to Beneficiary all awards, judgments, claims. proceeds and sums which become payable as a result of condemnation or the exercise of the power of eminent domain. including a private sale in lieu of condemnation. or the threat thereof. against any part or all of the Property and agree that Beneficiary shall have the right. but not the obligation. to collect all such. agreeing. however. to pay over to Beneficiary any and all such received by Grantors and to endorse or otherwise transfer to Beneficiary's exclusive control any and all of such which may be paid jointly to Beneficiary and to Grantors and. if such occurs. to any other person.

ARTICLE V
Rents

5.1 Assignment of Rents. As additional security for the payment of any indebtedness hereby secured. Grantors hereby transfer and

*DEED OF TRUST* – Page 3 of 8

F. B.
_____
Initials

convey to Beneficiary all bonuses. rents, royalties. rights and benefits accrued or to accrue under all oil, gas or mineral leases now existing or hereafter existing which affect or cover any part of the Property and all other rents, revenues, rights and benefits issuing or hereafter to issue from any part of the Property.

5.2 **Collection of Rents.** Grantors may. as Beneficiary's licensee collect rents and other income from any Property so long as Grantors are not in default under the Note, this Deed of Trust or any other documents executed in connection herewith. Upon the occurrence of any event of default hereunder and at any time thereafter. whether or not the maturity of the indebtedness hereby secured has been accelerated. Beneficiary may terminate Grantors' license and shall have the right to collect all such bonuses. rents, revenues, rights and benefits. including without limitation the right to file suit to recover any such, and to enter upon. take possession of and lease any part of the Property. whether any part of the mineral estate thereof or any part of the surface estate thereof, or both. upon such terms as Beneficiary in its sole discretion deems suitable. and to collect all bonuses. revenues, rents, rights and benefits thereof. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property.

5.3 **Appointment of Beneficiary as Attorney-In-Fact.** Grantors hereby appoint Beneficiary to serve as Grantors' attorney-in-fact. with full power of substitution, to do. perform and effect any of the acts permitted by the provisions of this Article V. which power is hereby declared to be coupled with an interest and to be irrevocable notwithstanding the incompetency. death or any other disability of Grantors: and Grantors hereby warrant and represent that any third party may. without subjecting himself to liability of any kind or character. rely upon any assertion. statement or representation of Beneficiary and may deal with Beneficiary as though Beneficiary were the fee simple owner of said Property and as though Grantors had no right, title. claim or interest therein.

## ARTICLE VI
### Application of Insurance Proceeds, Condemnation Awards and Rents

6.1 **Application of Such Sums.** At Beneficiary's sole discretion, any insurance proceeds (as described in Section 4.3.5 above), any condemnation awards (as described in Section 4.4 above), and any bonuses. revenues and rents (as described in Article V above) collected or received by Beneficiary in accordance with the provisions of this Deed of Trust, less any costs and expenses of collection by Beneficiary including without limitation attorney's fees. may be applied in whole or in part to any indebtedness secured hereby. whether then matured or to mature thereafter. in such manner as Beneficiary may elect. in the inverse order of maturity or otherwise. or Beneficiary may apply any part or all of such. with or without the consent of Grantors. to the repair. replacement or restoration of any damage to any part of the Property. or Beneficiary may apply any part or all of such in one or more of the foregoing ways, the surplus of any such. if any, to be paid over to Grantors or any other person then entitled thereto by law.

6.2 **Beneficiary's Options.** Beneficiary shall not have any duty or obligation to collect any of such and shall not be liable. regardless of the reason, for the failure to collect any such or for the failure to collect an adequate amount of such; and Beneficiary shall not be liable for and shall not pay interest upon any part of such while held by Beneficiary. The collection or receipt of any part or all of such shall not constitute a waiver of Beneficiary's right to accelerate the maturity of any indebtedness secured hereby or of Beneficiary's right to proceed with the enforcement of this Deed of Trust.

## ARTICLE VII
### Unsecured Portion of the Indebtedness

7.1 **Unsecured Debt.** If any portion of any indebtedness hereunder cannot be lawfully secured by this Deed of Trust, then the first installment and other payments made against any indebtedness secured by this Deed of Trust shall be applied to the discharge of the unsecured portion of the indebtedness and payments thereafter shall be applied to the discharge of the secured portion of the indebtedness.

## ARTICLE VIII
### Subrogation

8.1 **Prior Liens.** In the event that any of the proceeds of the Note are utilized to take up outstanding liens against any part of the Property. whether or not so requested by Grantors. then Beneficiary shall be, and it is hereby, subrogated to any and all rights, claims. demands. causes of action, superior titles. liens and equities owned or claimed by any owner or holder of any such outstanding lien or debt, however remote. regardless of whether any such lien or debt is acquired by Beneficiary by assignment or is released by the holder or owner thereof upon payment.

8.2 **Subsequent Liens and Charges.** It is agreed that the liens hereby created shall take precedence over and be prior and superior to any other lien of any character heretofore or hereafter existing against any part of the Property; and it is additionally agreed that it may be to the advantage of Beneficiary to advance funds from time to time to pay obligations of Grantors hereunder directly rather than to demand performance thereof by Grantors. Accordingly. at the sole discretion of Beneficiary, Beneficiary is hereby authorized to advance funds at any time for the purpose of taking up any lien or charge of any character against the Property without the necessity of inquiring or determining whether any such is valid or enforceable or for the purpose of paying any taxes or any assessments or any insurance premiums or for any repairs or any charges for utilities or similar services or ground rents or homeowners' association dues or any other charge or obligation which Grantors are required hereby to pay or perform. without the necessity of inquiring or determining whether any such is valid or enforceable: and the Beneficiary shall be, and it is hereby. subrogated to any and all rights, claims. demands. causes of action. superior titles. liens and equities owned or claimed by any holder or owner of any such, however remote. regardless of whether any such is acquired by Beneficiary by assignment or is released by the holder or owner thereof upon payment. Grantors. furthermore. promise to pay to Beneficiary. upon demand. any sum so advanced. In any event, however, each such advancement shall be deemed to be necessary to protect the interest of Beneficiary hereunder and shall be secured in its payment by this Deed of Trust.

8.3 **Non-Waiver.** The subrogation of Beneficiary to any such rights. claims, demands, causes of action. superior titles, liens (including any vendor's lien) and equities shall not operate as a waiver of the liens created by this Deed of Trust. it being agreed that the liens created by this Deed of Trust shall be cumulative and in addition to any other to which Beneficiary may be subrogated and that Beneficiary may foreclose under any of such without waiving any other of such.

## ARTICLE IX
### Future Advances

9.1 **Future Loans.** Upon request by Grantors. Beneficiary. at the latter's option prior to release of this Deed of Trust. may make additional loans to Grantors. If so. each such loan shall be secured in its payment by this Deed of Trust; and any loan existing on the date of the execution of this Deed of Trust made by Beneficiary to Grantors shall also be secured in its payment by this Deed of Trust.

## ARTICLE X
### Default

10.1 **Events of Default.** The occurrence of any of the following shall constitute an event of default hereunder:

10.1.1 The failure of Grantors to pay promptly as and when due any part of the principal of the Note or the interest thereon strictly in accordance with the terms of said Note;

10.1.2 The failure of Grantors to pay. promptly as and when due. any part of the principal of any other indebtedness secured hereby or the interest thereon;

10.1.3 The failure of Grantors to keep or perform punctually or properly. or the breach or violation by Grantors of. any other term. provision. duty. obligation. warranty. representation. covenant. agreement or condition contained herein or contained in any other agreement executed in connection with or securing any part of the indebtedness hereby secured on the part of Grantors to be performed or observed. including without limitation the failure of Grantors to pay prior to delinquency all taxes and like assessments attributable to the Property: the failure of Grantors to keep and maintain in full force and effect all applicable policies of

*DEED OF TRUST* – Page 4 of 8

F. B.
Initials

insurance required by Beneficiary, and the failure of Grantors to obtain Beneficiary's prior consent to any gift, sale or other disposition of the Property;

10.1.4 The abandonment of the Property by Grantors, including without limitation permitting any part of any improvements comprising a part of the Property to remain vacant for such a period of time that any property insurance thereon is voided or is jeopardized; or the removal of all or a portion of the improvements on the Property or any fixtures thereon;

10.1.5 The insolvency of Grantors or any guarantor of the obligations under the Note, ("Guarantor", whether one or more)

10.1.6 The making of a transfer by Grantors or Guarantor in fraud on creditors;

10.1.7 The making of an assignment by Grantors or Guarantor for the benefit of creditors;

10.1.8 The filing by Grantors or Guarantor of a petition under any section or chapter of the United States Bankruptcy Code, as amended and as the same may be amended hereafter, or under any similar law or statute of the United States or any State thereof, or the adjudication of Grantors or Guarantor as bankrupt or insolvent in any proceeding filed against Grantors or Guarantor thereunder;

10.1.9 The appointment of a receiver or trustee for all or substantially all of the assets of Grantors or Guarantor;

10.1.10 Grantors allow the filing of a petition, case, proceeding or other action against Grantors as a debtor under the United States Bankruptcy Code or any other debtor relief laws;

10.1.11 The dissolution of Grantors if a corporation, partnership, limited partnership, limited liability company, or similar entity; or the transfer of any interest therein without Beneficiary's written approval;

10.1.12 The failure by Grantors and Guarantor to provide any and all financial information requested by Beneficiary including but not limited to: (1) annual personal financial statements for Guarantor in form satisfactory to Beneficiary within 90 days of the anniversary date of the provision to Beneficiary of the prior financial statements; (2) federal income tax returns annually for Guarantor prepared by a tax professional satisfactory to Beneficiary within 90 days following the applicable filing date for the tax reporting period ended; and (3) federal income tax returns annually for Grantors prepared by a tax professional satisfactory to Beneficiary within 90 days following the applicable filing date for the tax reporting period ended; or

10.1.13 The occurrence of an event of default under any other documents executed in connection herewith.

10.2 **Remedies.** Upon the occurrence of any such event of default hereunder, the Beneficiary, at its option, may do any one or more of the following, each of which is hereby declared to be in addition to and cumulative of any other right or remedy to which Beneficiary may be entitled herein or at law or in equity, viz.:

10.2.1 At the expense of Grantors, cure or correct any such failure, default, breach or violation in such manner (including without limitation by filing any lawsuit or defending any lawsuit) as Beneficiary may deem advisable or necessary to protect the liens created by this Deed of Trust;

10.2.2 File suit against Grantors upon any such failure, default, breach or violation; or

10.2.3 Declare the entire principal of said Note then remaining unpaid and the then accrued interest thereon, and the entire principal of any other indebtedness secured hereby then remaining unpaid and the then accrued interest thereon, immediately due and payable at once, without demand or presentation or notice of any kind to Grantors (including without limitation notice of intention to accelerate the maturity of any or all of such), the Grantors hereby expressly waiving the necessity of any such, and the liens of this Deed of Trust may then be enforced in any manner provided herein or in any other manner provided in law or in equity, or in such manner or manners.

10.3 **Limitations on Distributions.** Following the occurrence and during the continuance of any event of default or any monetary or other material default, Grantors shall not distribute any money or other property to any partner, member, shareholder, director, officer or other direct or indirect owner of Grantors, whether in the form of earnings, income or other proceeds from the Property, nor shall Grantors repay any principal or interest on any loan or other advance made to Grantors by any partner, member, shareholder, director, officer or other direct or indirect owner of Grantors, nor shall Grantors loan or advance any funds to any such partner, member, shareholder, director, officer or other direct or indirect owner of Grantors.

## ARTICLE XI
### Foreclosure

11.1 **Sale by Trustee.** Upon failure to pay the Note when due as stipulated in Section 2.1 above, or upon acceleration of maturity of any indebtedness secured hereby, as permitted by Section 10.2.3 above and as permitted by the provisions of the Note hereby secured, or as so permitted in either instance, it shall thereupon, or at any time thereafter, be the duty of the Trustee, or any of the substitutes or successors of such Trustee, at the request of Beneficiary (which request is hereby conclusively presumed), to enforce this trust; then subject to the liens hereof, and mailing and filing notices as required by section 51.002, Texas Property Code, as then amended, and otherwise complying with that statute as then in effect, which may be done by the Trustee acting, or by any person acting for him, the Trustee shall sell the above described Property, then subject to the liens hereof, at public auction in accordance with such notices, on the first Tuesday in any month (or on such other day as otherwise stated in section 51.002, Texas Property Code and other applicable laws or regulations) at the time stated in the notice of sale or not later than three (3) hours after that time between the hours of ten o'clock a.m. and four o'clock p.m., to the highest bidder for cash, selling all of the Property as an entirety or in such parcels as the Trustee acting may elect and make due conveyance or conveyances to the Purchaser or Purchasers, with covenant of general warranty binding Grantors, their legal representatives, executors, administrators, successors, heirs and assigns; and out of the money arising from any such sale, the Trustee acting shall pay first, all the expenses of making any such conveyance, including a reasonable commission not exceeding five percent (5%) of the sales price to himself, if permitted by applicable law, which commission shall be due and owing in addition to the attorney's fees provided for in said Note, and then to Beneficiary the full amount of principal, interest, attorneys' fees and other charges due and unpaid on said Note and all other indebtedness secured hereby, the Beneficiary to have the right to allocate the amount received from the Trustee (if insufficient to pay all debts secured hereby in full) between or among such debts in any manner that will not result in a wholly capricious and arbitrary deficiency for which Grantors may be liable, rendering the balance of the sales price, if any, to Grantors or any other person entitled thereto by law, and the recitals in any conveyance to the Purchaser or Purchasers shall be full and conclusive evidence of the truth of the matters therein stated, and all prerequisites to any such sale shall be presumed to have been performed, and each such sale and conveyance shall be conclusive against Grantors, their legal representatives, executors, administrators, successors, heirs and assigns.

11.2 **Trustee Not Disqualified.** Neither the Trustee named herein nor any Trustee who may act hereunder shall in any way be disqualified from acting as such Trustee for the reason that he may now be, or may become or at any applicable time may be a director, an officer, an employee, a shareholder, an agent, or an attorney of Beneficiary or may be otherwise related to Beneficiary.

11.3 **Successive Sales.** The power of sale granted hereunder shall not be exhausted by one or more sales; but successive sales, even at a different date or dates, may be made so long as any of the indebtedness secured hereby remains unpaid.

11.4 **Possession By Trustee.** It shall not be necessary for the acting Trustee to have constructively in his possession any part of the Property covered by this Deed of Trust, and the title and right to possession of said Property shall pass to the Purchaser or Purchasers at any such sale as fully as if the same had been actually present and delivered. Likewise, on foreclosure of this Deed of Trust whether by power of sale herein contained or otherwise, Grantors, or any person claiming any part of the Property by, through or under Grantors, shall not be entitled to a marshaling of said Property or a sale in inverse order of alienation.

11.5 **Receivership.** The Beneficiary shall have the additional right, upon the commencement of any action to enforce the liens herein given, to have appointed by the court, in which said action is instituted, a receiver to take possession of the Property and collect the said rents, issues, and profits arising from the Property. This provision is a right created by this contract and is cumulative of, and is not to affect in any way, the right of the Beneficiary to the appointment of a receiver given the Beneficiary by law.

11.6 **Election of Remedies Not Exclusive.** It is agreed that in the event a foreclosure hereunder should be commenced by the Trustee, or any of his substitutes or successors, Beneficiary may at any time before the sale of said Property direct the said Trustee then acting

*DEED OF TRUST* – Page 5 of 8

F.B.
Initials

hereunder to abandon the sale. and may then institute suit for the collection of said Note or any other indebtedness secured hereby and for the foreclosure of the liens of this Deed of Trust; and it is further agreed that if Beneficiary should institute a suit for the collection thereof. and for a foreclosure of this Deed of Trust lien. that he may at any time before the entry of a final judgment in said suit dismiss the same. and require the Trustee. or any of his substitutes or successors. to sell the Property in accordance with the provisions of this Deed of Trust.

11.7 **Beneficiary May Bid.** Beneficiary shall have the right to purchase at any sale of any part of the Property. being the highest bidder. and to have the amount for which any such Property is sold. after the payment of the expenses of sale (if any). costs of court (if any). the Trustee's commission (if any) and any applicable attorney's fees. credited on any indebtedness then remaining secured hereby: but this provision shall not be construed to deprive Grantors or any other person entitled thereto of any excess of the sale price as provided above.

11.8 **Possession of Property.** In case the liens hereof shall be foreclosed by Trustee's sale or by judicial action. the Purchaser at any such sale shall receive. as an incident to his ownership. immediate possession of the Property purchased. and Grantors agree. for Grantors and for all persons claiming under Grantors. that if Grantors or any such person shall hold possession of said Property. or any part hereof. subsequent to foreclosure. Grantors or the parties so holding possession shall be considered as tenants at sufferance of the Purchaser at the foreclosure sale.

11.9 **Successor Trustee.** At the option of the Beneficiary. with or without any reason. a successor or substitute trustee may be appointed by Beneficiary without any formality other than a designation in writing of a successor or substitute trustee. who shall thereupon become vested with and succeed to all the powers and duties given to the Trustee herein named. the same as if the successor or substitute trustee had been named as the original Trustee herein: and such right to appoint a successor or substitute trustee shall exist as often and whenever Beneficiary desires. If Beneficiary is a corporation. the corporation may act through any officer thereof. or by any agent or attorney-in-fact authorized by any such officer: and the designation of any substitute or successor Trustee by such officer or such agent or attorney-in-fact shall be conclusively presumed to be the properly authorized act of such corporation and need not be attested by any other officer and need not have the seal of the corporation affixed thereto.

11.10. **Remedies Cumulative.** The rights and remedies herein above expressly conferred are cumulative of all other rights and remedies herein. or by law or in equity. provided and shall not be deemed to deprive Beneficiary or Trustee of any such other legal or equitable rights or remedies. by judicial proceedings or otherwise. appropriate to enforce the conditions, covenants. and terms of this Deed of Trust and of the Note. and the employment of any remedy hereunder. or otherwise, shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

**ARTICLE XII**
**Miscellaneous**

12.1 **Definitions.**

12.1.1 "Beneficiary" is the present or any future holder. whether one or more. of the Note, the payment of which is secured hereby.

12.1.2 "Grantors" are the undersigned. whether one or more. and any other person who is liable or becomes liable for the payment of any indebtedness secured hereby, including any person who is or becomes an owner in fee simple of any part of the Property whether personally liable for the payment of any part of any indebtedness secured hereby or not. and their respective successors. legal representatives. administrators. executors. heirs. devisees and assigns. For the purposes. however. of Sections 10.1.5 through 10.1.10 only. "Grantors" are the persons. whether one or more, who, according to the records of Beneficiary are the ostensible owners of any part of the Property in fee simple. and the persons. whether one or more, who. whether shown by the records of Beneficiary or not. are as between or among all of the remaining Grantors. the owners of any part of the Property in fee simple. Except as limited by the immediately preceding sentence. a failure to keep or perform or a breach or violation of any provision in the Note or any provision contained herein by any one person embraced within the meaning of the word "Grantors." as used herein. shall be deemed to be a default, breach or violation by all Grantors.

12.1.3 "Person" includes a natural person. a partnership. a joint venture. an association. a trust, a trustee. a professional corporation. a professional association. a non-profit corporation. a business corporation. and any other person, firm. corporation and entity of every kind and character.

12.2 **Further Assurances:** Grantors agree to execute, acknowledge and deliver to Beneficiary any documents requested by Beneficiary from time to time. to (a) correct any defect. error. omission or ambiguity in this Deed of Trust or in any document executed in connection with the Note and this Deed of Trust; (b) comply with Grantors' obligations under this Deed of Trust and other documents executed in connection herewith: (c) subject to and perfect the liens and security interest of this Deed of Trust and other documents against any property intended to be covered thereby; and (d) protect, perfect or preserve the liens and security interests of this Deed of Trust and other documents against third persons or make any recordings, file any notices or obtain any consents requested by Beneficiary in connection therewith. Grantors agree to pay all costs of the foregoing.

12.3 **Attorney's Fees.** In the event of any default. breach or violation of any provision of this Deed of Trust. Grantors promise to pay the reasonable value of the services of any attorney necessarily employed by Beneficiary to assert or defend any right or claim to which Beneficiary may be entitled hereunder. It is agreed and understood that an attorney has been "necessarily employed" by Beneficiary when. in Beneficiary's sole discretion. an attorney is employed to perform any service described above.

12.4 **Spreading of Interest.** For the purpose of determining whether the rate of interest on any indebtedness secured hereby is usurious under all applicable laws of the United States or the State of Texas, all interest at any time contracted for, charged or received hereunder or under the Note or under any prior evidence of indebtedness secured hereby and under any future evidence of indebtedness secured hereby or under any future evidence of the renewal or extension of any indebtedness secured hereby or under any agreement relating to or securing any one or more of the foregoing. shall be amortized, prorated. allocated and spread in equal parts during the period of the full stated term of any such indebtedness including any and all renewals and extensions thereof.

12.5 **Intentions of Parties as Regards Usury.** Notwithstanding the generality of the provisions of Section 12.4 and notwithstanding any provision to the contrary contained herein or in the Note or in any other evidence of indebtedness secured hereby or in any agreement (oral or written) relating to or securing the Note or any other indebtedness secured hereby (including without limitation any prior evidence of any indebtedness renewed or extended hereby and any agreement [oral or written] relating thereto or securing the same) and notwithstanding any provision to the contrary contained in any future evidence of any indebtedness secured hereby hereafter renewing or extending any such indebtedness or in any future agreement (oral or written) relating to or securing any renewal or extension of any such indebtedness. in the event that the maturity of any such indebtedness is accelerated for any reason before the stated maturity thereof or in the event that a voluntary prepayment thereof is permitted or upon the occurrence of any other event. circumstance or condition of every kind and character (including without limitation the maturity of any such indebtedness upon the date stated therefor), interest upon any such indebtedness may never include more than the applicable maximum amount permitted by law. computed from the date or dates of disbursement of the proceeds of any such indebtedness. until payment. and any interest thereon contracted for, charged or received (whether under any evidence of such indebtedness or any agreement [oral or written] relating thereto or securing the payment thereof) which is in excess of the applicable maximum amount permitted by law, shall. in the event of acceleration of maturity or prepayment or upon the occurrence of any other event, circumstance or condition of every kind and character. be canceled automatically as of the date of such acceleration or prepayment or occurrence of any other event. circumstance or condition and shall. if theretofore paid. either be refunded to Grantors or to any other person lawfully entitled thereto or be credited to the principal of any such indebtedness. Any interest computation under any such indebtedness, or under any evidence thereof or any agreement (oral or written) relating thereto or securing the payment thereof, shall be at not more than the applicable maximum legal rate upon that portion of the principal of any such indebtedness which remains unpaid from time to time. it being the intention of the parties hereto to conform strictly to the applicable laws relating to usury now in force. and in the event it should be held that interest payable upon any such indebtedness (or under any evidence of any such indebtedness or any agreement [oral or written] relating thereto or securing the payment thereof) is in excess of the applicable maximum permitted by law. the interest chargeable thereunder shall be reduced to the applicable

_DEED OF TRUST_ – Page 6 of 8

F. B.
Initials

maximum amount permitted by law.

12.6 **Non-Waiver.** The failure of Beneficiary to insist upon the timely payment of all or any part of the Note or to insist upon the timely performance of any covenant, condition or agreement contained in this Deed of Trust or any other agreement executed in connection with or securing the payment of the Note, or any one or more of the foregoing, shall not constitute a waiver of any such breach or default on the part of Grantors, any such prior breach or default of Grantors, any such continuing breach or default on the part of Grantors, or any subsequent default or breach of Grantors. Without limiting the generality of the foregoing, it is agreed that the acceptance by Beneficiary of any payment in an amount less than the amount then due on any indebtedness secured hereby shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an event of default; and at any time thereafter, and until the entire amount then due has been paid, the Beneficiary shall be entitled to exercise all rights granted hereunder, including without limitation the right to accelerate the maturity of any such indebtedness.

12.7 **Continuing Liability.** Each Grantor severally waives any notice, demand for payment, presentation for payment, notice of intention to accelerate the maturity, protest, notice of protest and diligence in collection as to each indebtedness secured hereby. Moreover, each Grantor severally agrees to any and all partial payments of any such indebtedness before or after maturity without prejudice to Beneficiary and also consents to any alteration, compromise, acceleration, extension, renewal or modification of the time or manner for the payment of any part or all of any indebtedness secured hereby, any change in the rate of interest specified in the Note and in any other evidence of any other indebtedness secured hereby (whether any such should be an increase or reduction in such rate of interest), the release or addition of one or more Grantors, the taking of any additional security, and the release or subordination of any part or all of the collateral securing the payment of any indebtedness secured hereby, or any one or more of the foregoing, by agreement between Beneficiary and any one or more of such Grantors without notice or demand to any other Grantor, and that after each such agreement the liability of each Grantor shall remain as though all of the Grantors had expressly consented to such agreement.

12.8 **Joint and Several Liability.** The Grantors, if more than one, shall be jointly and severally liable for the payment of the Note, and any other indebtedness secured hereby, and for the performance of each provision of this Deed of Trust. No act or omission of any kind or character on the part of Beneficiary shall have the effect of releasing or relieving any Grantor of any liability hereunder, unless such Grantor is expressly so released of such liability in writing by Beneficiary.

12.9 **Captions.** The caption of any Article, Section, or Paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision of this Deed of Trust.

12.10 **Payment in Lawful Money.** Each indebtedness secured hereby shall be paid in any coin or currency which at the time of payment is legal tender of the United States of America.

12.11 **Payment By Check.** Remittances in payment of any part of any indebtedness secured hereby made by check or draft shall be made and accepted subject to the condition that such check or draft may be handled for collection in accordance with the practice of the collecting bank or banks, with any and all exchange payable by Grantors, and that any receipt issued therefor shall be void unless the amount receipted for is actually received by the Beneficiary.

12.12 **Inspection.** Grantors shall permit Beneficiary, or its agents or employees, to have free access to any part of the Property at all reasonable hours for the purpose of inspecting the condition thereof or for the purpose of exercising any right or privilege granted under the provisions of this Deed of Trust.

12.13 **Waiver of Certain Laws.** Grantors expressly waive, release and renounce the benefit of all laws now existing and that may hereafter be enacted: (1) for any appraisement before sale of any part of the Property, commonly known as "Appraisement Laws;" and (2) all rights under Section 51.003, 51.004 and 51.005 of the Texas Property Code; and (3) in any way extending the time for the enforcement of the collection of any indebtedness secured hereby or creating or extending a period of redemption from any sale made in collecting any part of any such indebtedness, commonly known as "Stay Laws" and "Redemption Laws." Grantors hereby agree and contract that the laws of the State of Texas, save as excepted in the immediately preceding sentence, now in force relative to the collection of any indebtedness and the application to the payment thereof, are expressly adopted and made a part hereof.

12.14 **Governing Law.** This Deed of Trust shall be construed under and in accordance with the laws of the State of Texas.

12.15 **Place of Payment.** Each indebtedness hereby secured shall be paid at the place stated in the Note.

12.16 **Binding Upon Parties.** The provisions of this Deed of Trust shall be binding upon and shall inure to the benefit of Grantors, the Trustee and the Beneficiary, and their respective successors, legal representatives, administrators, executors, heirs, devisees and assigns.

12.17 **Severability.** In the event that one or more of the provisions contained in this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable in any respect, then any such provision shall be construed and applied so as to be valid, legal and enforceable or, if any such provision cannot be construed or applied so as to be valid, legal and enforceable, then such invalidity, illegality, or unenforceability shall not affect any other provision hereof and this Deed of Trust shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

12.18 **Time of Essence.** Time is of the essence of this Deed of Trust.

12.19 **Application of Payments.** If the Note secured hereby is payable in installments of both principal and interest, then, subject to all other provisions hereof, each such installment accepted shall be applied first to the payment of interest accrued on the unpaid principal balance of the Note to the date on which the holder of the Note receives any such installment, and the remainder, if any, of each such installment shall be applied to the reduction of the principal of the Note. Any permitted prepayment of the principal of the Note, subject to all other provisions hereof, shall be applied to the principal of the installment last due under the terms of the Note and thereafter to the principal of such installment in the inverse order of their maturity.

12.20 **Gender.** Words of any gender used in this Deed of Trust shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise.

12.21 **Purpose.** Reference is hereby made to other provisions of this Deed of Trust set out in the Addendum attached hereto and made a part hereof for all purposes, and Grantors expressly represent that this Deed of Trust and the Note hereby secured are given for the purposes set out in said Addendum.

12.22 **Homestead Waiver.** Grantors covenant and warrant that none of the Property forms a part of any property owned, used or claimed by Grantors or any other person as homestead, either business, residential or rural, or is otherwise exempt from forced sale under the laws of the State of Texas. Grantors hereby acknowledge that Beneficiary is relying on the truth of this representation in making the loan secured hereby.

The date hereof shall be **April 29, 2022,** whether executed on such date or not.

GRANTOR(S):

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: _Fahmida Begum_
**FAHMIDA BEGUM, MANAGER**

_DEED OF TRUST_ – Page 7 of 8

F. B.
Initials

STATE OF TEXAS

COUNTY OF __Dallas__

This instrument was acknowledged before me on the __3__ day of __May__, 2022, by FAHMIDA BEGUM, MANAGER of 5500 ROWLETT LLC, a TEXAS limited liability company, on behalf of said limited liability company.

Notary Public, State of Texas

Notary's Name Printed: __Delinda J Tobar__

My commission expires: __10-30-2023__

DELINDA J. TOBAR
Notary Public, State of Texas
Comm. Expires 10-30-2023
Notary ID 124590139

__GRANTORS' MAILING ADDRESS:__
5500 ROWLETT LLC
600 ASHFIELD ST.
RICHARDSON, TX 75081
ATTN: FAHMIDA BEGUM

__RETURN TO:__
BANK OZK
5178 PRESTON ROAD
FRISCO, TX 75034

F.B.
Initials

## EXHIBIT "A"

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL
PURPOSES.**

*EXHIBIT "A"* – Page 1 of 1

F. B .
Initials

Escrow File No. 210240-12

## EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

F.B.

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

F. B.

## ADDENDUM ATTACHED TO THE DEED OF TRUST
## DATED APRIL 29, 2022, EXECUTED BY
## 5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY

12.23   SECURITY AGREEMENT.  With respect to the personal property hereinabove described, which may not be affixed to the realty, this Deed of Trust shall constitute a security agreement between Grantors and Beneficiary, and cumulative of all other rights of Beneficiary hereunder, Beneficiary shall have all the rights conferred upon secured parties by the Uniform Commercial Code.  On demand, Grantors will promptly pay all costs and expenses of filing any financing statements required by Beneficiary, continuation statements, partial releases and termination statements deemed necessary or appropriate by Beneficiary to establish and maintain the validity and priority of the security interest of Beneficiary, or any modification thereof, and all costs and expenses of any searches reasonably required by Beneficiary.  Beneficiary may exercise any or all of the remedies of a secured party available to it under the Uniform Commercial Code with respect to such personal property, and it is expressly agreed that if upon default Beneficiary should proceed to dispose of the collateral in accordance with the provisions of the Uniform Commercial Code, ten (10) days' notice by Beneficiary to Grantors shall be deemed to be reasonable notice under any provisions of the Uniform Commercial Code requiring such notice; provided, however, that Beneficiary may at its option dispose of the collateral in accordance with Beneficiary's rights and remedies in respect of the Property pursuant to the provisions of this Deed of Trust, in lieu of proceeding under the Uniform Commercial Code.

12.24   VENDOR'S LIEN.  A portion of the indebtedness secured by this Deed of Trust represents funds advanced by Beneficiary at the special instance and request of Grantors and used in payment of a portion of the purchase price of the above described Property and Grantors hereby expressly confess, recognize and acknowledge a Vendor's Lien on the above described Property as security therefor.  It is expressly agreed that the lien of this Deed of Trust is cumulative of and without prejudice to such Vendor's Lien and that foreclosure hereunder will operate to foreclose such Vendor's Lien.

12.25   CONTEST.  The foregoing to the contrary notwithstanding, Grantors may in good faith contest, by proper legal proceedings, the validity or amount of any tax, assessment or other governmental charge upon the Property, as well as any claim for work, service, labor and materials which, if unpaid, might become a lien or charge upon the Property ("Imposition"), provided (a) Grantors provide  Beneficiary security reasonably satisfactory to Beneficiary assuring payment of the contested Imposition and any additional charge, interest, penalty or expense which may arise from or be incurred as a result of such contest, (b) such contest operates to suspend enforcement of the collection of the Imposition or execution upon any lien resulting from the unpaid Imposition and is maintained and prosecuted with diligence, and (c) if such contest is terminated or discontinued adversely to Grantors, Grantors shall promptly pay or discharge such contested Imposition and all charges, interest, penalties and expenses, if any, and shall deliver to Beneficiary evidence reasonably acceptable to Beneficiary of such.

12.26   PROTECTION OF BENEFICIARY'S SECURITY.  Any amounts disbursed by Beneficiary to protect its interest in the Property, with interest thereon, shall become additional indebtedness of Grantors secured by this Deed of Trust.  Unless Grantors and Beneficiary agree upon other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note.  Nothing contained herein shall require Beneficiary to incur any expense or take any action hereunder.

*ADDENDUM TO THE DEED OF TRUST* – Page 1 of 2

F.B.
Initials

2022 - 202200125266 05/04/2022 11:20 AM Page 13 of 14

12.27 **WAIVER OF TRIAL BY JURY. GRANTORS HEREBY WAIVE, TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, ITS RIGHTS TO TRIAL BY JURY IN ANY LEGAL ACTION COMMENCED IN RELATION TO THE NOTE AND/OR THIS DEED OF TRUST AND/OR THE SUBJECT MATTER HEREOF.**

**GRANTORS:**

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: _Fahmida Begum_
    FAHMIDA BEGUM, MANAGER

**RETURN TO:**
**BANK OZK**
**5178 PRESTON ROAD**
**FRISCO, TX 75034**

*ADDENDUM TO THE DEED OF TRUST* – Page 2 of 2

F. B.
Initials

**Dallas County**
**John F. Warren**
**Dallas County Clerk**

Instrument Number:  202200125266

eRecording – Real Property

Recorded On: May 04, 2022 11:20 AM                    Number of Pages: 14

" Examined and Charged as Follows: "

Total Recording: $74.00

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

File Information:                                   Record and Return To:
Document Number:      202200125266                  Simplifile
Receipt Number:       20220503001271
Recorded Date/Time:   May 04, 2022 11:20 AM
User:                 Hilga R
Station:              CC15



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed of record in the public records: your social security number or your driver's license number.**

## MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

THIS AGREEMENT, dated to be effective as of **April 29, 2023**, is made by and between **BANK OZK** ("Lender") and **5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY** ("Borrower").

A.   Borrower executed and delivered to Lender that certain Promissory Note (the "Note"), dated **April 29, 2022** in the amount of **ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00)**, payable to the order of Lender (the "Loan").

B.   Borrower executed and delivered to Lender, that certain Deed of Trust, Security Agreement and Financing Statement ("Deed of Trust"), dated **April 29, 2022**, to **CHRIS STRINGER, TRUSTEE**, recorded under Instrument No. **202200125266**, Official Public Records of **DALLAS** County, Texas; covering the property (the "Property") described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.**

to secure the payment of the Note and performance of other obligations relating to the Loan by Borrower.

C.   Lender and Borrower now propose to modify certain of the terms and provisions of the Note, the Deed of Trust and related documents pertaining to, evidencing or securing the Loan and renew and extend the liens securing same (all of the foregoing being sometimes hereinafter collectively referred to as the "Loan Documents").

NOW THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.   **Liability of Borrower.** This Agreement shall in no way be deemed a release by Lender of the liability of Borrower under the Note and the other Loan Documents.

2.   **Title Assurance.** If requested by Lender, contemporaneously with the execution and delivery hereof, Borrower shall cause the title company to issue to Lender an endorsement to its Mortgagee Policy in form and content acceptable to Lender, agreeing that the Mortgagee Policy is still in full force and effect and unimpaired, notwithstanding the terms and provisions hereof.

3.   **Acknowledgment by the Borrower.** Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrower to Lender as evidenced by the Loan Documents. As a material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges and agrees that the lien, security interest and assignment created and evidenced by the Deed of Trust and/or other Loan Documents are, respectively, a valid and subsisting first lien, security interest and assignment of the respective dignity and priority recited in the Deed of Trust and/or the other Loan Documents. As a further material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to the terms or provisions of the obligations created or evidenced by the Loan Documents and represents that no event has occurred and no condition exists which would constitute a default, either with or without notice or lapse of time, or both, under the Loan Documents. Borrower further acknowledges that the current principal balance of the Loan is **$1,508,570.00**.

4.   **Modifications to Loan Documents.** As of the date hereof, the Loan Documents are amended and Borrower agrees as follows:

(a)   The maturity date of the Note is hereby extended from **April 29, 2023** to **July 29, 2023**.

(b)   The interest rate shall be changed to a floating rate equal to the lesser of: (a) **TWO PERCENT (2.000%)** plus the Prime Commercial Lending Rate (as hereinafter defined) as such rate exists daily (the "Applicable Rate"), or (b) the maximum non-usurious rate allowed under applicable law (the "Maximum Rate"). In the event the Applicable Rate exceeds the Maximum Rate, and to the extent permitted by law, the rate of interest shall be limited to the Maximum Rate; provided, however, that any subsequent reductions in the Applicable Rate below the Maximum Rate shall not reduce the rate of interest charged hereon below the Maximum Rate until the amount of interest actually paid at the Maximum Rate equals the amount of interest that would have accrued had the Applicable Rate been in effect at all times. Interest shall be calculated daily, on a 360-day year basis, on the outstanding principal balance. The initial Applicable Rate shall be **TEN AND ONE-QUARTER PERCENT**

(10.250%) per annum. Notwithstanding anything contained herein or in the Note to the contrary, the Applicable Rate shall never be less than **TEN AND ONE-QUARTER PERCENT (10.250%)** per annum. "Prime Commercial Lending Rate" shall mean the prime interest rate as announced by THE WALL STREET JOURNAL as "Prime Rate," the base rate on corporate loans posted by at least SEVENTY PERCENT (70.00%) of the nation's TEN (10) largest banks. If THE WALL STREET JOURNAL announces more than one prime interest rate as "Prime Rate", Prime Commercial Lending Rate shall be based upon THE WALL STREET JOURNAL'S highest announced prime interest rate. Notwithstanding the foregoing, if such prime interest rate ceases to be announced by THE WALL STREET JOURNAL, then, in such event, Lender shall select an alternate but similar index and advise Borrower in writing of such selection.

(c) Payments of interest only shall continue to be made **MONTHLY**, with the next payment due on **May 29, 2023**, and continue on the same day of each succeeding **MONTH** until maturity when all unpaid principal plus accrued interest shall be due and payable in full.

(d) The Note, Deed of Trust and other Loan Documents are amended as necessary to reflect the above provisions.

5.    **Fees, Costs, and Expenses.** Contemporaneously with the execution and delivery hereof, Borrower shall pay, or cause to be paid, all costs and expenses incident to the preparation, execution and recordation hereof and the consummation of the transaction contemplated hereby, including, but not limited to, recording fees, title insurance policy or endorsement premiums or other charges of the title company and fees and expenses of legal counsel to Lender.

6.    **Additional Documentation.** From time to time, Borrower shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender so as to evidence or effect the terms and provisions hereof. Upon Lender's request, Borrower shall cause to be delivered to Lender an opinion of counsel, satisfactory to Lender in its sole discretion as to form, substance and rendering attorney, opining to the validity and enforceability of this Agreement, and the terms and provisions hereof, and any other agreement executed in connection with the transaction contemplated hereby and as to such other matters as Lender may reasonably request.

7.    **Effectiveness of the Loan Documents.** Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Loan Documents are and shall remain in full force and effect and BORROWER HEREBY REINSTATES AND RENEWS AND EXTENDS ALL LIENS OF LENDER ON THE PROPERTY UNTIL THE NOTE AS SO MODIFIED, RENEWED AND EXTENDED HAS BEEN FULLY PAID, AND AGREES THAT SUCH EXTENSION SHALL IN NO MANNER AFFECT OR IMPAIR THE NOTE OR THE LIENS SECURING SAME AND THAT SAID LIENS SHALL NOT IN ANY MANNER BE WAIVED; provided, however, that any reference in any of the Loan Documents to the Loan or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan and to such other Loan Documents, as modified hereby.

8.    **Governing Law.** The terms and provisions hereof shall be governed by and construed in accordance with the laws of the State of Texas, except to the extent preempted by United States federal law.

9.    **Time of the Essence.** Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

THE WRITTEN LOAN AGREEMENT TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED to be effective as of the date first above written.

**BANK OZK**

By: _____

Name: _A. J. Fazal_

Title: _EVP/Market Executive_

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: _Fahmida Begum , 05/31/2023_
   FAHMIDA BEGUM, MANAGER AND SOLE MEMBER

STATE OF TEXAS

COUNTY OF _Tarrant_

This instrument was acknowledged before me on the _31st_ day of _May_, 2023, by _AJ Fazal, EVP/Market Executive_ of BANK OZK, a _Financial Institution_, on behalf of said _Financial Institution_

_Christie L. Savage_
Notary Public, State of Texas
Notary's Name Printed: _Christie L. Savage_
My commission expires: _09/16/2026_

> **CHRISTIE L. SAVAGE**
> Notary Public, State of Texas
> Notary ID#: 12657677-5
> My Commission Expires 09-16-2026

STATE OF TEXAS

COUNTY OF _Tarrant_

This instrument was acknowledged before me on the _31st_ day of _May_, 2023, by FAHMIDA BEGUM, MANAGER AND SOLE MEMBER of 5500 ROWLETT LLC, a TEXAS limited liability company, on behalf of said limited liability company.

_Christie L. Savage_
Notary Public, State of Texas
Notary's Name Printed: _Christie L Savage_
My commission expires: _09/16/2026_

> **CHRISTIE L. SAVAGE**
> Notary Public, State of Texas
> Notary ID#: 12657677-5
> My Commission Expires 09-16-2026

**RETURN TO:**
BANK OZK
600 W. SOUTHLAKE BLVD., STE. 130
SOUTHLAKE, TX 76092
ATTN: CHRISTIE SAVAGE

2023 - 202300147483  07/25/2023  12:25 PM  Page 4 of 6

EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

## Dallas County
## John F. Warren
### Dallas County Clerk

---

### Instrument Number:  202300147483

eRecording - Real Property

Recorded On: July 25, 2023 12:25 PM                     Number of Pages: 6

---

### " Examined and Charged as Follows: "

Total Recording: $42.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                      **Record and Return To:**

Document Number:       202300147483                        Simplifile

Receipt Number:        20230725000491

Recorded Date/Time:    July 25, 2023 12:25 PM

User:                  Lynn G

Station:               Cc147

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed of record in the public records: your social security number or your driver's license number.**

### MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

THIS AGREEMENT, dated to be effective as of April 29, 2024, is made by and between BANK OZK ("Lender") and 5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY ("Borrower").

A.     Borrower executed and delivered to Lender that certain Promissory Note (the "Note"), dated April 29, 2022 in the amount of ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00), payable to the order of Lender (the "Loan").

B.     Borrower executed and delivered to Lender, that certain Deed of Trust, Security Agreement and Financing Statement ("Deed of Trust"), dated April 29, 2022, to CHRIS STRINGER, TRUSTEE, recorded under Instrument No. 202200125266, Official Public Records of DALLAS County, Texas; covering the property (the "Property") described as follows:

> SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

to secure the payment of the Note and performance of other obligations relating to the Loan by Borrower.

C.     The lien securing the above-referenced Note was renewed and extended by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of April 29, 2023, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MODIFICATION OF PROMISSORY NOTE dated as of July 7, 2023, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of October 29, 2023, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of January 29, 2024, recorded in the Official Public Records of DALLAS County, Texas.

D.     Lender and Borrower now propose to modify certain of the terms and provisions of the Note, the Deed of Trust and related documents pertaining to, evidencing or securing the Loan and renew and extend the liens securing same (all of the foregoing being sometimes hereinafter collectively referred to as the "Loan Documents").

NOW THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.     **Liability of Borrower.** This Agreement shall in no way be deemed a release by Lender of the liability of Borrower under the Note and the other Loan Documents.

2.     **Title Assurance.** If requested by Lender, contemporaneously with the execution and delivery hereof, Borrower shall cause the title company to issue to Lender an endorsement to its Mortgagee Policy in form and content acceptable to Lender, agreeing that the Mortgagee Policy is still in full force and effect and unimpaired, notwithstanding the terms and provisions hereof.

3.     **Acknowledgment by the Borrower.** Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrower to Lender as evidenced by the Loan Documents. As a material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges and agrees that the lien, security interest and assignment created and evidenced by the Deed of Trust and/or other Loan Documents are, respectively, a valid and subsisting first lien, security interest and assignment of the respective dignity and priority recited in the Deed of Trust and/or the other Loan Documents. As a further material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to the terms or provisions of the obligations created or evidenced by the Loan Documents and represents that no event has occurred and no condition exists which would constitute a default, either with or without notice or lapse of time, or both, under the Loan Documents. Borrower further acknowledges that the current principal balance of the Loan is $1,508,570.00.

4.     **Modifications to Loan Documents.** As of the date hereof, the Loan Documents are amended and Borrower agrees as follows:

(a)     The maturity date of the Note is hereby extended from April 29, 2024 to April 29, 2025.

(b)     The interest rate shall be a floating rate equal to the lesser of: (a) TWO PERCENT (2.000%) plus

*MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT* – Page 1 of 3

the Prime Commercial Lending Rate (as hereinafter defined) as such rate exists daily (the "Applicable Rate"), or (b) the maximum non-usurious rate allowed under applicable law (the "Maximum Rate"). In the event the Applicable Rate exceeds the Maximum Rate, and to the extent permitted by law, the rate of interest shall be limited to the Maximum Rate; provided, however, that any subsequent reductions in the Applicable Rate below the Maximum Rate shall not reduce the rate of interest charged hereon below the Maximum Rate until the amount of interest actually paid at the Maximum Rate equals the amount of interest that would have accrued had the Applicable Rate been in effect at all times. Interest shall be calculated daily, on a 360-day year basis, on the outstanding principal balance. The initial Applicable Rate shall be TEN AND ONE-HALF PERCENT (10.500%) per annum. Notwithstanding anything contained herein or in the Note to the contrary, the Applicable Rate shall never be less than TEN AND ONE-HALF PERCENT (10.500%) per annum. "Prime Commercial Lending Rate" shall mean the prime interest rate as published in the Money Rates table of THE WALL STREET JOURNAL as "Prime Rate". If THE WALL STREET JOURNAL announces more than one prime interest rate as "Prime Rate", Prime Commercial Lending Rate shall be based upon THE WALL STREET JOURNAL'S highest announced prime interest rate. Notwithstanding the foregoing, if such prime interest rate ceases to be announced by THE WALL STREET JOURNAL, then, in such event, Lender shall select an alternate but similar index and advise Borrower in writing of such selection.

(c)    Payments of interest only shall continue to be made MONTHLY, with the next payment due on May 29, 2024, and continue on the same day of each succeeding MONTH until maturity when all unpaid principal plus accrued interest shall be due and payable in full.

(d)    The Note, Deed of Trust and other Loan Documents are amended as necessary to reflect the above provisions.

5.    **Fees, Costs, and Expenses.** Contemporaneously with the execution and delivery hereof, Borrower shall pay, or cause to be paid, all costs and expenses incident to the preparation, execution and recordation hereof and the consummation of the transaction contemplated hereby, including, but not limited to, recording fees, title insurance policy or endorsement premiums or other charges of the title company and fees and expenses of legal counsel to Lender.

6.    **Additional Documentation.** From time to time, Borrower shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender so as to evidence or effect the terms and provisions hereof. Upon Lender's request, Borrower shall cause to be delivered to Lender an opinion of counsel, satisfactory to Lender in its sole discretion as to form, substance and rendering attorney, opining to the validity and enforceability of this Agreement, and the terms and provisions hereof, and any other agreement executed in connection with the transaction contemplated hereby and as to such other matters as Lender may reasonably request.

7.    **Effectiveness of the Loan Documents.** Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Loan Documents are and shall remain in full force and effect and BORROWER HEREBY REINSTATES AND RENEWS AND EXTENDS ALL LIENS OF LENDER ON THE PROPERTY UNTIL THE NOTE AS SO MODIFIED, RENEWED AND EXTENDED HAS BEEN FULLY PAID, AND AGREES THAT SUCH EXTENSION SHALL IN NO MANNER AFFECT OR IMPAIR THE NOTE OR THE LIENS SECURING SAME AND THAT SAID LIENS SHALL NOT IN ANY MANNER BE WAIVED; provided, however, that any reference in any of the Loan Documents to the Loan or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan and to such other Loan Documents, as modified hereby.

8.    **Governing Law.** The terms and provisions hereof shall be governed by and construed in accordance with the laws of the State of Texas, except to the extent preempted by United States federal law.

9.    **Time of the Essence.** Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

THE WRITTEN LOAN AGREEMENT TO WHICH THIS NOTICE RELATES REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

2024 - 202400134033  07/03/2024  02:53 PM  Page 3 of 6

EXECUTED to be effective as of the date first above written.

**BANK OZK**

By: _A.J. Fazal_

Name: _A.J. Fazal_

Title: _Market President_

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: _Fahmida Begum_

FAHMIDA BEGUM, MANAGER AND SOLE MEMBER

STATE OF TEXAS

COUNTY OF _Tarrant_

This instrument was acknowledged before me on the _30_ day of _May_ 2024, by _A.J. Fazalbhai, Market President_ of BANK OZK, a _State bank_, on behalf of said _bank_.

Notary Public, State of Texas

Notary's Name Printed: _Robyn Hudson_

My commission expires: _07-30-2024_

STATE OF TEXAS

COUNTY OF _Tarrant_

This instrument was acknowledged before me on the _30_ day of _May_ 2024, by FAHMIDA BEGUM, MANAGER AND SOLE MEMBER of 5500 ROWLETT LLC, a TEXAS limited liability company, on behalf of said limited liability company.

Notary Public, State of Texas

Notary's Name Printed: _Robyn Hudson_

My commission expires: _07-30-2024_

**RETURN TO:**
BANK OZK
600 W. SOUTHLAKE BLVD., STE. 130
SOUTHLAKE, TX 76092
ATTN: STEPHANIE BRUMLEY

_MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT_ – Page 3 of 3

EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

2024 - 202400134033  07/03/2024  02:53 PM  Page 5 of 6

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

2024-202400134033 07/03/2024 2:56 PM Page 6 of 6

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:** 202400134033

eRecording – Real Property

Recorded On: July 03, 2024 02:53 PM                    Number of Pages: 6

---

**" Examined and Charged as Follows: "**

Total Recording: $41.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                          **Record and Return To:**

Document Number:    202400134033              Simplifile
Receipt Number:     20240703000586
Recorded Date/Time: July 03, 2024 02:53 PM
User:               Hilga R
Station:            CC132.dal.ccdc

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

2025 - 202500094051 05/07/2025 10:35 AM Page 1 of 6

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed of record in the public records: your social security number or your driver's license number.**

### MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

THIS AGREEMENT, dated to be effective as of April 29, 2025, is made by and between BANK OZK ("Lender") and 5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY ("Borrower").

A. Borrower executed and delivered to Lender that certain Promissory Note (the "Note"), dated April 29, 2022 in the amount of ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00), payable to the order of Lender (the "Loan").

B. Borrower executed and delivered to Lender, that certain Deed of Trust, Security Agreement and Financing Statement ("Deed of Trust"), dated April 29, 2022, to CHRIS STRINGER, TRUSTEE, recorded under Instrument No. 202200125266, Official Public Records of DALLAS County, Texas; covering the property (the "Property") described as follows:

> SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

to secure the payment of the Note and performance of other obligations relating to the Loan by Borrower.

C. The lien securing the above-referenced Note was renewed and extended by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of April 29, 2023, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MODIFICATION OF PROMISSORY NOTE dated as of July 7, 2023, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of October 29, 2023, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of January 29, 2024, recorded in the Official Public Records of DALLAS County, Texas; and having been further renewed, extended and modified by MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT dated as of April 29, 2024, recorded under Instrument No. 202400134033, Official Public Records of DALLAS County, Texas.

D. Lender and Borrower now propose to modify certain of the terms and provisions of the Note, the Deed of Trust and related documents pertaining to, evidencing or securing the Loan and renew and extend the liens securing same (all of the foregoing being sometimes hereinafter collectively referred to as the "Loan Documents").

NOW THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Liability of Borrower.** This Agreement shall in no way be deemed a release by Lender of the liability of Borrower under the Note and the other Loan Documents.

2. **Title Assurance.** If requested by Lender, contemporaneously with the execution and delivery hereof, Borrower shall cause the title company to issue to Lender an endorsement to its Mortgagee Policy in form and content acceptable to Lender, agreeing that the Mortgagee Policy is still in full force and effect and unimpaired, notwithstanding the terms and provisions hereof.

3. **Acknowledgment by the Borrower.** Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrower to Lender as evidenced by the Loan Documents. As a material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges and agrees that the lien, security interest and assignment created and evidenced by the Deed of Trust and/or other Loan Documents are, respectively, a valid and subsisting first lien, security interest and assignment of the respective dignity and priority recited in the Deed of Trust and/or the other Loan Documents. As a further material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to the terms or provisions of the obligations created or evidenced by the Loan Documents and represents that no event has occurred and no condition exists which would constitute a default, either with or without notice or lapse of time, or both, under the Loan Documents. Borrower further acknowledges that the current principal balance of the Loan is $1,508,570.00.

4. **Modifications to Loan Documents.** As of the date hereof, the Loan Documents are amended and

*MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT* – Page 1 of 3

Borrower agrees as follows:

(a)   The maturity date of the Note is hereby extended from **April 29, 2025** to **July 29, 2025**.

(b)   The interest rate shall be a floating rate equal to the lesser of: (a) **TWO PERCENT (2.000%)** plus the Prime Commercial Lending Rate (as hereinafter defined) as such rate exists daily (the "Applicable Rate"), or (b) the maximum non-usurious rate allowed under applicable law (the "Maximum Rate"). In the event the Applicable Rate exceeds the Maximum Rate, and to the extent permitted by law, the rate of interest shall be limited to the Maximum Rate; provided, however, that any subsequent reductions in the Applicable Rate below the Maximum Rate shall not reduce the rate of interest charged hereon below the Maximum Rate until the amount of interest actually paid at the Maximum Rate equals the amount of interest that would have accrued had the Applicable Rate been in effect at all times. Interest shall be calculated daily, on a 360-day year basis, on the outstanding principal balance. The initial Applicable Rate shall be **TEN AND ONE-HALF PERCENT (10.500%)** per annum. Notwithstanding anything contained herein or in the Note to the contrary, the Applicable Rate shall never be less than **TEN AND ONE-HALF PERCENT (10.500%)** per annum. "Prime Commercial Lending Rate" shall mean the prime interest rate as published in the Money Rates table of THE WALL STREET JOURNAL as "Prime Rate". If THE WALL STREET JOURNAL announces more than one prime interest rate as "Prime Rate", Prime Commercial Lending Rate shall be based upon THE WALL STREET JOURNAL'S highest announced prime interest rate. Notwithstanding the foregoing, if such prime interest rate ceases to be announced by THE WALL STREET JOURNAL, then, in such event, Lender shall select an alternate but similar index and advise Borrower in writing of such selection.

(c)   Payments of interest only shall continue to be made **MONTHLY**, with the next payment due on **May 29, 2025**, and continue on the same day of each succeeding **MONTH** until maturity when all unpaid principal plus accrued interest shall be due and payable in full.

(d)   The Note, Deed of Trust and other Loan Documents are amended as necessary to reflect the above provisions.

5.   **Fees, Costs, and Expenses.** Contemporaneously with the execution and delivery hereof, Borrower shall pay, or cause to be paid, all costs and expenses incident to the preparation, execution and recordation hereof and the consummation of the transaction contemplated hereby, including, but not limited to, recording fees, title insurance policy or endorsement premiums or other charges of the title company and fees and expenses of legal counsel to Lender.

6.   **Additional Documentation.** From time to time, Borrower shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender so as to evidence or effect the terms and provisions hereof. Upon Lender's request, Borrower shall cause to be delivered to Lender an opinion of counsel, satisfactory to Lender in its sole discretion as to form, substance and rendering attorney, opining to the validity and enforceability of this Agreement, and the terms and provisions hereof, and any other agreement executed in connection with the transaction contemplated hereby and as to such other matters as Lender may reasonably request.

7.   **Effectiveness of the Loan Documents.** Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Loan Documents are and shall remain in full force and effect and BORROWER HEREBY REINSTATES AND RENEWS AND EXTENDS ALL LIENS OF LENDER ON THE PROPERTY UNTIL THE NOTE AS SO MODIFIED, RENEWED AND EXTENDED HAS BEEN FULLY PAID, AND AGREES THAT SUCH EXTENSION SHALL IN NO MANNER AFFECT OR IMPAIR THE NOTE OR THE LIENS SECURING SAME AND THAT SAID LIENS SHALL NOT IN ANY MANNER BE WAIVED; provided, however, that any reference in any of the Loan Documents to the Loan or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan and to such other Loan Documents, as modified hereby.

8.   **Governing Law.** The terms and provisions hereof shall be governed by and construed in accordance with the laws of the State of Texas, except to the extent preempted by United States federal law.

9.   **Time of the Essence.** Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

THE WRITTEN LOAN AGREEMENT TO WHICH THIS NOTICE RELATES REPRESENTS

*MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT* – Page 2 of 3

2025 - 202500094051 05/07/2025 10:35 AM Page 3 of 6

THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED to be effective as of the date first above written.

**BANK OZK**

By: _____

Name: Mack Davis III

Title: SVP

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: Fahmida Begum

FAHMIDA BEGUM, MANAGER AND SOLE MEMBER

STATE OF TEXAS

COUNTY OF Tarrant

This instrument was acknowledged before me on the 22 day of April 2025, by Mack Davis, III. SVP of BANK OZK, a State bank, on behalf of said bank.

_____
Notary Public, State of Texas
Notary's Name Printed: Robyn Hudson
My commission expires: 07-30-2028

[Notary seal: ROBYN HUDSON, NOTARY PUBLIC, STATE OF TEXAS, ID #11684812, EXPIRES 07/30/2028]

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on the 30th day of April - 2025, by FAHMIDA BEGUM, MANAGER AND SOLE MEMBER of 5500 ROWLETT LLC, a TEXAS limited liability company, on behalf of said limited liability company.

_____
Notary Public, State of Texas
Notary's Name Printed: _____
My commission expires: _____

[Notary seal: AINUDDIN KHAN, My Notary ID # 131108219, Expires April 27, 2025]

**RETURN TO:**
**BANK OZK**
600 W. SOUTHLAKE BLVD., STE. 110
SOUTHLAKE, TX 76092
ATTN: ROBYN HUDSON

*MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT* – Page 3 of 3

## EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

2025-202500094051 05/07/2025 10:39 AM Page 6 of 6

# Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:**  202500094051

eRecording – Real Property

Recorded On: May 07, 2025 10:35 AM                    Number of Pages: 6

---

**" Examined and Charged as Follows: "**

Total Recording: $41.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                  **Record and Return To:**
Document Number:   202500094051                        Simplifile
Receipt Number:    20250507000278
Recorded Date/Time: May 07, 2025 10:35 AM
User:              Alexander R
Station:           CC142.dal.ccdc

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed of record in the public records: your social security number or your driver's license number.**

<u>MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT</u>

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

THIS AGREEMENT, dated to be effective as of **July 29, 2025**, is made by and between **BANK OZK** ("Lender") and **5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY** ("Borrower").

A. Borrower executed and delivered to Lender that certain Promissory Note (the "Note"), dated **April 29, 2022** in the amount of **ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00)**, payable to the order of Lender (the "Loan").

B. Borrower executed and delivered to Lender, that certain Deed of Trust Security Agreement and Financing Statement ("Deed of Trust"), dated **April 29, 2022**, to **CHRIS STRINGER, TRUSTEE**, recorded under Instrument No. 202200125266, Official Public Records of **DALLAS** County, Texas, covering the property (the "Property") described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.**

to secure the payment of the Note and performance of other obligations relating to the Loan by Borrower.

C. The lien securing the above-referenced Note was renewed and extended by **MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT** dated as of **April 29, 2023**, recorded in the Official Public Records of **DALLAS** County, Texas; and having been further renewed, extended and modified by **MODIFICATION OF PROMISSORY NOTE** dated as of **July 7, 2023**, recorded in the Official Public Records of **DALLAS** County, Texas; and having been further renewed, extended and modified by **MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT** dated as of **October 29, 2023**, recorded in the Official Public Records of **DALLAS** County, Texas; and having been further renewed, extended and modified by **MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT** dated as of **January 29, 2024**, recorded in the Official Public Records of **DALLAS** County, Texas; and having been further renewed, extended and modified by **MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT** dated as of **April 29, 2024**, recorded under Instrument No. 202400134033, Official Public Records of **DALLAS** County, Texas; and having been further renewed, extended and modified by **MORTGAGE LOAN RENEWAL, EXTENSION, AND MODIFICATION AGREEMENT** dated as of **April 29, 2025**, recorded under Instrument No. 202500094051, Official Public Records of **DALLAS** County, Texas.

D. Lender and Borrower now propose to modify certain of the terms and provisions of the Note, the Deed of Trust and related documents pertaining to, evidencing or securing the Loan and renew and extend the liens securing same (all of the foregoing being sometimes hereinafter collectively referred to as the "Loan Documents").

NOW THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Liability of Borrower.** This Agreement shall in no way be deemed a release by Lender of the liability of Borrower under the Note and the other Loan Documents.

2. **Title Assurance.** If requested by Lender, contemporaneously with the execution and delivery hereof, Borrower shall cause the title company to issue to Lender an endorsement to its Mortgagee Policy in form and content acceptable to Lender, agreeing that the Mortgagee Policy is still in full force and effect and unimpaired, notwithstanding the terms and provisions hereof.

3. **Acknowledgment by the Borrower** Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrower to Lender as evidenced by the Loan Documents. As a material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges and agrees that the lien, security interest and assignment created and evidenced by the Deed of Trust and/or other Loan Documents are, respectively, a valid and subsisting first lien, security interest and assignment of the respective dignity and priority recited in the Deed of Trust and/or the other Loan Documents. As a further material inducement to Lender to execute and deliver this Agreement, Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to the terms or provisions of the obligations created or evidenced by the Loan Documents and represents that no event has occurred and no condition exists which would constitute a default, either with or without notice or lapse of time, or both, under the Loan Documents. Borrower further



<u>*MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT*</u> – Page 1 of 3

acknowledges that the current principal balance of the Loan is $1,508,570.00.

    4.    **Modifications to Loan Documents** As of the date hereof, the Loan Documents are amended and Borrower agrees as follows:

    (a)    The maturity date of the Note is hereby extended from **July 29, 2025 to October 27, 2025.**

    (b)    The interest rate shall be a floating rate equal to the lesser of: (a) **TWO PERCENT (2.000%)** plus the Prime Commercial Lending Rate (as hereinafter defined) as such rate exists daily (the "Applicable Rate"), or (b) the maximum non-usurious rate allowed under applicable law (the "Maximum Rate"). In the event the Applicable Rate exceeds the Maximum Rate, and to the extent permitted by law, the rate of interest shall be limited to the Maximum Rate; provided, however, that any subsequent reductions in the Applicable Rate below the Maximum Rate shall not reduce the rate of interest charged hereon below the Maximum Rate until the amount of interest actually paid at the Maximum Rate equals the amount of interest that would have accrued had the Applicable Rate been in effect at all times. Interest shall be calculated daily, on a **360-day** year basis, on the outstanding principal balance. The initial Applicable Rate shall be **TEN AND ONE-HALF PERCENT (10.500%)** per annum. Notwithstanding anything contained herein or in the Note to the contrary, the Applicable Rate shall never be less than **TEN AND ONE-HALF PERCENT (10.500%)** per annum. "Prime Commercial Lending Rate" shall mean the prime interest rate as published in the Money Rates table of THE WALL STREET JOURNAL as "Prime Rate". If THE WALL STREET JOURNAL announces more than one prime interest rate as "Prime Rate", Prime Commercial Lending Rate shall be based upon THE WALL STREET JOURNAL'S highest announced prime interest rate. Notwithstanding the foregoing, if such prime interest rate ceases to be announced by THE WALL STREET JOURNAL, then, in such event, Lender shall select an alternate but similar index and advise Borrower in writing of such selection.

    (c)    Payments of interest only shall continue to be made **MONTHLY**, with the next payment due on **August 29, 2025,** and continue on the same day of each succeeding **MONTH** until maturity when all unpaid principal plus accrued interest shall be due and payable in full.

    (d)    The Note, Deed of Trust and other Loan Documents are amended as necessary to reflect the above provisions.

    5.    **Fees, Costs, and Expenses** Contemporaneously with the execution and delivery hereof, Borrower shall pay, or cause to be paid, all costs and expenses incident to the preparation, execution and recordation hereof and the consummation of the transaction contemplated hereby, including, but not limited to, recording fees, title insurance policy or endorsement premiums or other charges of the title company and fees and expenses of legal counsel to Lender.

    6.    **Additional Documentation.** From time to time, Borrower shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender so as to evidence or effect the terms and provisions hereof. Upon Lender's request, Borrower shall cause to be delivered to Lender an opinion of counsel, satisfactory to Lender in its sole discretion as to form, substance and rendering attorney, opining to the validity and enforceability of this Agreement, and the terms and provisions hereof, and any other agreement executed in connection with the transaction contemplated hereby and as to such other matters as Lender may reasonably request.

    7.    **Effectiveness of the Loan Documents.** Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Loan Documents are and shall remain in full force and effect and BORROWER HEREBY REINSTATES AND RENEWS AND EXTENDS ALL LIENS OF LENDER ON THE PROPERTY UNTIL THE NOTE AS SO MODIFIED, RENEWED AND EXTENDED HAS BEEN FULLY PAID, AND AGREES THAT SUCH EXTENSION SHALL IN NO MANNER AFFECT OR IMPAIR THE NOTE OR THE LIENS SECURING SAME AND THAT SAID LIENS SHALL NOT IN ANY MANNER BE WAIVED; provided, however, that any reference in any of the Loan Documents to the Loan or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan and to such other Loan Documents, as modified hereby.

    8.    **Governing Law.** The terms and provisions hereof shall be governed by and construed in accordance with the laws of the State of Texas, except to the extent preempted by United States federal law.

    9.    **Time of the Essence.** Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

    **THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.**

*MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT* -- Page 2 of 3

THE WRITTEN LOAN AGREEMENT TO WHICH THIS NOTICE RELATES REPRESENTS
THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY
EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE
PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED to be effective as of the date first above written.

BANK OZK

By: _____

Name: _____

Title: _____

5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY

BY: _____

FAHMIDA BEGUM, MANAGER AND SOLE MEMBER

STATE OF TEXAS

COUNTY OF Collin

This instrument was acknowledged before me on the 26 day of September
2025, by Christopher Bragg of BANK OZK, a
Market president, on behalf of said institution

_____

Notary Public, State of Texas

Notary's Name Printed: Monica S Trevino

My commission expires: 3-28-2028

MONICA S TREVINO
Notary Public, State of Texas
Notary ID#: 134829444
My Commission Expires 03-28-2028

STATE OF TEXAS

COUNTY OF Dallas

This instrument was acknowledged before me on the 23 day of September 2025.
2025, by FAHMIDA BEGUM, MANAGER AND SOLE MEMBER of 5500 ROWLETT LLC, a TEXAS limited
liability company, on behalf of said limited liability company.

_____

Notary Public, State of Texas

Notary's Name Printed: _____

My commission expires: _____

AINUDDIN KHAN
My Notary ID # 131108219
Expires April 27, 2029

RETURN TO:
BANK OZK
5178 PRESTON RD.
FRISCO, TX 75034
ATTN: MONICA TREVINO

MODIFICATION AND RENEWAL AND EXTENSION AGREEMENT -- Page 3 of 3

## EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

# Dallas County
## John F. Warren
### Dallas County Clerk

**Instrument Number:** 202500228916

eRecording - Real Property

Recorded On: October 30, 2025 08:05 AM                     Number of Pages: 6

## " Examined and Charged as Follows: "

Total Recording: $41.00

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                    **Record and Return To:**

Document Number:    202500228916                        Simplifile
Receipt Number:     20251029000813
Recorded Date/Time: October 30, 2025 08:05 AM
User:               Tineka S
Station:            Cc102



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

2022 - 202200125267  05/04/2022 11:20 AM  Page 1 of 9

THE STATE OF TEXAS

COUNTY OF DALLAS

### ASSIGNMENT OF RENTS AND LEASES

THIS ASSIGNMENT OF RENTS AND LEASES (this "Assignment") is made this the 29ᵗʰ day of April, 2022, by 5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY (hereinafter called "Assignor") to BANK OZK (hereinafter called "Assignee").

### RECITALS:

A. Assignor has executed and delivered to Assignee one promissory note (the "Note") of even date herewith in the principal amount of ONE MILLION FIVE HUNDRED EIGHT THOUSAND FIVE HUNDRED SEVENTY AND 00/100 DOLLARS ($1,508,570.00) and as security for the Note Assignor has executed and delivered to Assignee a Deed of Trust, Security Agreement and Financing Statement (the "Deed of Trust") of even date herewith covering certain real property located in DALLAS County, Texas, and being more particularly described below, together with all buildings, improvements and other property more particularly described in the Deed of Trust, and all fixtures, furnishings, machinery, equipment and other tangible property owned by Assignor and located on or used in connection with such real property (all of which personal and real properties are hereinafter collectively called the "Property"). This Assignment, the Deed of Trust, and any other documents now or hereafter evidencing, governing or securing the loan evidenced by the Note are sometimes hereinafter collectively called the "Security Documents".

B. As further security for the Note, Assignee has required that Assignor unconditionally assign to Assignee all of Assignor's right, title and interest in, to and under any and all leases (hereinafter collectively referred to as the "Leases" and singularly as a "Lease") now or hereafter in existence (as amended from time to time) and covering space in or applicable to the Property, and Assignor desires and intends by this instrument to unconditionally assign to Assignee all of Assignor's right, title and interest in, to and under the Leases.

C. Property:
SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

NOW, THEREFORE, in consideration of the loan evidenced by the Note and in order to secure the payment of the principal of, and interest on, the Note and to secure the performance and observance by Assignor of each and every term, covenant, agreement and condition contained in the Note and Security Documents and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor covenants and agrees as follows:

1. Assignment. Assignor does hereby unconditionally sell, grant, transfer, bargain, assign, convey and set over to Assignee, its successors and assigns, all of the right, title and interest of Assignor in and to all rents, royalties, income, issues, profits, revenues, rights and benefits arising from the Property and/or the Leases and all other sums due and/or to become due under and pursuant thereto, together with any and all guarantees of or under any of the Leases, and together with all rights, powers, privileges, options and other benefits of Assignor as lessor under the Leases, including without limitation the immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, insurance proceeds, moneys and any security payable or receivable under the Leases or pursuant to any of the provisions thereof, whether as rent or otherwise, and to that end Assignor hereby further unconditionally sells, grants, transfers, assigns and sets over unto Assignee, its successors and assigns, the Leases and all rental agreements of any kind affecting the Property now or hereafter made, executed or delivered, whether written or verbal. This Assignment shall include any and all other leases or rental agreements that may now be in effect, as well as any future or additional leases or rental agreements, and any renewals or extensions of such leases or rental agreements, that may be entered into by Assignor for the lease or rental of the Property or any part thereof,

*ASSIGNMENT OF RENTS AND LEASES* – Page 1 of 6

Initials

and Assignor herein agrees to execute and deliver such other and further assignments of said leases or rental agreements as Assignee may require. All of said leases and other rental agreements shall be included within the terms the "Leases" and the "Lease" as used herein.

2.     Reservation. Notwithstanding the provisions of paragraph 1 above, Assignor reserves unto itself, as Trustee for the benefit of Assignee and Assignor, a license to collect and retain the rentals as they become due, but not in advance, under the Leases so long as there is no default in any of the terms, covenants or provisions of the Note, the Security Documents or of this Assignment.

3.     Term. This Assignment is made and given as security for, and shall remain in full force and effect until: (a) the payment in full of all principal and interest, and any other sums due, on the Note; and (b) the full and complete performance and observance by Assignor of all of the terms, covenants and conditions to be performed or observed by Assignor under the Note and the Security Documents.

4.     Agent. Assignor hereby appoints Assignee as its agent whereby said Assignee may, upon any default under the Note or Security Documents, at its election, perform any of Assignor's obligations to the lessee(s) under the Leases, exercise any of Assignor's rights, powers or privileges under the Leases, modify the Leases and execute new leases on the Property. All obligations created by the exercise of such agency shall be those of Assignor and not those of Assignee except as otherwise provided herein. Notwithstanding the above granted power whereby Assignee may perform any of Assignor's obligations as Assignor's agent, Assignee may, at its election, subsequent to any default by Assignor under the Note or Security Documents, and by the giving of written notice to Assignor, assume any of the obligations of Assignor or its assigns to the lessee(s) under the Leases. Whether Assignee acts as agent of Assignor (in performance of Assignor's obligations) or under an express assumption of Assignor's obligations, or in the exercise of any of the rights, powers or privileges accorded Assignee hereunder, Assignor will reimburse Assignee for any expenses or liabilities incurred by Assignee. Furthermore, a failure to reimburse Assignee shall constitute a default under this Assignment whereby Assignee may apply all rents, royalties, income, issues, profits and revenues as they become due as well as all past due yet uncollected rents, royalties, income, issues, profits and revenues towards the payment of such expenses. Furthermore, the above mentioned rents, royalties, income, issues, profits and revenues shall be first applied towards the payment of such expenses whether or not any other debts secured by this Assignment have first accrued.

5.     Assignor's Representations. Assignor represents, warrants, covenants and agrees: (a) that Assignor has good right and authority to make this Assignment; (b) that Assignor has not heretofore alienated, assigned, pledged or otherwise disposed of or encumbered the Leases or any of the sums due or to become due thereunder and that Assignor has not performed any acts or executed any other instruments which might prevent Assignee from operating under any of the terms and conditions of this Assignment or which would limit Assignee in such operation; (c) that Assignor has not accepted or collected rent or any other payments under any Lease for any period subsequent to the current period for which such rent or other payment has already become due and payable; (d) that Assignor has not executed or granted any amendment or modification whatever of any of the Leases, either orally or in writing, except as has been disclosed in writing to Assignee; (e) that there is no default under any of the Leases now existing and no event has occurred and is continuing which, with the lapse of time or the giving of notice or both, would constitute an event of default under any of the Leases; (f) that Assignor will observe, perform and discharge, duly and punctually, all and singular the obligations, terms, covenants, conditions and warranties of the Note, this Assignment and the Security Documents and any Lease, on the part of Assignor to be kept, observed and performed; (g) to enforce the performance of each and every obligation, term, covenant, condition and agreement in said Leases by any tenant to be performed; (h) to appear in and defend any action or proceeding arising under, occurring out of or in any manner connected with said Leases, or conditions, duties or liabilities of Assignor or any tenant thereunder and upon request by Assignee will do so in the name and behalf of Assignee, but at the expense of Assignor; (i) that Assignor will, upon the request of Assignee, do, execute and deliver to Assignee such other acts and things as Assignee may deem reasonably necessary or appropriate to make effective this Assignment and the various covenants of Assignor herein contained and to more effectively vest in and secure to Assignee the sums due or

*ASSIGNMENT OF RENTS AND LEASES* – Page 2 of 6

F.B.

Initials

hereafter to become due under the Leases, including, without limitation, the execution of such additional assignments as shall be deemed necessary by Assignee to effectively vest in and secure to Assignee all rents, income, revenues, issues, royalties, rights, benefits and profits from any and all Leases; (j) that Assignor will from time to time, upon demand therefor, deliver to Assignee an executed counterpart of each and every Lease then affecting all or any portion of the Property; and (k) that in the event any warranty or representation of Assignor herein shall be false, misleading or materially inaccurate or Assignor shall default in the observance or performance of any obligation, term, covenant or condition hereof then, in each instance at the option of Assignee, the same shall constitute and be deemed to be a default under the Note and the Security Documents, thereby giving Assignee the absolute right to declare all sums secured thereby and hereby immediately due and payable without notice or demand of any kind and to exercise any and all rights and remedies provided thereunder and hereunder as well as such remedies as may be available at law or in equity.

6.      Assignor's Covenants. Assignor covenants and agrees that it will not, without in each instance obtaining the prior written consent of Assignee: (a) enter into any Lease on terms and conditions which have not been approved in advance by Assignee; (b) cancel any Lease nor accept a surrender thereof; (c) reduce the rent payable under any Lease nor accept payment of any installment of rent in advance of the due date thereof; (d) change, amend, alter or modify any Lease or any of the terms or provisions thereof, nor grant any concession in connection therewith; (e) consent to the release or reduction of the obligations of the tenant under any Lease; (f) assign, pledge, encumber or otherwise transfer any Lease or Assignor's rights thereunder; (g) consent to an assignment of tenant's interest under any Lease or to a subletting except to the extent any such assignment or subletting is specifically authorized by such Lease; or (h) incur any indebtedness for borrowed money or otherwise to the tenant or guarantor of any Lease which may under any circumstances be availed of as an offset against the rent or other payments due thereunder; and any of the above acts, if done without the prior written consent of Assignee, shall be, at the option of Assignee, null and void, and shall constitute an event of default hereunder.

7.      Payments to Assignee. Assignor hereby consents to and irrevocably authorizes and directs the tenants under the Leases and any successor to the interest of any of said tenants, upon demand and notice from Assignee, to pay to Assignee the rents and other amounts due or to become due under the Leases, and said tenants shall rely upon such demand and notice from Assignee and shall pay such rents and other amounts to Assignee without any obligation or right of inquiry notwithstanding any notice from or claim of Assignor to the contrary, and Assignor shall have no right to claim against said tenants for any such rents and other amounts so paid by said tenants to Assignee.

8.      Remedies on Default. Upon the occurrence of a default under the Note, the Deed of Trust or any of the other Security Documents, Assignee, at its option, shall have the complete and unconditional right, power and authority (a) without taking possession of the Property, to demand, collect and receive and sue for the rents and other sums payable under the Leases and, after deducting all reasonable costs and expenses of collection (including, without limitation, attorneys' fees) as determined by Assignee, apply the net proceeds thereof to the payment of any indebtedness secured hereby; (b) to declare all sums secured hereby immediately due and payable without notice or demand of any kind, and, at its option, exercise any or all of the rights and remedies contained in the Note and in the Security Documents; and (c) without regard to the adequacy of the security, with or without process of law, personally or by agent or attorney, or by Assignee under the Deed of Trust, or by a receiver to be appointed by court, then and thereafter to enter upon, take and maintain possession of and operate the Property, or any part thereof, together with all documents, books, records, papers and accounts relating thereto and exclude Assignor and its agents and servants therefrom and hold, operate, manage and control the Property or any part thereof as fully and to the same extent as Assignor could do if in possession and in such event, without limitation and at the expense of Assignor, from time to time, cause to be made all necessary or proper repairs, renewals, replacements, alterations, additions, betterments and improvements to the Property, or any part thereof, as Assignee deems judicious, and pay taxes, assessments and prior or proper charges on the Property, or any part thereof, and insure and reinsure the same, and lease the Property, or any part thereof, on such terms and conditions as Assignee deems desirable, including leases for terms expiring beyond the maturity of the indebtedness secured by the Security Documents and cancel any Lease or sublease thereof for any cause or on any ground which would entitle Assignor to cancel the

_ASSIGNMENT OF RENTS AND LEASES_ – Page 3 of 6

(F.B.
Initials

same.

9.     <u>Credit</u>. After payment of all proper charges and expenses, including the just and reasonable compensation for the services of Assignee, its attorneys, agents, clerks, servants and others employed by Assignee in connection with the operation, management and control of the Property and the conduct of the business thereof and such further sums as may be sufficient to indemnify Assignee from and against any liability, loss or damage on account of any matter or thing done in good faith in pursuance of the rights and powers of Assignee hereunder, Assignee may, at its option, credit the net amount of income which Assignee may receive by virtue of this Assignment and from the Property to any and all amounts due or owing to Assignee from Assignor under the terms and provisions of the Note and the Security Documents. The balance of such net income shall be released to or upon the order of Assignee. The manner of the application of such net income and the item or items which shall be credited shall be within the sole discretion of Assignee.

10.     <u>Liability of Assignee</u>. The acceptance by Assignee of this Assignment, with all of the rights, powers, titles, privileges and authority so created, shall neither be deemed or construed to constitute Assignee a mortgagee in possession nor at any time or in any event to impose any obligation whatsoever upon Assignee to appear in or defend any action or proceeding relating to the Leases or the Property, or to take any action hereunder, expend any money or incur any expenses, or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Assignor by any tenant and not assigned and delivered to Assignee or render Assignee liable in any way for any injury or damage to person or property sustained by any person or entity in, on or about the Property.

11.     <u>Responsibility of Assignee</u>. Except as otherwise provided herein, this Assignment shall not operate to place responsibility for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases unless such responsibility is specifically assumed by Assignee in writing nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by a tenant or other party, nor for any dangerous or defective condition of the Property, nor for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee, invitee or stranger. Nothing herein contained shall be construed to bind Assignee to the performance of any of the terms and provisions contained in any of the Leases, or otherwise to impose any obligation on Assignee, including without limitation, any liability under the covenant of quiet enjoyment contained in the Leases in the event any tenant shall have been joined as a party defendant in any action to foreclose under the Deed of Trust or any of the Security Documents, and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Property or any part thereof.

12.     <u>Waiver</u>. Assignor agrees that the collection of rents and the application thereof as aforesaid or the entry upon and taking possession of the Property, or any part thereof, by Assignee shall not cure or waive any default, or waive, modify or affect any notice of default under the Note or the Security Documents, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Assignee, once exercised, shall continue for so long as Assignee shall elect. If Assignee shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time following any subsequent default.

13.     <u>Rights Cumulative</u>. The rights and remedies of Assignee hereunder are cumulative, not in lieu of but are in addition to, any rights or remedies which Assignee shall have under the Note, the Deed of Trust, any of the other Security Documents, at law or in equity, which rights and remedies may be exercised from time to time and as often as such exercise is deemed expedient, and the failure of Assignee to avail itself of any of the terms, provisions and conditions of this Assignment for any period of time, at any time or times, shall not be construed or deemed to be a waiver of any rights under the terms hereof.

14.     <u>Continuation of Rights</u>. The right of Assignee to collect and receive the rents assigned hereunder or to take possession of the Property or to exercise any of the rights or powers herein granted to Assignee shall, to the extent not prohibited by law, also extend to the

<u>*ASSIGNMENT OF RENTS AND LEASES*</u> – Page 4 of 6

F.B.

Initials

period from and after the filing of any suit to foreclose the lien created under the Deed of Trust, or any of the Security Documents which cover the Property, including any period allowed by law for the redemption of the Property after any foreclosure sale.

15.     Indemnity.  Assignor agrees to indemnify and hold Assignee harmless of, from and against any and all liability, loss, cost, damage or expense which Assignee may or might incur under or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking on the part of Assignee to perform or discharge any of the terms, covenants or agreements contained in the Leases.  Should Assignee incur any such liability, loss or damage under or by reason of this Assignment, or in the defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees, together with interest thereon at the same rate of interest as provided in the Note with respect to the principal indebtedness of Assignor to Assignee, shall be secured by this Assignment and by the Security Documents, and Assignor shall reimburse Assignee therefor immediately upon demand, and upon failure of Assignor so to do, Assignee may declare all sums secured hereby immediately due and payable without notice or further demand of any kind.

16.     Notice.  All notices, demands or documents of any kind which either party may be required or may desire to serve upon the other hereunder shall be sufficiently served by delivering the same personally or by depositing the same in the United States Mail to be sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the respective party at the address shown below.  Any notice mailed shall be deemed to be delivered on the second (2nd) business day next following the date on which such notice is deposited in the United States Mail.  Either party may change their address for notice hereunder by notice given as set out above.

Assignee:
    **BANK OZK**
    **5178 PRESTON ROAD**
    **FRISCO, TX 75034**

Assignor:
    **5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**
    **600 ASHFIELD ST.**
    **RICHARDSON, TX 75081**
    **ATTN: FAHMIDA BEGUM**

17.     Assignment.  This Assignment shall be assignable by Assignee and all representations, warranties, covenants, powers and rights herein contained shall be binding upon, and inure to the benefit of, Assignor and Assignee and their respective heirs, personal representatives, successors and assigns.

18.     Counterparts.  This Assignment may be executed, acknowledged and delivered in any number of counterparts and each such counterpart shall constitute an original, but together such counterparts shall constitute only one instrument.

19.     Severability.  If any one or more of the provisions of this Assignment, or the applicability of any such provision to a specific situation, shall be held invalid or unenforceable, such provision shall be modified to the minimum extent necessary to make it or its application valid and enforceable, and the validity and enforceability of all other provisions of this Assignment and all other applications of any such provision shall not be affected thereby.

20.     Transfer.  Upon a sale, conveyance, transfer or exchange of all or a part of the Property, the term "Assignor" as used herein shall include the transferee or grantee in such transaction.  The preceding sentence shall not be deemed to permit any sale, conveyance, transfer or exchange which is prohibited or restricted by the terms of any of the Security Documents.

21.     Amendment.  Neither this Assignment nor any provision hereof may be changed, amended, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, amendment, waiver, discharge or

*ASSIGNMENT OF RENTS AND LEASES* – Page 5 of 6

F.B.
Initials

2022 - 202200125267  05/04/2022  11:20 AM  Page 6 of 9

termination is sought.

22. Governing Law. This Assignment shall be governed by and construed in accordance with the laws of the State of Texas.

23. Waiver. Neither the existence of this Assignment nor the exercise of the rights or privileges granted to the Assignee shall be construed as a waiver by the Assignee of its right to enforce payment of the Note in strict accordance with the terms and provisions thereof.

24. Absolute Assignment. This Assignment constitutes an absolute assignment and not an assignment for additional security only.

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the date first above written.

ASSIGNOR:

**5500 ROWLETT LLC, A TEXAS LIMITED LIABILITY COMPANY**

BY: _Fahmida Begum_
**FAHMIDA BEGUM, MANAGER**

STATE OF TEXAS
COUNTY OF _Dallas_

This instrument was acknowledged before me on the _3_ day of _May_, 2022, by FAHMIDA BEGUM, MANAGER of 5500 ROWLETT LLC, a TEXAS limited liability company, on behalf of said limited liability company.

_Delinda Tobar_
Notary Public, State of Texas
Notary's Name Printed: _Delinda J Tobar_
My commission expires: _10-30-2023_

DELINDA J. TOBAR
Notary Public, State of Texas
Comm. Expires 10-30-2023
Notary ID 124680139

RETURN TO:
**BANK OZK**
**5178 PRESTON ROAD**
**FRISCO, TX 75034**

_ASSIGNMENT OF RENTS AND LEASES_ – Page 6 of 6

F. B.
Initials

Escrow File No.: 210240-12

## EXHIBIT "A"

BEING all that certain lot, tract or parcel of land situated in the John M. Thomas Survey, Abstract No. 1478, Dallas County, Texas, to be a part of a tract of land described in deed to Joy Coyle Richards and Jerry Coyle Richards, recorded in Volume 87190, Page 420, Deed Records, Dallas County, Texas (D.R.D.C.T.), and being more particularly described by the following metes and bounds description:

BEGINNING at a 5/8 inch iron rod found for corner in the East line of Old Rowlett Road, at the Southwest corner of Lot 1, Block 1 of Evergreen at Rowlett Addition, an Addition to Dallas County, Texas, according to the Plat thereof recorded in Document No. 201600088481, Map Records, Dallas County, Texas (M.R.D.C.T.), being the Northwest corner of said Richards tract;

THENCE North 89 deg. 47 min. 53 sec. East, a distance of 743.66 feet to a 5/8 inch iron rod found for corner at the Southeast corner of said Evergreen at Rowlett Addition, at the Southwest corner of a tract of land described in deed to the City of Rowlett, recorded in Volume 2003015, Page 1864 (D.R.D.C.T.);

THENCE North 89 deg. 31 min. 06 sec. East, a distance of 151.02 feet to a point for corner at the Southeast corner of said City of Rowlett tract, from which a 5/8 inch iron rod found for reference bears South 73 deg. 05 min. 38 sec. East, a distance of 0.68 feet;

THENCE South 00 deg. 25 min. 01 sec. East, a distance of 16.62 feet to a point for corner at the Southwest corner of Lot 46, Block "D", Liberty Creek Addition, an addition to the City of Rowlett, Dallas County, Texas, according to the Map thereof recorded in Volume 2000061, Page 1605, (M.R.D.C.T.);

THENCE North 75 deg. 38 min. 25 sec. East, a distance of 237.88 feet to a 1/2 inch iron rod found for corner at the Southerly Southeast corner of Lot 48 of said Block "D";

THENCE South 01 deg. 25 min. 51 sec. East, passing at a distance of 185.14 feet a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 51, and Northwest corner of Lot 52 of said Block "D", passing at a distance of 69.30 to a 1/2 inch iron rod found on-line for reference at the Southwest corner of Lot 52, Northwest corner of Lot 53, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 53, Northwest corner of Lot 54, passing a distance of 69.30 feet to a 1/2 inch iron rod found on-line for reference, at the Southwest corner of Lot 54, Northwest corner of 55, passing at a distance of 146.91 feet to a 5/8 inch iron rod found on-line for reference, and continuing for a total distance of 549.94 feet to a point for corner in the North line of Big A Road, from which a 1/2 inch iron rod found for reference bears South 67 deg. 16 min. 41 sec. West, a distance of 0.40 feet;

THENCE South 89 deg. 32 min. 35 sec. West, with the said North line a distance of 141.03 feet to a fence post for corner;

F-8.

2022 - 202200125267  05/04/2022  11:20 AM  Page 8 of 9

THENCE South 89 deg. 48 min. 24 sec. West, with the said North line a distance of 583.33 feet to a fence post for corner;

THENCE South 89 deg. 26 min. 46 sec. West, with the said North line a distance of 208.72 feet to a 2 inch iron pipe found for corner;

THENCE South 89 deg. 48 min. 21 sec. West, passing at a distance of 198.03 feet a 5/8 inch iron rod found on-line for reference and continuing for a total distance of 208.54 feet to a power pole for corner at the intersecting North line of Big A Road and the East line of Old Rowlett Road;

THENCE North 00 deg. 17 min. 27 sec. West, with the said East line a distance of 208.85 feet to a 2 inch iron pipe found for corner;

THENCE North 01 deg. 15 min. 28 sec. East, a distance of 157.20 feet to a fence post for corner;

THENCE North 00 deg. 05 min. 45 sec. East, a distance of 143.31 feet to the PLACE OF BEGINNING and containing 579,942 square feet or 13.31 acres of land.

F.B.

2022-202200125267 05/04/2022 11:27 AM Page 9 of 9

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:**  202200125267

eRecording – Real Property

Recorded On: May 04, 2022 11:20 AM                    Number of Pages: 9

---

**" Examined and Charged as Follows: "**

Total Recording: $54.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                   **Record and Return To:**

Document Number:      202200125267                   Simplifile
Receipt Number:       20220503001271
Recorded Date/Time:   May 04, 2022 11:20 AM
User:                 Hilga R
Station:              CC15

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

**I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.**

John F. Warren
Dallas County Clerk
Dallas County, TX